UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FMC Corporation, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1: 07cv0819 |
| United States Environmental Protection | ) | GBL-BRP |
| Agency, and Stephen L. Johnson, | ) | |
| Administrator, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| Natural Resources Defense Council, Inc., | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |
| | ) | |

**DEFENDANT-INTERVENOR'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND IN SUPPORT OF DEFENDANT'S
<u>CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      I.     APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      II.    FIFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      I.     FIFRA Allocates the Burden of Persuasion to Pesticide Registrants . . . . . . . . . 7

            A.    Congress Intended the Burden of Persuasion to Be on
                Pesticide Registrants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            B.    The Structure and Text of FIFRA Reflect this
                Legislative Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      II.    Even if APA § 7(c) Sets the Burden of Persuasion in FIFRA
            Hearings, the Registrant Seeking Reregistration Is the Proponent
            of the Relevant Order and Must Bear the Burden of Proving
            that It Is Entitled to Reregistration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Chevron U.S.A., Inc. v. Echazabal*
    536 U.S. 73 (2002)............................................................................15

*Deutsche Nat'l Bank Trust Co. v. Batmanghelidj*
    ___ F. Supp. ___, 2007 WL 2713109 (E.D. Va. Sept. 17, 2007) ......1-2

*Dir., Office of Workers' Comp. Progs. v. Greenwich Collieries*
    512 U.S. 267 (1994).................................................................10-12, 16

*Envtl. Defense Fund v. Ruckelshaus*
    439 F.2d 584 (D.C. Cir. 1971) ........................................................8-9

*Envtl. Defense Fund v. EPA*
    548 F.2d 998 (D.C. Cir. 1977) ........................................................7-8

*Gen. Constr. Co. v. Castro*
    401 F.3d 963 (9th Cir. 2005) ...........................................................11

*Greenwich Collieries v. Dir., Office of Workers' Comp. Progs.*
    990 F.2d 730 (3d Cir. 1993)..............................................................12

*Gustafson v. Alloyd, Co.*
    513 U.S. 561 (1995)......................................................................12-13

*Koons Buick Pontiac GMC v. Nigh*
    543 U.S. 50 (2004)...........................................................................12

*Maher Terminals v. Dir., Office of Workers' Comp. Progs.*
    992 F.2d 1277 (3d Cir. 1993)........................................................11-12

*Metro. Stevedore Co. v. Rambo*
    521 U.S. 121 (1997)..........................................................................16

*Philbrook v. Glodgett*
    421 U.S. 707 (1975)..........................................................................13

*Southern Nat'l Mfg. Co. v. EPA*
    470, F.2d 194 (8th Cir. 1972) .........................................................7-8

*Stearns Elec. Paste Co. v. EPA*
    461 F.2d 293 (7th Cir. 1972) ..........................................................7-9

*Tenn. Valley Auth. v. Hill*
    437 U.S. 153 (1978)...........................................................................15

*WWHT, Inc. v. Fed. Comms. Comm'n*
    656 F.2d 807 (D.C. Cir. 1981) ........................................................2

STATUTES

APA § 4, 5 U.S.C. § 553 ...............................................................................2

APA § 6, 5 U.S.C. § 555 ...............................................................................2

APA § 7, 5 U.S.C. § 556 ................................................................2, 10-15, 18

APA § 12, 5 U.S.C. § 559 .......................................................................11-12

7 U.S.C. § 136 ..............................................................................................3

7 U.S.C. § 136a ..................................................................................3, 13, 18

7 U.S.C. § 136a-1 ..................................................................................3, 4, 17

7 U.S.C. § 136d ..........................................................................3, 13-15, 17

33 U.S.C. § 908............................................................................................16

OTHER AUTHORITIES

40 C.F.R. § 164.80 .............................................................1, 5-7, 12, 15

Carbofuran: Interim Reregistration Eligibility Decision ("IRED")
    EPA-738-R-06-031 (Aug. 2006) ....................................................5-6

H.R. Rep. No. 88-1125 (1964)................................................................9-10

H.R. Rep. No. 92-511 (1972) ...................................................................10

H.R. Rep. No. 100-939 (1988)................................................................5, 10

H.R. Rep. No. 104-669 (1996) ...................................................................17

Pesticide Reregistration Performance Measures and Goals
    72 Fed. Reg. 46,966 (Aug. 22, 2007)................................................4

Revocation of Pesticide Food Additive Regulations
61 Fed. Reg. 39,528 (July 29, 1996)................................................7

S. Rep. No. 88-573 (1964) ..........................................................................9-10

## INTRODUCTION

Plaintiff FMC Corporation ("FMC") seeks to undermine the ability of the Environmental Protection Agency ("EPA") to protect human health and the environment from unsafe pesticides under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"). For over thirty years, an EPA regulation, 40 C.F.R. § 164.80, has properly implemented FIFRA's mandate that pesticide manufacturers demonstrate that their products will not cause unreasonable harm. In accordance with FIFRA, the burden is on the pesticide manufacturer (or "registrant") to prove to EPA that it should be allowed to market its product. This obligation prevails throughout all stages of EPA's review of pesticide safety – from initial registration to reregistration to cancellation.

FMC improperly invokes an inapplicable provision of the Administrative Procedure Act ("APA") in an attempt to overturn EPA's burden of proof rule. The APA provides that this particular provision does not control where, as here, a statute prescribes alternate procedures. EPA correctly denied FMC's petition to revoke the Agency's FIFRA burden of proof rule. Accordingly, defendant-intervenor Natural Resources Defense Council, Inc. ("NRDC") asks this Court to deny FMC's motion for judgment on the pleadings and grant defendant EPA's cross-motion for judgment on the pleadings.

## STANDARD OF REVIEW

Judgment on the pleadings "should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *Deutsche Nat'l Bank Trust Co. v. Batmanghelidj*, ___ F. Supp. ___, 2007 WL 2713109, No. 1:07cv683 (JCC), at *1 (E.D. Va. Sept. 17, 2007) (citing *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000);

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 329 (4th Cir. 1997)).  In reviewing a motion for judgment on the pleadings, this Court must accept as true all well-pleaded allegations of the non-moving party.  *See id.* at *1-2 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

## STATUTORY AND REGULATORY BACKGROUND

### I.    APA

The APA establishes a general set of procedures governing many of the actions of federal administrative agencies.  Section 4 of the APA, 5 U.S.C. § 553, sets out procedural requirements for agency rulemaking.  Among those requirements, "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).  According to the legislative history of this section, the APA requires agencies to receive, "'fully and promptly consider,'" and respond to requests for rulemaking.  *WWHT, Inc. v. Fed. Comms. Comm'n*, 656 F.2d 807, 813 (D.C. Cir. 1981) (quoting Administrative Procedure Act: Legislative History, 79th Cong. 1944-46, S. Doc. No. 248, 79th Cong., 2d Sess. 11, 21 (1946)).  Agencies may deny these petitions, in which case they must give the petitioners notice and a brief statement of the grounds for denial.  5 U.S.C. § 555(e).

Section 7 of the APA, 5 U.S.C. § 556, establishes general procedures for agency hearings on rulemakings or formal adjudications.  APA § 7(c), 5 U.S.C. § 556(d), addresses the receipt of evidence and the burden of proof:

> Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence.

*Id.* § 556(d).

## II.     FIFRA

FIFRA requires that pesticides be registered to be sold in the United States.  7 U.S.C.
§ 136a.  Specifically, FIFRA prohibits the registration of any pesticide that will cause any
"unreasonable adverse effects on the environment," *id.* § 136a(c)(5)(C), including "any
unreasonable risk to man or the environment, taking into account the economic, social and
environmental costs and benefits of the use of any pesticide," *id.* § 136(bb).  To register a
pesticide, the registrant must provide evidence to EPA to support the application, which serves as
the Agency's basis to determine whether the pesticide is safe enough to be registered.  *Id.*
§ 136a(c)(1)(F).

If, at any time, the Administrator determines based on available information that a
registered pesticide, "when used in accordance with widespread and commonly recognized
practice, generally causes unreasonable adverse effects on the environment," EPA may initiate
proceedings to determine whether a pesticide's registration should be cancelled.  *Id.* § 136d(b).
If EPA does not schedule a hearing before an administrative law judge ("ALJ") on the
cancellation determination, any "person adversely affected" may request one.  *Id.* § 136d(b), (d).
FIFRA provides that, at the hearing, the ALJ has the power to issue subpoenas to compel
testimony and production of documents and to refer issues of scientific fact to a National
Academy of Sciences Panel.  *Id.* § 136d(d).

The 1972 amendments to FIFRA created a "reregistration" review process, which
requires EPA to evaluate new information about the risks of pesticides on the market and make
new determinations about whether they meet FIFRA's safety standard.  *See id.* § 136a-1.  In
1988, Congress directed EPA to initiate a new reregistration process for all pesticides on the

3

market prior to November 1, 1984, conducted in five phases.[1]  *Id.*  During Phase One, EPA listed

the active ingredients in pesticides and prioritized their reregistration based on criteria related to

their potential risk to human health and the environment.  *Id.* § 136a-1(c).  Phase Two provisions

required registrants to submit to EPA, *inter alia*, "notices . . . [of] their intention to seek

reregistration" and all the data that was, or should have been, submitted during the original

registration application.  *Id.* § 136a-1(d)(2).  Registrants in Phase Two were also required to send

the Agency a list of missing and inadequate data and commit to submitting replacement studies

for those data.  *Id.* § 136a-1(d)(3).  If the registrant failed to submit the notice, to submit the data,

or commit to replacing the missing data, the Administrator was required to file a Notice of Intent

to Cancel and thereafter could cancel the registration by order, and without a hearing.  *Id.*

§ 136a-1(d)(5).  Phase Three obligated registrants to submit information on the studies to support

the reregistration of their product – "as if the registrant were now seeking the original

registration of the pesticide" – and any failure to submit that information required cancellation of

the pesticide, by order and without a hearing.  *Id.* § 136a-1(e).  Phase Four tasked EPA with

reviewing the submissions and determining whether any data were outstanding.  *Id.* § 136a-1(f).

Finally, during Phase Five, EPA must determine whether a pesticide meets the safety standards

of FIFRA and is therefore eligible for reregistration.  *Id.* § 136a-1(g).  At the conclusion of the

Phase Five evaluation for each pesticide, EPA must either reregister the pesticide within six

months or, if the Agency has determined that the pesticide does not meet FIFRA's safety

standards, it must take appropriate regulatory action "as expeditiously as possible" in order to

---

[1] Between 1991 and 2006, EPA reregistered 330 pesticides and cancelled 229 (or 41% of the total).  Pesticide Reregistration Performance Measures and Goals, 72 Fed. Reg. 46,966 (Aug. 22, 2007).  The Agency reports that it has yet to complete reregistration review for 54 pesticides.  *Id.*

mitigate the risk to human health and the environment.  *Id.* § 136a-1(g)(2)(D).[2]  The results of

EPA's Phase Five review are published in an Interim Reregistration Eligibility Decision

("IRED") or a Reregistration Eligibility Decision ("RED").

Both registration and cancellation hearings under FIFRA are governed by procedures

promulgated in 1973, which are set forth in 40 C.F.R. pt. 164.  These regulations provide that, in

all such hearings, the "ultimate burden of persuasion shall rest with the proponent of the

registration."  40 C.F.R. § 164.80.  It is this regulation that FMC seeks to void.

## FACTS

FMC is the registrant of the insecticide Furadan 4F, which contains the active ingredient

carbofuran.  Compl. ¶ 3.  Carbofuran is a broad spectrum insecticide and nematicide that is

available in both liquid and granular form for use on fruit, vegetable and field crops.  Compl.

¶ 20; EPA, Carbofuran: Interim Reregistration Eligibility Decision, EPA-738-R-06-031, at 2

(Aug. 2006) [hereinafter "*IRED*"], *available at* http://www.epa.gov/oppsrrd1/REDs/

carbofuran_ired.pdf.[3]  Carbofuran was first registered in the United States in 1969.  Compl. ¶ 20;

*IRED* at 2.  During the 1990's, agreements between EPA and FMC resulted in restrictions being

placed on the use of carbofuran to address concerns about the risk to human health from drinking

water contaminated with carbofuran and the risk of ecological harms from environmental

exposure to carbofuran.  Now, carbofuran is classified as a restricted use pesticide.  *IRED* at 2.

---

[2] Although that section of FIFRA does not identify specific "appropriate regulatory actions," the accompanying report of the House Agriculture Committee on the 1988 Amendments provided that "[f]ollowing completion of the required independent review by the Administrator of registrants' submissions of data and information under the reregistration program, the Administrator must reregister the pesticide products or promptly take other appropriate regulatory action under FIFRA, such as canceling, suspending, or restricting the pesticide, or imposing label changes."  H.R. Rep. No. 100-939, at 29 (1988).
[3] FMC cites and incorporates the carbofuran IRED into its Complaint, *see* Compl. ¶ 22, and into its motion for judgment on the pleadings, *see* Pl.'s Mem. at 5.

EPA's reregistration review of carbofuran is essentially complete.  In August 2006, EPA published the carbofuran IRED, announcing its determination that carbofuran was not eligible for reregistration because of significant risks to human health and the environment.  Compl. ¶ 22; *IRED* at 29.  Specifically, data showed that exposure to carbofuran both through diet (from residues on food) and through drinking water exceeded the level of concern.[4]  *IRED* at 9, 13. These troubling outcomes of the human, ecological, and dietary risk assessments compelled the Agency's determination that "all products containing carbofuran are not eligible for reregistration."  Compl. ¶ 22; *IRED* at 29.

In response to EPA's announced determination not to reregister carbofuran, FMC notified EPA that it will request an adjudicatory hearing once EPA initiates cancellation proceedings. Compl. ¶ 29, Ex. 3 (AR 012).  On November 7, 2006, FMC petitioned EPA for a rulemaking to amend the regulations governing cancellation hearings under FIFRA.  *Id.* ¶ 24, Ex. 1 (AR 007). Specifically, FMC sought to change 40 C.F.R. § 164.80 so that the burden of persuasion in an cancellation hearing would be placed on EPA, rather than on the registrant.  *Id.* ¶ 24.  On April 3, 2007, EPA denied FMC's petition.  *Id.* ¶ 27.  FMC then filed this lawsuit to challenge that denial.

## **ARGUMENT**

EPA's burden of persuasion regulation at 40 C.F.R. § 164.80 does not violate the APA. Three federal appellate courts have held that, in enacting and amending FIFRA, Congress intended to "otherwise provide by statute" that the burden of persuasion is on pesticide

---

[4] During the risk assessment process, EPA determines a toxicity endpoint and sets a level of concern ("LOC") based on that endpoint for a pesticide.  *IRED* at 19.  If the assessment shows that the risk from exposure to the pesticide would exceed the LOC, that pesticide, when used as directed, has the potential to cause adverse effects on non-target organisms.  *Id.*  The final determination for registration eligibility and/or restrictions on that registration are based, in part, on whether the risk exceeds the LOC.  *Id.*

registrants to demonstrate the safety of their products at all stages of the administrative process, including cancellation proceedings. These holdings are supported by the structure and text of FIFRA. Finally, even if FIFRA does not provide that the burden of persuasion should always be on the registrant, in the context of a cancellation proceeding following denial of reregistration, the registrant, not EPA, is the proponent of the relevant order, because it is the registrant seeking reregistration who advocates a change in the status quo.

I.    *FIFRA Allocates the Burden of Persuasion to Pesticide Registrants.*

In rejecting FMC's petition for review of the burden of proof regulation at 40 C.F.R. § 164.80, EPA stated that, as it interprets FIFRA, the statute "'clearly allocate[s] the burden of persuasion to the proponent of the registration'" in both registration and cancellation hearings. Compl. at Ex. 4 (AR 014-15) (quoting Revocation of Pesticide Food Additive Regulations, 61 Fed. Reg. 39,528, 39,535 (July 29, 1996)). EPA's interpretation of FIFRA is consistent with precedent, FIFRA's legislative history, and the text and structure of FIFRA.

A.    *Congress Intended the Burden of Persuasion to Be on Pesticide Registrants.*

All three federal appellate courts to consider the issue have held that, "[i]n view of [EPA's] continuing obligation to review the propriety of existing registrations," Congress "clearly and specifically intended" that the burden of persuasion in FIFRA hearings always be on pesticide registrants, at all stages of the administrative process, to keep dangerous pesticides off the market. *Stearns Elec. Paste Co. v. EPA*, 461 F.2d 293, 303-05 (7th Cir. 1972) (Stevens, J.); *accord Envtl. Defense Fund v. EPA*, 548 F.2d 998, 1004-05, 1015-17 (D.C. Cir. 1977) [hereinafter *EDF v. EPA*]; *Southern Nat'l Mfg. Co. v. EPA*, 470 F.2d 194, 196-97 (8th Cir. 1972). These decisions, which were based on the structure of FIFRA and the legislative history of the 1964 amendments to FIFRA, are still good law.

The 1964 amendments created the modern FIFRA framework of registration and cancellation by eliminating statutory provisions requiring "registration under protest" of pesticides. *Envtl. Defense Fund v. Ruckelshaus*, 439 F.2d 584, 593 (D.C. Cir. 1971) [hereinafter *Ruckelshaus*] (citing Federal Insecticide, Fungicide, and Rodenticide Act Amendments of 1966, Pub. L. No. 88-305, 78 Stat. 190, 190-93). Prior to the 1964 amendments, a pesticide manufacturer had the right to register its product without making any initial showing as to its safety; following the amendments' passage, the manufacturer was required to prove, using scientific data, that its product met the FIFRA safety standard in order to obtain a registration. *See EDF v. EPA*, 548 F.2d at 1016; *Stearns Elec. Paste Co.*, 461 F.2d at 303-05; *Ruckelshaus*, 439 F.2d at 593.

In analyzing the effect of the 1964 amendments, the D.C. Circuit found (and the Seventh and Eighth Circuits agreed) that

> [t]he stated purpose of the amendment[s] was to protect the public by removing from the market any product whose safety or effectiveness was doubted by the Secretary. The legislative history supports the conclusion that Congress intended any substantial question of safety to trigger the issuance of cancellation notices, shifting to the manufacturer the burden of proving the safety of his product.

*Ruckelshaus*, 439 F.2d at 593; *accord Stearns*, 461 F.2d at 304-05; *Southern Nat'l Mfg. Co.*, 470 F.2d at 196-97. The Seventh Circuit and D.C. Circuit also relied on remarks made by Congresswoman Sullivan, who clearly stated that Congress intended the new registration regime always to place the burden of persuasion on the pesticide manufacturer:

> I am strongly in favor of the Legislation now before you to require industry, rather than the Federal Government, to shoulder the burden of proof in connection with the marketing of pesticides which may be unsafe for use as intended. The burden of proof should not rest on the Government, because great damage can be done during the period the Government is developing the data necessary to remove a product which should not be marketed. . . . *The burden of proof of safety should always be on the manufacturer*.

*Stearns*, 461 F.2d at 305 n.37 (quoting 110 Cong. Rec. 2,948-49 (1964) (remarks of Cong.

Sullivan)) (emphasis added); *accord Ruckelshaus*, 439 F.2d at 593 n.34 (quoting same).

According to the House and Senate reports accompanying the 1964 amendments,

Congress found registration under protest problematic because it placed the burden of proof on

the Government.  The House found that

> [t]he principal effect of registration under protest is to shift the burden of proof
> from the registrant to the Government. . . .  If [the article] is registered under
> protest, the Government has the burden of proving that the product does not
> comply with the act. . . .  The bill would . . . afford greater protection to the public
> by repealing the authority for registration under protest.

H.R. Rep. No. 88-1125, at 2 (1964).  Similarly, the Senate report stated that under registration

under protest, the Government

> has the burden of proving that [an article] violates the law. The bill would correct
> this situation and afford greater protection to the public by repealing the authority
> for registration under protest.  In its place the bill provides that applicants
> dissatisfied with the Secretary's action in refusing *or canceling* registration may
> have recourse to advisory committee proceedings, public hearings, and eventually
> judicial review.

S. Rep. No. 88-573, at 2 (1964) (emphasis added).

In reallocating the burden of proof, Congress did not distinguish the procedures

governing original registration from those governing cancellation.  According to the House

report, the amendment replaced a manufacturer's right to registration under protest with

governmental authority to make an "original determination that registration should be refused *or

canceled*."  H.R. Rep. No. 88-1125, at 4 (emphasis added).  More explicitly, the Senate report

stated that, "[i]n lieu of protest registration, the bill makes various appeal procedures available

where registration is refused *or canceled*."  S. Rep. No. 88-573, at 1 (emphasis added).  Both

reports stated that "[u]nder the new procedure whenever the Secretary refused registration *or

determined that registration should be canceled* the applicant or registrant would be notified of

that action and the reasons therefor."  H.R. Rep. No. 88-1125 at 4 (emphasis added); S. Rep.

No. 88-573 at 5 (same).  The House report also stated that, following the public hearing available

upon request to the applicant or registrant after an initial determination by the Secretary, "the

Secretary would issue his order granting, denying, *or canceling* registration, issuing such

determination within 90 days of the hearing."  H.R. Rep. No. 88-1125, at 4 (emphasis added);

*see also* S. Rep. No. 88-573, at 5 (nearly identical language).[5]

FMC contends that the Supreme Court's interpretation of APA § 7(c) in *Dir., Office of*

*Workers' Comp. Progs. v. Greenwich Collieries*, 512 U.S. 267 (1994), requires this Court to

ignore FIFRA's stated purposes, as well as precedent from the D.C., Seventh, and Eighth

Circuits.  FMC mischaracterizes this case.  In *Greenwich Collieries*, the Supreme Court

considered whether APA § 7(c) requires employees seeking compensation in adjudicatory

hearings under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901, *et seq.*, and the

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, to

bear the burden of persuasion.  512 U.S. at 269.  Both statutes at issue in that case expressly

incorporate APA § 7(c)'s rule that the "proponent of an order" must bear the "burden of proof."

*Id.* at 271.  Analyzing the meaning of "burden of proof" as used in APA § 7(c), the Court found

---

[5] The legislative history of the 1972 and 1988 amendments to FIFRA further support a finding
that Congress intended the burden of persuasion to be on the pesticide manufacturer in
cancellation proceedings.  Specifically, this legislative history emphasizes Congress's concern
that the burden on EPA be minimal, in order to protect the public by expediting the cancellation
process for pesticides the Administrator believes dangerous, and to limit costs to the Agency.
*See* H.R. Rep. No. 100-939, at 28 (1988) ("The purpose" of the creation of the five-phase
reregistration review process was "to strengthen the protection of public health and the
environment; to increase public confidence that pesticides are approved and used in a manner
consistent with current health and safety requirements; . . . [and] to reduce the Federal
government's obligation to pay the costs associated with the cancellation and disposal of
pesticides ordered removed from the market."); H.R. Rep. No. 92-511, at 4 (1972) (Pl.'s Ex. G
at 4) (In enacting the 1972 amendments to FIFRA, "[t]he Committee found the greatest need for
revision of existing law to be in the areas of strengthening regulatory controls on the uses and
users of pesticides, speeding up procedures for barring pesticides found to be undesirable.").

that § 7(c) allocated the burden of persuasion to the proponent of an order, rather than merely

allocating a burden of producing evidence, because that was "the meaning generally accepted in

the legal community at the time of [the APA's] enactment."  *Id.* at 275-76.  Accordingly, the

Court held that the employees seeking compensation were required to bear the burden of

persuasion under both statutes.  *Id.* at 281.

The *Greenwich Collieries* Court did *not* address the standard that applies when a statute

"otherwise provides" for the allocation of the burden of persuasion, with respect to statutes, like

FIFRA, that do not expressly incorporate APA § 7(c)'s burden of persuasion.  *See id.* at 271.

Nor did the Court hold that legislative history is not a valid tool in statutory interpretation.  On

the contrary, the Court merely found that, in the particular circumstances presented by that case,

"legislative history [could] not carry the day," because the available evidence of legislative

history there was "imprecise and only marginally relevant."  *Id.* at 280; *see also Gen. Constr.*

*Co. v. Castro*, 401 F.3d 963, 976 (9th Cir. 2005) (declining to extend *Greenwich Collieries*

beyond its "narrow, technical holding" to preclude reliance on legislative history to interpret a

different provision of the LHWCA).

FMC cites to footnotes in the two Third Circuit opinions that were affirmed by

*Greenwich Collieries* for the proposition that APA § 7(c) can be superseded only by an "express

statutory provision."  *See* Pl.'s Mem. at 11-12.  Both of these cases, however, actually refer to a

*different provision* of the APA, section 12, 5 U.S.C. § 559, and do so in a *different context*:  The

issue was whether the statute there modified the standard of proof (e.g., preponderance of the

evidence) that a party bearing the burden of persuasion must meet to carry its burden.  *See Maher*

*Terminals v. Dir., Office of Workers' Comp. Progs.*, 992 F.2d 1277, 1281 n.3 (3d Cir. 1993)

(discussing "the issue of the degree of evidence which will satisfy the burden of persuasion")

(citing 5 U.S.C. § 559); *Greenwich Collieries v. Dir., Office of Workers' Comp. Progs.*, 990 F.2d 730, 735 n.5 (3d Cir. 1993) (same). Neither of these citations to Third Circuit cases – the reasoning of which was, in any event, not adopted by the Supreme Court in *Greenwich Collieries* – is relevant to the issue here: i.e., whether the Court may look to legislative history to determine whether FIFRA "otherwise provides" for the burden of proof within the meaning of the statutory exception in APA § 7(c).

Contrary to FMC's contention, courts frequently look to legislative history to interpret complex statutory schemes such as FIFRA. *See, e.g.*, *Koons Buick Pontiac GMC v. Nigh*, 543 U.S. 50, 66 (2004) (Stevens, J., concurring) ("[I]t is always appropriate to consider all available evidence of Congress' true intent when interpreting its work product.") (citing *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543-44 (1940) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'")).

The uncontradicted holdings of the D.C., Seventh, and Eighth Circuits that Congress intended pesticide manufacturers to bear the burden of proving the safety of their products at all stages of the administrative process are persuasive and directly on point. Accordingly, the Court should find that EPA's regulation at 40 C.F.R. § 164.80, which is consistent with this established law, does not violate the APA.

**B.    *The Structure and Text of FIFRA Reflect This Legislative Intent.***

The structure and text of FIFRA clearly effect Congress's intent to facilitate EPA's regulation of dangerous pesticides. In interpreting FIFRA, this Court should look at the structure of the statute as a whole. *See Koons Buick Pontiac GMC*, 543 U.S. at 60 ("Statutory construction is a holistic endeavor.") (internal quotation marks omitted); *Gustafson v. Alloyd, Co.*, 513 U.S. 561, 569 (1995) (courts should interpret regulatory statutes as establishing

"symmetrical and coherent regulatory scheme[s]"); *Philbrook v. Glodgett*, 421 U.S. 707, 713

(1975) ("'In expounding a statute, we must not be guided by a single sentence or member of a

sentence, but look to the provisions of the whole law, and to its object and policy.'").

FIFRA invokes the procedures for cancellation hearings in two contexts:  where an

application for registration has been denied and where the Agency has expressed its intention to

cancel a registration.  The structure of the two provisions detailing these procedures

demonstrates the parallels between the registration process and the cancellation process.

Section 3 of FIFRA provides in relevant part,

> If the Administrator determines that the requirements of paragraph (5) for
> registration are not satisfied, the Administrator shall notify the applicant for
> registration of the Administrator's determination and of the Administrator's
> reasons . . . .  The Administrator shall promptly publish in the Federal Register
> notice of such denial of registration and the reasons therefor.  Upon such
> notification, *the applicant for registration* or other interested person with the
> concurrence of the applicant *shall have the same remedies as provided* in section
> 136d of this title [to request a *cancellation hearing*].

7 U.S.C. § 136a(c)(6) (emphasis added).  By incorporating the cancellation hearing

provisions outlined in § 136d, the FIFRA registration provisions afford the same

remedies to applicants whose registration applications have been denied as are available

to registrants whose registrations have been proposed for cancellation.  Similarly,

registrants whose registrations are ineligible for reregistration also have the same rights

under the act as original applicants who were denied registration.  In other words, under

FIFRA, all pesticide manufacturers whose pesticides are found unsafe by EPA have the

same remedies available to them, regardless of which stage they are at in the

administrative process.

FIFRA establishes a set of procedures for registration and cancellation hearings that are

independent of the APA.  Section 7(c) of the APA provides, in relevant part:

> Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. . . . A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

5 U.S.C. § 556(d). In contrast, the scheme set up in FIFRA for registration and cancellation hearings establishes an active role for the ALJ to compile the hearing record. The ALJ has the power to issue subpoenas and compel testimony upon a showing by any party that the evidence will be relevant, as well as to issue protective orders. 7 U.S.C. § 136d(d). The ALJ must also, where she determines it necessary or desirable and any party so requests, refer questions of scientific fact to the National Academy of Sciences ("NAS"). *Id.* This report must be an "objective and competent scientific review of the questions presented" to the NAS, and the ALJ must incorporate this report, along with the data, into the hearing record. *Id.* This active pursuit and production of evidence for the record creates a different type of hearing than that described by the general provisions of the APA, which envision an ALJ with no other role in creating the record than to receive evidence introduced by the parties. Under FIFRA, following the hearing, the Administrator is required to reevaluate his initial determination, considering any new evidence developed by the ALJ, and issue a final order that takes that new evidence into account. *See id.*

The hearing provisions in 7 U.S.C. § 136d(d) governing registration and cancellation hearings do not mention or incorporate the APA. By stark contrast, FIFRA's provisions governing expedited suspension hearings provide that "[t]he hearing shall be held in accordance with the provisions of subchapter II of chapter 5 of Title 5, except that the presiding officer need not be a certified [ALJ]." 7 U.S.C. § 136d(c)(2). Thus, Congress, in drafting § 136d(c), expressly considered the hearing provisions of the APA and chose to include suspension

proceedings within the APA's scope.  And in drafting § 136d(d), Congress made the opposite

choice, leaving out reference to the APA and instead creating a distinct set of detailed procedures

for cancellation hearings.  *See Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) (citing

the interpretive canon, *expressio unius est exclusio alterius*, "expressing one item of [an]

associated group or series excludes another left unmentioned"); *Tenn. Valley Auth. v. Hill*, 437

U.S. 153, 188 (1978) (same).

It is plain that Congress "otherwise provided by statute" the requirements for FIFRA

hearings associated with registration, reregistration, and cancellation of pesticides, including the

allocation of the burden of persuasion.  As such, section 7(c) of the APA is inapplicable, and

provides no basis for FMC to challenge EPA's burden of proof regulation implementing

FIFRA's clear mandates.

**II.**    ***Even if APA § 7(c) Sets the Burden of Persuasion in FIFRA Hearings, the Registrant Seeking Reregistration Is the Proponent of the Relevant Order and Must Bear the Burden of Proving that It Is Entitled to Reregistration.***

Even if this Court finds that APA § 7(c) applies, requiring that the burden of persuasion

be on "the proponent of the order" in FIFRA cancellation hearings, the application of EPA's

regulation at 40 C.F.R. § 164.80 should still be upheld as valid under the circumstances at issue

in this case.  Under the FIFRA reregistration review process, denial of reregistration is the status

quo or default position.  In contesting a cancellation determination that is the outgrowth of a

denial of reregistration, the registrant seeks to change this status.  This makes the registrant the

"proponent" of the relevant order under the meaning of APA § 7(c).

In its petition to EPA, FMC argued that "[w]here EPA seeks to cancel an existing

pesticide registration, the Agency is the proponent of the cancellation order."  Compl. Ex. 1 at 3.

That framing suggests that the status quo is registration, and that EPA, in seeking to cancel

registration, is the proponent of changing the status quo.  FMC reinforced that framing in its

15

motion, asserting (without citation) that "the proponent of a cancellation order" is "the party seeking to change the status quo."  Pl.'s Mem. at 5-6.

The Supreme Court has confirmed that "the proponent of the order" is the party requesting a shift in the status quo.  In *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997), again interpreting the LHWCA, the Court found:

> On the initial claim for nominal compensation under the Act, . . . the employee has the burden of showing by a preponderance of the evidence that he has been injured and that the odds are significant that his wage-earning capacity will fall below his pre-injury wages at some point in the future.  But when an employer seeks modification of previously awarded compensation, the employer is the proponent of the order with the burden of establishing a change in conditions justifying modification.

521 U.S. at 139; *see also Greenwich Collieries*, 512 U.S. at 278 (finding that, in adjudications of employee antiunion retaliation claims under the National Labor Relations Act, the employee is first required "to persuade [NLRB] that antiunion sentiment contributed to the employer's decision," and then "the burden of persuasion [properly shifted to] the employer as to its affirmative defense" that it fired the employee for permissible reasons).

Yet the adjudicatory schemes of the LHWCA and FIFRA differ in an essential way. Once compensation has been awarded under the LHWCA, it becomes an entitlement that continues unless forfeited, with the remainder paid upon the worker's death.  33 U.S.C. § 908(d), (h).  By contrast, registration and reregistration of a pesticide under FIFRA are far from entitlements.  FIFRA establishes a status quo of non-registration and a continuing burden on the registrant to prove its product's safety.

As with registration, an applicant for reregistration bears the burden of proving to EPA that the pesticide satisfies the FIFRA safety standard and should be reregistered.  *See, e.g.*,

16

7 U.S.C. § 136a-1(e)(1).[6]  Unless the registrant notifies EPA that it seeks reregistration, submits

data in compliance with statutory requirements, and requests a hearing to contest cancellation if

reregistration is denied, the pesticide's registration will be cancelled automatically.[7]  *See*

7 U.S.C. § 136a-1(d)(2) (requiring registrant to give notice of intent to seek reregistration and

pay a fee to cover the costs), 136a-1(d)(3) (requiring registrant to submit a list of missing and

inadequate data and commit to submitting studies to replace those data), 136a-1(e) (requiring

registrant to submit studies concerning, among other things, its product's effect on human health

and the environment).

        Barring affirmative actions by the registrant to comply with these provisions,

reregistration will not occur.  The registrant thus serves as the proponent of reregistration,

because it is the one seeking a change in the status quo.  Because cancellation follows naturally

from a registrant's failure to act, the registrant, not the Agency, is the proponent of an order to

change that status quo.

        Further, FIFRA gives EPA the discretion to issue a notice of cancellation *or* hold a

hearing to determine whether to cancel the registration.  7 U.S.C. § 136d(b).  With respect to

carbofuran, EPA has not initiated a cancellation hearing; it is FMC that has notified EPA that it

will seek a hearing.  In requesting a hearing, FMC will be challenging EPA's determination that

---

[6] FIFRA's legislative history makes clear that the burden of providing data by which a product's
safety is measured always rests with the registrant.  H.R. Rep. No. 104-669(I), at 37 (1996) (Pl.'s
Ex. B at 37) ("Under the FIFRA, pesticide registrants are responsible for providing all of the test
data necessary to satisfy the EPA's registration requirements.").

[7] In fact, until 1996, registrations were automatically cancelled after five years.  The Food
Quality Protection Act, Pub. L. No. 104-170, 110 Stat. 1489 (1996), replaced the five-year
cancellation provision with a requirement for registration review, "establishing ongoing
scientific look-back procedures" to create "a continuous reregistration process that both the
Agency and the registrant can plan for."  H.R. Rep. No. 104-669(I), at 38 (1996) (Pl.'s Ex. B
at 38).  The statute therefore puts registrants on notice that registration does not continue
automatically but must continuously be resought.

carbofuran does not meet FIFRA safety standards. FMC's position is the same as if the original registration of carbofuran had been denied. As noted above, an applicant whose registration is refused has the same remedies as a registrant requesting a hearing in cancellation proceedings. 7 U.S.C. § 136a(c)(6). As FMC is the party seeking to change the status quo, it is the proponent of the relevant order for the purposes of APA § 7(c).

In its Complaint, FMC artfully glosses over the reregistration process that gave rise to the carbofuran IRED and EPA's determination to cancel all uses of carbofuran. EPA's announcement that it intends to cancel carbofuran emerged at the conclusion of an extensive reregistration process. When examined within the full, proper context of reregistration, FMC, as proponent of a reregistration order, is the proponent of the relevant order for the purposes of APA § 7(c). The burden of persuasion is thus rightfully placed on FMC to prove that carbofuran meets the FIFRA safety standard.

## CONCLUSION

For the reasons set forth above, NRDC respectfully requests that the Court find that EPA properly denied FMC's petition to revoke FIFRA's burden of proof regulation, deny FMC's motion for judgment on the pleadings, and grant EPA's motion for judgment on the pleadings.

Dated: October 29, 2007

Respectfully submitted,

 /s/ John F. Mardula
John F. Mardula, VSB No. 15606
Roberts Abokhair & Mardula, LLC
11800 Sunrise Valley Drive, Suite 1000
Reston, Virginia  20191-5302
(703) 391-2900 - Telephone
(703) 391-2901 - Facsimile

Mae C Wu (admitted *pro hac vice*)
Nancy S. Marks (admitted *pro hac vice*)
Thomas Cmar (admitted *pro hac vice*)
Natural Resources Defense Council
1200 New York Ave., N.W.
Washington, DC  20005
(202) 289-6868 - Telephone
(202) 289-1060 - Facsimile

*Attorneys for Defendant-Intervenor*
*Natural Resources Defense Council, Inc.*