**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| FMC CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 1:07cv819-GBL-BRP |
| | ) |
| UNITED STATES ENVIRONMENTAL | ) |
| PROTECTION AGENCY | ) |
| | ) |
| and | ) |
| | ) |
| STEVEN L. JOHNSON, in his official | ) |
| capacity as Administrator of the United | ) |
| States Environmental Protection Agency | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| NATURAL RESOURCES DEFENSE | ) |
| COUNCIL, INC. | ) |
| | ) |
| Intervenor. | ) |
| _____ | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS...............................................................1

STATUTORY AND REGULATORY BACKGROUND................................2

I.   The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")................2

     A.   Registration.......................................................2

     B.   Reregistration......................................................3

     C.   Cancellation and Denial Hearings......................................4

     D.   Suspension........................................................4

     E.   EPA's 1973 Regulation...............................................5

II.  The Administrative Procedure Act ("APA")....................................5

III. EPA's Decision Denying the Plaintiff's Petition to Initiate Rulemaking.............6

IV.  EPA's Ongoing Consideration of Carbofuran..................................6

STANDARD OF REVIEW........................................................7

I.   Standard for Reviewing Plaintiff's Motion....................................7

II.  Standard of Review for Summary Judgment Motions Involving Review of Agency Actions.....................................................................7

III. The Arbitrary and Capricious Standard of Review..............................9

ARGUMENT..................................................................10

I.   THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIM.............10

     A.   The Challenge to the Regulations is Time-Barred.........................10

B.      Review in this action is limited to EPA's denial of the FMC's petition to initiate rulemaking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.     EPA Properly Denied the Plaintiff's Petition for Rulemaking, Because FIFRA Falls Squarely Within the APA Exception. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

A.      EPA's Interpretation that FIFRA Placed the Burden of Proof on the Proponent of Registration at All Times is Fully Supported by the Text and Context of FIFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1.      In 1964, Congress Specifically Placed the Burden of Proof on the Registrant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.      The 1972 Amendments to FIFRA Did Not Reverse Congress's 1964 Allocation of the Burden of Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.      The structure of FIFRA further supports EPA's interpretation that FIFRA places the burden of proof on the registrant at all times. . . . . . . . . . . . . . 21

B.      EPA's Interpretation of FIFRA is Supported by the Existing Case Law. . . . . . . 23

1.      Courts have consistently rejected the Plaintiff's interpretation. . . . . . . . . 24

2.      EPA's interpretation comports with the case law decided after *Greenwich Collieries*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

3.      The Plaintiff misconstrues *Greenwich Collieries*. . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**CASES:**

*American Horse Prot. Ass'n v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . 9, 15

*Arkansas Power & Light v. Interstate Commerce Comm'n*, 725 F.2d 716 (D.C. Cir. 1984). . . . . 9

*Bates v. United States*, 522 U.S. 23 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Camp v. Pitts*, 411 U.S. 138 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Cellnet Commc'n, Inc. v. FCC*, 965 F.2d 1106 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Champion Int'l Corp. v. EPA*, 850 F.2d 182 (4th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971). . . . . . . . . . . . . . . . . . . 8

*Continental Chemiste Corp. v. Ruckelshaus*, 461 F.2d 331 (7th Cir. 1972). . . . . . . . . . . . . . . . 24

*Deutsche National Bank Trust Co. v. Batmanghelidj*, No.1:07cv683,
   2007 U.S. Dist. LEXIS 68499 (E.D. Va. Sept. 17, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Director, Office of Workers' Compensation Programs v. Greenwich Collieries*,
   512 U.S. 267(1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 26

*Dow Chemical Co. v. Ruckelshaus*, 477 F.2d 1317 (8th Cir. 1973). . . . . . . . . . . . . . . . . . . . . 3, 24

*Dow v. Blum*, 469 F. Supp. 892 (E.D. Mich. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Environmental Defense Fund v. EPA*, 465 F.2d 528 (D.C. Cir. 1972). . . . . . . . . . . . . . . . . 20, 24

*Environmental Defense Fund v. EPA*, 510 F.2d 1292 (D.C. Cir. 1975). . . . . . . . . . . . . . . . . . . 24

*Environmental Defense Fund v. EPA*, 548 F.2d 998 (D.C. Cir. 1977). . . . . . . . . . 3, 18, 21, 24, 26

*Environmental Defense Fund v. Ruckelshaus*, 439 F.2d 584 (D.C. Cir. 1971). . . . . . . . . . . 18, 20

*Florida Fruit & Veg. Ass'n v. Brock*, 771 F.2d 1455 (11th Cir. 1985). . . . . . . . . . . . . . . . . . . . 8

*Geller v. FCC*, 610 F.2d 973 (D.C. Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanauer v. Reich*, 82 F.3d 1304 (4th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Industrial Union Dept. v. American Petroleum Inst.*, 448 U.S. 607 (1980). . . . . . . . . . . . . 15, 25

*Leedom v. Kyne*, 358 U.S. 184 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Maier v. EPA*, 114 F.3d 1032 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Massachusetts v. ICC*, 893 F.2d 1368 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Montana v. Clark*, 749 F.2d 740 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*NRDC v. NRC*, 666 F.2d 595 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*NRDC v. SEC*, 606 F.2d 1031 (D.C. Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*National Mining Ass'n v. Department of Interior*, 70 F.3d 1345 (D.C. Cir. 1995). . . . . . . . 12, 14

*National Mining Ass'n v. Department of Interior*, 251 F.3d 1007 (D.C. Cir. 2001). . . . . . . . . 27

*New West Materials LLC & JWR Inc. v. Interior Board of Land Appeals*,
   398 F. Supp. 2d 438 (E.D. Va. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Norfolk Dredging Co. v. City of Chesapeake*, No. 2:07cv130, 2007 U.S. Dist.
   LEXIS 52673 (E.D. Va. July 20, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ohio v. EPA*, 838 F.2d 1325 (D.C. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pamlico-Tar River Foundation v. U.S. Army Corps of Engineers*,
   329 F. Supp. 2d 600 (E.D.N.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147 (D.C. Cir. 1990). . . . . . . . . . . . 11

*Stearns Electric Paste Co. v. EPA*, 461 F.2d 293 (7th Cir. 1972). . . . . . . . . . . . . . . . . . . 3, 20, 24

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978). . . . . . . . . . . . . . . . . . . 7

*Virginia Agriculture Growers Ass'n v. Donovan*, 774 F.2d 89 (4th Cir. 1985). . . . . . . . . . . . . 8

**STATUTES:**

Administrative Procedure Act:

5 U.S.C. § 553(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

5 U.S.C. § 556. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5 U.S.C. § 556(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13, 15, 21, 24, 25, 26, 28

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 706(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

5 U.S.C. § 706(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 706(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Black Lung Benefits Act, 30 U.S.C. §§ 901-945. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

30 U.S.C. § 932(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y. . . . . . . . . . . . . . . . 1

Section 2(bb), 7 U.S.C. § 136(bb). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Section 3(a), 7 U.S.C. § 136a(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

Section 3(c)(1)(F), 7 U.S.C. § 136a(c)(1)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Section 3(c)(1)(F)(i), 7 U.S.C. § 136a(c)(1)(F)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 3(c)(2)(B), 7 U.S.C. § 136a(c)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Section 3(c)(2)(B)-(D), 7 U.S.C. § 136a(c)(2)(B)-(D). . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 27

Section  3(c)(5), 7 U.S.C. § 136a(c)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

Section 3(c)(5)(C), 7 U.S.C. §136a(c)(5)C.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 3(c)(6), 7 U.S.C. § 136a(c)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 24

Section 3(g)(1)(A), 7 U.S.C. § 136a(g)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 4, 7 U.S.C. § 136a-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 4(a), (g)(1)-(2), 7 U.S.C. §§ 136a-1(a), (g)(1)-(2). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 4(d)(3), 7 U.S.C. § 136a-1(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 4(d)(4)(B), 7 U.S.C. § 136a-1(d)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Section 4(e)(1), 7 U.S.C. § 136a-1(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

Section 4(f)(1)(B), 7 U.S.C. § 136a-1(f)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Section 4(g), 7 U.S.C. § 136a-1(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 4(g)(2)(D), 7 U.S.C. § 136a-1(g)(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 6, 7 U.S.C. § 136d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 6(a)(2), 7 U.S.C. § 136d(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

Section 6(b), 7 U.S.C. § 136d(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18, 20

Section 6(c), 7 U.S.C. § 136d(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Section 6(c)(1), 7 U.S.C. § 136d(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 19

Section 6(c)(2), 7 U.S.C. §136d(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 19

Section 6(c)(3), 7 U.S.C. §§ 136d(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 6(d), 7 U.S.C. § 136d(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21, 22

Section 6(f), 7 U.S.C. § 136d(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 12(a)(1), 7 U.S.C. § 136j(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 16, 7 U.S.C. § 136n. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 16(b), 7 U.S.C. § 136n(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 25(a)(1), 7 U.S.C. § 136w(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 919(d). . . . . . . . . . . . . 26

Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201-1328. . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

**RULES:**

Fed. R. Civ. P. 56(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**REGULATIONS:**

40 C.F.R. § 152.118(b)-(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 C.F.R. § 152.118(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 C.F.R. Part 164. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

40 C.F.R. Part 164, Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

40 C.F.R. § 164.80(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10, 12, 13, 14, 15, 28

**LEGISLATIVE MATERIALS:**

H.R. 10729 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

110 Cong. Rec. 2948-49 (1964).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

117 Cong. Rec. 40038 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

H.R. Rep. No. 88-1125 (1964).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

H.R. Rep. No. 91-637 (1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

H.R. Rep. No. 92-1540 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4130. . . . . . . . . . . . . . . . . 20

H. Rep No. 100-939 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S. Rep. No. 88-573 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

S. Rep. No. 92-838 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993.. . . . . . . . . . . . . . . . . . . 20

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants U.S. Environmental Protection Agency, *et al.*, (collectively "EPA") submit

this memorandum in support of its Cross-Motion for Summary Judgment and in opposition to

Plaintiff FMC Corporation's Motion for Judgment on the Pleadings.  In this lawsuit, the Plaintiff

challenges EPA's denial of its petition to amend a regulation promulgated in 1973 that applies to

administrative hearings under the Federal Insecticide, Fungicide, and Rodenticide Act

("FIFRA").   This regulation governs the burden of proof that applies in hearings challenging a

final determination to cancel a pesticide registration.

Plaintiff FMC Corporation submitted to EPA a "Petition for Amendment of Rule" dated

November 7, 2006.  Compl., Ex. 1.  At Plaintiff's request, representatives from the EPA Office

of General Counsel met with counsel for the Plaintiff in February 2007.  Compl., Ex. 3.  The

Plaintiff submitted to EPA a letter dated March 7, 2007, *id.*, and EPA responded to the

rulemaking petition in a letter dated April 3, 2007.  Compl., Ex. 4.

In its response to the petition to amend the rule, EPA explained that it declined to

reconsider the rule governing the burden of proof  applicable in adjudicatory hearings to cancel a

pesticide's registration under FIFRA, 7 U.S.C. §§ 136-136y.  EPA had considered, and rejected,

Plaintiff's request that EPA initiate a rulemaking to amend the 1973 rule.  EPA reasonably

explained that it considered FMC's arguments in 1996 and determined that they lacked merit.

EPA further explained that the Plaintiff's petition did not raise any new factual or legal issues

1

and EPA therefore appropriately declined to initiate a rulemaking to amend the 1973 rule.

EPA's Cross-Motion for Summary Judgment should be granted because the Plaintiff's claims represent a challenge to EPA's 1973 regulation that is well past the applicable statute of limitations that defines this Court's jurisdiction and the United States' limited waiver of sovereign immunity. Even assuming, *arguendo*, that the Plaintiff could establish the jurisdictional prerequisites for its lawsuit, summary judgment should be entered for EPA. This lawsuit is based upon misconceptions of FIFRA and the Administrative Procedure Act ("APA"), as well as an overly broad reading of *Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 275-76. EPA acted reasonably and in accord with the law in denying the Plaintiff's petition for rulemaking. Therefore, this Court should grant EPA's Motion for Summary Judgment and deny the Plaintiff's Motion for Judgment on the Pleadings.

### STATUTORY AND REGULATORY BACKGROUND

I.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")

A.    Registration

Section 3(a) of FIFRA, 7 U.S.C. § 136a(a), provides that, with minor exceptions, "no person in any State may distribute or sell to any person any pesticide that is not registered" under the Act. *See also id.* § 136j(a)(1). A registration is a license that establishes the terms and conditions under which a pesticide may be sold and used. *See id.* § 136a(c)(1)(F)(i).

To obtain a registration, an applicant must submit data to demonstrate that the pesticide satisfies the standard for registration -- among other things, that the pesticide performs its intended function without causing "unreasonable adverse effects on the environment." *Id.* § 136a(c)(5)(C). "Unreasonable adverse effects on the environment" are:

2

>(1) any unreasonable risk to man or the environment, taking into account the
>economic, social, and environmental costs and benefits of the use of any pesticide,
>or (2) a human dietary risk from residues that result from the use of a pesticide in
>or on any food inconsistent with the standard under section [408 of the Federal
>Food, Drug, and Cosmetic Act].

*Id.* § 136(bb).  The burden of proving that a pesticide satisfies the standard is on the proponent of

registration and continues as long as the registration remains in effect.  *Environmental Defense*

*Fund v. EPA*, 548 F.2d 998, 1018 (D.C. Cir. 1977), *cert. denied*, 431 U.S. 925 (1977); *Dow*

*Chem. Co. v. Ruckelshaus*, 477 F.2d 1317, 1324-25 (8th Cir. 1973); *Stearns Elec. Paste Co. v.*

*EPA,* 461 F.2d 293, 304-306 (7th Cir. 1972).

     If the Administrator determines that an application for registration does not meet the

criteria in FIFRA § 3(c)(5), 7 U.S.C. § 136a(c)(5), he must notify the applicant of this

determination and allow the applicant thirty days to correct the deficiencies.  7 U.S.C. §

136a(c)(6); 40 C.F.R. § 152.118(b)-(c).  If an applicant fails to do so, EPA may issue a notice of

denial, which must be published in the *Federal Register*.  7 U.S.C. § 136a(c)(6); 40 C.F.R. §

152.118(d).  In such cases, "the applicant for registration or other interested person with the

concurrence of the applicant, shall have the same remedies as provided for in section 6."  7

U.S.C. § 136a(c)(6).  FIFRA § 6 provides for hearings in various circumstances.  *See id.* § 136d.

     B.  <u>Reregistration</u>

     Section 4 of FIFRA requires EPA to reexamine previously registered pesticides to assure

that these older pesticides meet current standards for initial registration in FIFRA § 3(c)(5).  *Id.* §

136a-1.  In essence, the registrant is treated as an applicant, required to demonstrate again that a

product meets the registration standard of FIFRA § 3(c)(5).  *See id.* §§ 136a-1(a), (g)(1)-(2).  The

Administrator must take appropriate action if he determines that an older pesticide should not be

reregistered.  *Id*. §§ 136a-1(a), (g)(2)(D).

     C.  <u>Cancellation and Denial Hearings</u>

EPA may cancel a registration if it appears that the pesticide, when used according to widespread and commonly recognized practices, "generally causes unreasonable adverse effects on the environment." *Id*. § 136d(b) & (f). The statutory process for cancellation described in 7 U.S.C. § 136d(b) requires EPA to issue a formal notice of intent to cancel (NOIC) which provides adversely affected persons an opportunity for a formal adjudicatory hearing. See *id*. § 136d(b). If no hearing is requested, the notice of intent becomes a final cancellation order.  *Id*. § 136d(b).   If a hearing is properly requested, the registration remains unaffected pending the resolution of a formal adjudicatory hearing conducted in accordance with FIFRA § 6(d) and EPA's regulations, including the regulation at issue in this case.  *Id*. § 136d(d); 40 C.F.R. part 164.  At the conclusion of the administrative process, an order is issued, "either revoking the Administrator's notice of intention issued pursuant to [FIFRA section 6(b)], or...cancelling the registration." 7 U.S.C. § 136d(d).   Sale, distribution and use of the pesticide remain unaffected until a final Agency decision is rendered on the cancellation, at which point the decision may be appealed to the Court of Appeals.  *Id*. § 136n(b).

     D.  <u>Suspension</u>

     If EPA determines that action is necessary to prevent an imminent hazard during the time necessary to complete a cancellation, EPA may suspend a pesticide's registration, preventing further sale and distribution of the pesticide.  *Id.* § 136d(c)(1).  Simultaneously with the suspension order, EPA must issue a notice of intent to cancel the registration.  *Id.*  A suspension order becomes effective if the registrant does not request a hearing within five days.  *Id.* §

4

136d(c)(2).  If a hearing is requested, the registration remains unaffected until the conclusion of

an expedited hearing, in which the sole issue is whether an imminent hazard exists.  *Id.* §

136d(c)(1).  The statute specifies that the hearing "shall be held in accordance with . . .

subchapter II of [title 5 of the United States Code]."  *Id.* § 136d(c)(2).   At the conclusion of the

hearing, if the Administrator finds that an imminent hazard exists, the registration is suspended

during the cancellation hearing.  *Id.* § 136d(c)(1).

      E.      <u>EPA's 1973 Regulation</u>

      The EPA regulation establishing the "order of proceeding and burden of proof" in

hearings under FIFRA § 6 (including hearings on cancellation and suspension of pesticide

registrations) states, "On all issues arising in connection with the hearing, the ultimate burden of

persuasion shall rest with the proponent of the registration."  40 C.F.R. § 164.80(b).  This rule

has not changed since its promulgation in July 1973.  *See* 40 C.F.R. Pt. 164, Table of Contents.

      There is no statute of limitations in FIFRA for challenges to regulations implementing

FIFRA.  *See* 7 U.S.C. § 136w(a)(1) (authorizing EPA Administrator to promulgate regulations to

implement FIFRA); 7 U.S.C. §136n (judicial review under FIFRA).  The APA does not limit the

time period for filing a challenge to a government action.  Therefore, a lawsuit against the

government challenging regulations implementing FIFRA is subject to the limited waiver of

sovereign immunity in 28 U.S.C. § 2401, which lasts for six years "after the right of action first

accrues."  *Id.*

II.      <u>The Administrative Procedure Act ("APA")</u>

      The APA directs federal agencies to "give an interested person the right to petition for the

issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).   The APA requires that "[p]rompt

notice" be given "of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding.  Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."  *Id.*  The APA further provides, "A person suffering legal wrong because of agency action ... is entitled to judicial review thereof."  5 U.S.C. § 702.  As noted above, the "final agency action" under review in this case is EPA's denial of the Plaintiff's petition for rulemaking, which requested that EPA reopen existing regulations that are codified at 40 C.F.R. § 164.80(b).

III.     EPA's Decision Denying the Plaintiff's Petition to Initiate Rulemaking

In a letter dated April 3, 2007, EPA responded to the Plaintiff's petition requesting that EPA initiate rulemaking to amend the 1973 regulation.  Compl., Ex. 4.  The response explained that, contrary to an assertion in the petition to initiate rulemaking, EPA had previously concluded that the 1973 burden of proof regulation was consistent with the Supreme Court's opinion in *Greenwich Collieries*, 512 U.S. at 275-76.  Compl. at 1-2.  The response to the petition to initiate rulemaking quotes a 1996 regulation's preamble, where another company had raised the same issue.[1]  *Id.*  EPA concluded that the petition to initiate rulemaking did not raise new factual or legal information that would justify revisiting the issue.  *Id.* at 2-3.

IV.     EPA's Ongoing Consideration of Carbofuran

EPA issued an "Interim Reregistration Eligibility Decision" for carbofuran pesticide in

---

[1]The Plaintiff's Memorandum in Support of Its Motion for Judgment on the Pleadings apparently mistakes a comment from an industry commenter for EPA's having "conceded the applicability of 5 U.S.C. § 556(d)" in the 1996 preamble and in the denial of the petition to initiate rulemaking.  Pl. Mem. at 9-10.  EPA has made no such concession.

August 2006.  Compl. ¶ 22.  This document was issued at the end of the reregistration review described in Section B, "Reregistration," above.  EPA has not yet taken any of the steps that FIFRA mandates to cancel a pesticide's registration, although the Agency has announced that in 2008 it will convene a hearing of the Science Advisory Panel to consider a proposal to cancel carbofuran's pesticide registration.  *See* Compl. ¶ 28.

## STANDARD OF REVIEW

I.      Standard for Reviewing Plaintiff's Motion

The standard of review for a Motion for Judgment on the Pleadings, which the Plaintiff has filed, is the standard used in reviewing a Rule 12(b)(6) Motion to Dismiss.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).  A Rule 12(b)(6) Motion serves to "test the sufficiency of a complaint," *Id.* at 244, and should be granted only if "it appears certain that the Plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Id.; see also Deutsche Nat'l Bank Trust Co. v. Batmanghelidj*, No. 1:07cv683, 2007 U.S. Dist. LEXIS 68499, *4 (E.D. Va. Sept. 17, 2007).  The court is not required to accept as true the legal conclusions set forth in a complaint.  *Edwards*, 178 F.3d at 244; *see also Norfolk Dredging Co. v. City of Chesapeake*, No. 2:07cv130, 2007 U.S. Dist. LEXIS 52673, *5 (E.D. Va. Jul. 20, 2007).

II.     Standard of Review for Summary Judgment Motions Involving Review of Agency Actions

It is well settled that judicial review of administrative actions like the denial of a petition to initiate rulemaking are governed by the APA, 5 U.S.C. § 706(2).  *See, e.g., Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978)(citations omitted).  Review of agency action under the APA is limited to the administrative record that was before the agency at the

time of the decision. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-420 (1971). "'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Virginia Agric. Growers Ass'n v. Donovan*, 774 F.2d 89, 92 (4th Cir. 1985)(quoting *Camp v. Pitts*, 411 U.S. at 143).

Federal Rule of Civil Procedure 56 allows a defending party to move for summary judgment "at any time. . . ." Fed. R. Civ. P. 56(b). Summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Resolution by summary judgment is particularly appropriate where, as here, review is limited to the administrative record. *Florida Fruit & Veg. Ass'n v. Brock*, 771 F.2d 1455, 1459 (11th Cir. 1985); *Pamlico-Tar River Found. v. U.S. Army Corps of Engineers*, 329 F. Supp. 2d 600, 608 (E.D.N.C. 2004). In such a proceeding, the district court is not tasked with the familiar role of assessing whether or not disputed facts exist, as would be the case were the facts and issues subject to de novo judicial consideration in a summary judgment proceeding. Rather, it is the court's duty "to determine if the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Pamlico-Tar River Found.*, 329 F. Supp. 2d at 608 (citation and internal quotations omitted). As this Court has observed, summary judgment is particularly appropriate in suits under the APA, where "'the focal point ... should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *New West Materials LLC & JWR Inc. v. Interior*

8

*Board of Land Appeals*, 398 F. Supp. 2d 438, 442 (E.D. Va. 2005)(quoting *Camp v. Pitts*, 411

U.S. 138, 142 (1973)).

III.     <u>The Arbitrary and Capricious Standard of Review</u>

      This challenge to final agency action under the APA raises two questions:  whether EPA

acted in an arbitrary and capricious manner, 5 U.S.C. § 706(2)(A), or "contrary to law," *id.* §

706(2)(C).  Where the first question concerns a challenge to an agency's decision not to initiate

rulemaking, a highly deferential standard applies.  "Review under the 'arbitrary and capricious'

standard 'encompasses a range of levels of deference to the agency.'" *Maier v. U.S. EPA*, 114

F.3d 1032, 1039-40 (10th Cir. 1997)(citations omitted).  At the "high end" of the spectrum is an

agency's refusal to initiate rulemaking.  *Id.*  The D.C. Circuit, recognizing the agency discretion

involved in such a determination, has stated that "[s]uch a refusal is to be overturned only in the

rarest and most compelling of circumstances, which have primarily involved plain errors of law,

suggesting that the agency has been blind to the source of its delegated power." *American Horse*

*Prot.  Ass'n v. Lyng*, 812 F.2d 1, 5 (D.C. Cir. 1987)(citations and internal quotation marks

omitted).  Agency refusals to initiate rulemaking are reviewed "with a deference so broad as to

make the process akin to non-reviewability." *Cellnet Commc'n, Inc. v. FCC*, 965 F.2d 1106,

1111 (D.C. Cir. 1992).

      The standard of review is particularly high when dealing with an agency's decision not to

initiate a rulemaking to reopen an existing rule or a previous determination.  As the D.C. Circuit

explained in *Arkansas Power & Light Co. v. Interstate Commerce Comm'n*, 725 F.2d 716, 723

(D.C. Cir. 1984),  "... the scope of review under the [APA] of an agency decision to deny a

rulemaking petition is *very narrow*.  Such review is limited to ensuring that the agency has

9

adequately explained the facts and policy concerns it relied on, and that the facts have some basis

in the record." *Id.* at 723. (citations omitted).

The other inquiry, whether EPA's determination was contrary to law, is governed by

*Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984).  If Congress "has directly spoken to the

precise question at issue" and its intent is clear, then "the court, as well as the agency, must give

effect to [that] unambiguously expressed intent."  *Id.* at 842-843.  If "the statute is silent or

ambiguous with respect to the specific issue, the question for the court is whether the agency's

answer is based on a permissible construction of the statute."  *Id.* at 843.  If so, this Court must

defer to the agency's construction of the statute.  *See id.*

## ARGUMENT

## I.     THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIM

### A.     The Challenge to the Regulations is Time-Barred.

The Plaintiff's challenge to EPA's regulations at 40 C.F.R. § 164.80(b) is time-barred,

because it is raised well after the applicable 6-year statute of limitations has run.  The Plaintiff's

submittal of a petition for rulemaking, and EPA's decision not to initiate a rulemaking to modify

this regulation, did not establish a new 6-year period in which FMC could challenge EPA's 1973

regulation.

The Plaintiff admits that this case "involves FMC's challenge *to a regulation*" that was

promulgated by EPA in 1973.  Pl. Mem. at 1 (emphasis added).  Because neither FIFRA nor the

APA contains a provision limiting the time period for challenging a government action, this

claim is subject to the six-year limitations period in 28 U.S.C. § 2401.  The time allowed for

challenging a regulation promulgated in 1973 ended in 1979.

10

Courts have recognized a narrow exception to the statute of limitations for claims that agency action exceeds the scope of the agency's statutory mandate or violates a clear statutory mandate. *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *see also Hanauer v. Reich*, 82 F.3d 1304 (4th Cir. 1986). The Fourth Circuit has recognized both the existence of this exception and its narrow scope. As the Fourth Circuit stated in *Hanauer*, "even when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception ... exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." 82 F.3d at 1307. Similarly, in *Champion Int'l Corp. v. EPA*, 850 F.2d 182, 185-186 (4th Cir. 1988), the Fourth Circuit observed that *Kyne* "requires that a federal court ascertain whether an administrative agency is acting within its authority and if the decision is that the agency is within its authority, the court is then required to dismiss the case . . . ." *Id.*

The D.C. Circuit has stated that a "a claim that agency action was violative of statute may be raised outside a statutory limitations period by filing a petition for amendment or rescission of the agency's regulations, and challenging the denial of that petition." *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990). This type of review is available only where a rule is clearly outside of an agency's jurisdiction or clearly violates a statute. "[A] protestant, who could have but did not seek review [when an rule was promulgated] may not create the basis for a reviewable order by unilaterally petitioning for repeal or amendment of a regulation. To permit any complainant to restart the limitations period by petitioning for review of a rule ... would eviscerate the congressional concern for finality embodies in time limitations on review." *Montana v. Clark*, 749 F.2d 740, 744 (D.C. Cir. 1984), *explaining NRDC v. SEC*, 606 F.2d 1031, 1047 (D.C. Cir. 1979). Simply petitioning for amendment of a regulation does

11

not restart the limitations period; rather, for a court to review a rule after the limitations period

has expired would require the rule to be clearly outside the agency's jurisdiction or to conflict

with a statute.

The regulation could be subject to review if EPA had taken steps to actively reconsider it,

such as seeking public comment on the rule.  The D.C. Circuit has held that "the period for

seeking judicial review may be made to run anew when the agency in question by some new

promulgation creates the opportunity for renewed comment and objection."  *Ohio v. EPA*, 838

F.2d 1325, 1328 (D.C. Cir. 1988).  *See also Massachusetts v. ICC*, 893 F.2d 1368, 1372 (D.C.

Cir. 1990).  Here, EPA did not invite comment or reconsider 40 C.F.R. § 164.80(b).

As explained in EPA's denial of the petition to initiate rulemaking, all of the issues raised

in FMC's petition had long ago been addressed by the Agency.  Referencing its 1996 Federal

Register notice and long-established case law, EPA explained that FIFRA is within the exception

at 5 U.S.C. § 556(d), and that this conclusion was supported by FIFRA itself and its legislative

history.  Compl., Ex. 4, at 1-2.  The Supreme Court's decision in *Greenwich Collieries* changed

none of these conclusions, as it neither addressed FIFRA nor discussed what would qualify for

the exception in the APA at 5 U.S.C. § 556(d).  EPA explained that the Plaintiff's argument that

the burden of proof differs between cancellation and registration was inconsistent with clearly

evidenced Congressional intent as well as the statute.  *Id.*  Consequently, EPA reasonably

decided that the Plaintiff had not provided either factual or legal bases that warranted

reconsideration of EPA's original rule.  Accordingly, EPA decided not to initiate a rulemaking.

The Plaintiff cannot now use EPA's denial of its petition as the basis to challenge the regulation

itself.  *NMA v. DOI*, 70 F.3d at 1351-1352; *NRDC v. NRC*, 666 F.2d 595, 601-602 (D.C. Cir.

12

1981).

FMC's allegation that EPA's regulation is contrary to FIFRA and the APA, 5 U.S.C. § 556(d), because FIFRA allegedly does not place the burden of proof on the registrant during cancellation proceedings, does not qualify for the narrow exception set out in *Leedom v. Kyne* and *Hanauer* to raise a claim beyond the statute of limitations. Such a "contrary to law" allegation falls far short of the "regulatory repeal" of a statutory provision found to be within the *Kyne* exception in *Hanauer*. 82 F.2d at 1314.

Further, in considering FMC's petition to initiate rulemaking, EPA did not make the rule at 40 C.F.R. § 164.80(b) available for public comment or indicate publicly that it was reconsidering the regulation. Therefore, FMC's challenge to 40 C.F.R. § 164.80(b) is time-barred.

**B**.    **Review in this action is limited to EPA's denial of the FMC's petition to initiate rulemaking.**

It is well-established that where an agency has not reconsidered a regulation in response to a petition for rulemaking, the only issue in a challenge to denial of the rulemaking petition is the agency's decision not to reconsider the rule, not the substance of the rule itself. For example, in *Geller v. FCC*, 610 F.2d 973, 978 (D.C. Cir. 1979), the D.C. Circuit stated, where the petitioner had requested that an agency initiate a rulemaking, "[the] petition in this court is for review, not of the 1972 order promulgating the contested rules, but of the 1976 order refusing to reexamine their continuing validity." The court found that it had jurisdiction to review the denial of the petition for rulemaking.

Plaintiff, however, asserts in its opening brief that its challenge is to the regulation itself.

13

As discussed supra at 13-14, the very narrow exceptions that could allow examination of the regulation at 40 C.F.R. § 164.80(b) do not apply here. Thus, at most, FMC could seek review of EPA's denial of FMC's petition, under the highly deferential arbitrary, capricious, or contrary to law standard that applies to such actions. *See National Mining Ass'n v. Dep't of Interior*, 70 F.3d 1345, 1351-53 (D.C. Cir. 1995).

In *NMA*, the court held that a summary denial of an unsolicited rulemaking petition is not a sufficient reexamination to warrant reopening time limits for judicial review of agency actions:

> [T]he denial [of a rulemaking petition] does not evince the kind of agency reconsideration that we have held sufficient to give rise to judicial review. Of course, that a statement accompanies the denial of a petition for rulemaking is not, without much more, sufficient to trigger the reopener doctrine. An agency is normally obliged under the Administrative Procedure Act to issue some sort of explanation when it denies a petition. 5 U.S.C. § 555(e).

*Id.* at 1351-1352 (internal citations omitted). EPA's letter denying FMC's petition to initiate rulemaking provided a concise explanation of the Agency's rationale, but it did not show the kind of reconsideration that would indicate that EPA had "reopened" the rule.

## II.    EPA Properly Denied the Plaintiff's Petition for Rulemaking, Because FIFRA Falls Squarely Within the APA Exception.

Assuming, *arguendo*, that this Court has jurisdiction over FMC's claims, this Court should deny FMC's motion for judgment on the pleadings and grant EPA's cross-motion for summary judgment. As discussed below, and as explained in EPA's petition denial, FIFRA, its legislative history, and the case law support EPA's interpretation of FIFRA and its decision not to initiate a new rulemaking to amend 40 C.F.R. § 164.80(b).

As explained *supra* at 12-13, agency decisions not to initiate rulemakings to reconsider matters previously resolved are accorded great deference. Only in "the rarest and most

14

compelling of circumstances" should an agency's decision not to revisit a previous rulemaking

be overturned. *American Horse Protection Ass'n v. Lyng*, 812 F.2d at 5. Because FMC cannot

meet this high threshold, EPA's petition denial should be upheld. And even if FMC could

pursue a challenge in this lawsuit directly against 40 C.F.R. § 164.80(b), that regulation should

be upheld because it is based upon EPA's reasonable interpretation that FIFRA places the burden

of proof on the registrant during product cancellation proceedings.

A.    **EPA's Interpretation that FIFRA Placed the Burden of Proof on the Proponent of Registration at All Times is Fully Supported by the Text and Context of FIFRA.**

Plaintiff argues that Congress has not resolved this particular issue, because the statute

and legislative history are "silent" on the question of who bears the burden of proof in a

cancellation hearing, and that this fact establishes the necessary predicate for its request that EPA

initiate a rulemaking to reconsider 40 C.F.R.§ 164.80(b). Pl. Mem. at 11-12. FMC further

argues that, where applicable, the Administrative Procedure Act, 5 U.S.C. § 556(d) places the

burden of proof on EPA for any order or rule it may issue; that this provision should govern

product cancellation hearings EPA conducts under FIFRA; and that its application would place

the burden of proof on EPA in an administrative hearing on a decision to cancel a pesticide

registration. Pl. Mem. at 9 - 11. Plaintiff is incorrect. Regardless of how Section 556(d) should

be construed where it does apply, the circumstances in which it applies are limited: it applies

"[e]xcept as otherwise provided by statute." 5 U.S.C § 556(d).[2] As explained below, far from

---

[2] Contrary to Plaintiff's allegation, reliance on the traditional tools of statutory
construction, which include the statutory language, structure, and legislative history, is
appropriate to determine whether FIFRA falls within the exception to the APA. In *Industrial
Union Dep't v. American Petroleum Inst.*, the Supreme Court considered the statutory language,
structure and legislative history to conclude that, unlike FIFRA, the Occupational Safety and

having been silent, Congress has consistently manifested its clear intent that the proponent of

registration bears the burden of proof that a pesticide meets the FIFRA standard for registration

at all times, both before and after a pesticide is registered.

    1. <u>In 1964, Congress Specifically Placed the Burden of Proof on the Registrant</u>

In 1964, Congress revised the law governing the regulation of pesticides, by deleting the

provisions relating to "registration under protest." Specifically, before the 1964 amendments, the

Secretary of Agriculture was required to register a pesticide even if there was evidence that the

product was unsafe. Under this procedure, the product remained on the market and the Secretary

referred the matter to the U.S. Attorney for possible enforcement, where the government was

required to prove that the product was unsafe or otherwise out of compliance.[3] In 1964,

Congress consciously shifted the burden back to the manufacturer to demonstrate the safety of its

products, by removing the procedures for registration under protest. The House Report

accompanying the precursor to this 1964 amendment describes the purpose of the amendments:

> *The principal effect of registration under protest is to shift the burden of proof from the registrant to the Government*. If the product is not registered, the penalty or seizure provisions can be applied on that ground. If it is registered under protest, the Government has the burden of proving that the product does not comply with the law. Thus, at present, the Secretary can be required to register a product even though he is convinced that it is ineffective and dangerous to human life. *He can proceed against it in such cases only after it has moved in interstate commerce, and he then has the burden of proving that it violates the law. The bill*

---

Health Act does not fall within the APA § 556(d) exception. 448 U.S. 607, 642-653 (1980).

    [3] Prior to 1964, relevant portions of Section 4(c) of FIFRA provided as follows: "If, upon receipt of ... notice, the registrant insists that such corrections are not necessary ... *the Secretary shall register the article, under protest*, and such registration shall be accompanied by a warning, in writing, to the registrant of the apparent failure of the article to comply with the provisions of this Act." S. Rep. No. 573, 88th Cong., 1st Sess., 22-24; *see also* H.R. Rep. No. 1125, 88th Cong., 2nd Sess., 17-21 (1964).

> *would correct this situation* and afford greater protection to the public by
> repealing the authority for registration under protest. In its place, the bill provides
> that applicants dissatisfied with the Secretary's action in *refusing or canceling
> registration* may have recourse to advisory committee proceedings, public
> hearings, and eventually judicial review.

H.R. Rep. No. 1125, 88th Cong., 1st Sess., 2 (1964)(emphasis added); *see Environmental Defense

Fund v. Ruckelshaus*, 439 F.2d 584, 593 (D.C. Cir. 1971)("the stated purpose of the amendments

was to protect the public by removing from the market any product whose safety or effectiveness

was doubted by the Secretary"); *see also* 110 Cong. Rec. 2948-49 (1964)("The burden of proof

should not rest on the Government, because great damage can be done during the period the

Government is developing the data necessary to remove a product which should not be

marketed."); S. Rep. No. 573, 88th Cong. 2 Sess. (1964).  The legislative history confirms that

Congress intended that its 1964 amendments to FIFRA place the burden of proof on the

registrant, not EPA, and further that Congress did not distinguish between an initial registration

and a subsequent decision to cancel a registration, but intended its revised allocation of the

burden of proof to apply equally to both.

The 1969 report from the House Committee on Government Operations provides

additional evidence that Congress considered that its 1964 amendments had revised the statute's

burden of proof for cancellation actions.  After reviewing the government's administration of the

post-1964 FIFRA, the report concluded that:

> The committee strongly criticized the administrators for failing to take "prompt or
> effective cancellation action in cases where it had reason to believe a registered
> product might be ineffective or potentially hazardous....*A mistaken belief that
> positive evidence of hazard–rather than simply a lack of adequate assurance of
> safety–is necessary to support a cancellation action appears to have been a factor
> in [the] failure to initiate such action in cases where it was obviously justified.*"

17

H.R. Rep. No. 91-637, 91st Cong. 1st Sess. 15-16 (1969)(emphasis added).

These statements also reflect Congress's determination that the public should not bear the risk of exposure to a potentially unsafe product during the period of resolving any uncertainty as to the extent or magnitude of a risk.  If EPA bore the burden of proof in a cancellation hearing, EPA could not cancel a product where data indicated a substantial question of safety but did not fully resolve the extent or magnitude of the risk.  *See EDF v. EPA*, 548 F.2d 998, 1004 (D.C. Cir. 1976, as modified Jan. 6, 1977)(burden of going forward "normally falls on the party having knowledge of the facts involved.")  EPA would need to obtain the information required to resolve uncertainties, and the public would continue to be exposed to a potentially unsafe product.  This  is exactly the situation that Congress sought to correct in 1964.  *See, e.g., EDF v. Ruckelshaus*, 439 F.2d at 593.

These statements demonstrate that Congress established FIFRA's requirements to protect the public from undue risks from pesticides, requiring both applicants and registrants to present sufficient evidence to show that their products do not present undue risks to the public or to the environment.

    2.    <u>The 1972 Amendments to FIFRA Did Not Reverse Congress's 1964 Allocation of the Burden of Proof.</u>

FMC appears to argue that Congress' 1972 Amendments to portions of FIFRA imposed "ordinary APA procedures" for product cancellations, and that this thus placed the burden of proof on EPA.  Pl. Mem. at 15.  FMC is incorrect.  In 1972, Congress-added the various provisions applicable to cancellation and suspension hearings.  The amendments authorized EPA to cancel the registration of a pesticide by issuing either a Notice of Intent to Cancel or issuing a

18

Notice of Intent to Hold a Hearing, under FIFRA § 6(b). 7 U.S.C. § 136d. The amendments also provided that upon making certain findings, EPA may "suspend" – as opposed to cancel – a registration after an expedited hearing, FIFRA § 6(c)(1), or prior to any hearing, FIFRA § 6(c)(3). 7 U.S.C. §§ 136d(c)(1), (3). The amendments further established in FIFRA § 6(c)(2) the modified procedures for suspension hearings, and specify that "[t]he hearing shall be held in accordance with [the APA] ..." 7 U.S.C. §136d(c)(2).

EPA does not construe Congress's adoption of APA procedures for suspension hearings to manifest Congress's intent to shift the burden of proof to EPA for such hearings. However, regardless of how one interprets that language Congress adopted for Section 6(c) suspension hearings, that language is clearly not applicable to Section 6(b) cancellation hearings. *Compare* 7 U.S.C. § 136d(b), (d) *with* 136d(c)(2)-(3). And even were one to accept FMC's interpretation of this 1972 Amendment as it applies to suspension hearings, that would fully support EPA's interpretation that the registrant bears the burden of proof in cancellation hearings. By enacting the reference to the APA in FIFRA § 6(c)(2), regarding suspension hearings, but not in FIFRA §§ 6(b) or 6(d) regarding cancellations, Congress clearly did not intend this reference to apply to cancellations. *Bates v. United States*, 522 U.S. 23, 29-30 (1997)(citations omitted).

The legislative history further confirms that Congress did not in 1972 intend to reverse its 1964 allocation of the burden of proof. The Senate report accompanying HR 10729 (which contains language nearly identical to the bill that was eventually enacted) notes:

> Before adopting this compromise proposal, the Committee considered all of the numerous amendments submitted to clarify the procedure for judicial review, third-party participation in the administrative decision-making process, and the grounds which permit the Administrator to cancel a registration before a five-year period. *The procedures adopted carry forward the language of present law by*

19

*which the Administrator cancels where a substantial question exists.*

S. Rep. No. 92-838, 12, (92d Cong. 2d Sess. 1972)(emphasis added).  This language refers to

several cases decided contemporaneously that held that FIFRA compels the issuance of a

cancellation or suspension order upon EPA's determination that a substantial question of safety

exists, based on the fact that the burden of demonstrating that the product meets the statutory

standard is always on the proponent of registration.  *See, e.g., Environmental Defense Fund v.*

*EPA*, 465 F.2d 528, 532 (D.C. Cir. 1972)(5 months before amendments); *Stearns Elec. Paste Co.*

*v. EPA,* 461 F.2d at 304-05 (7th Cir. 1972)(6 months before amendments); *Environmental Defense*

*Fund v. Ruckelshaus*, 439 F.2d 584, 593 (D.C. Cir. 1971)(1 year before amendments).  The

Conference Report also notes that the final bill "preserves cancellation criteria in existing law."

H.R. Rep. 92-1540, 32.  Also, statements appear throughout the debate, reiterating the desire to

ensure that the burden of proof remains on the manufacturer.  *See, e.g.*,  117 Cong. Rec. 40038

(Nov. 9, 1971)(statement of Rep. Wolff) ("The burden of proof to demonstrate that the pesticide

will not adversely affect the environment, I think, rightfully belongs with the manufacturer.").

   While the Plaintiff is correct that the Conference Report also notes that "[p]rocedures for

hearings and other matters would be in accord with chapter 5 of Title 5," the remainder of the

statement (which the Plaintiff omits) is "except as otherwise specifically provided (section 6(b))."

H.R. Rep. No. 92-1540, *reprinted in* 1972 U.S.C.C.A.N. 4130, 4132.  This further demonstrates

that Congress affirmatively intended to retain its 1964 allocation of the burden to the registrant for

cancellation hearings.[4]  Moreover, the reference in the Conference Report to conducting hearings

in accordance with the APA supports EPA's interpretation that, even for suspension hearings,

---

   [4]  Pl. Mem at 13.

Congress did not intend to shift the burden of proof, but to merely resolve the *procedures* that would be applicable to the hearing. *See, e.g., EDF*, 548 F.2d at 1017. Regardless of how this provision should be interpreted for suspension hearings, Congress's selective incorporation of the requirement to hold hearings in accordance with the APA to suspension and emergency suspension hearings pursuant to Section 6(c) of FIFRA, but not for cancellation hearings under Section 6(d), fully undermines the import FMC draws from this 1972 Amendment.

        3.    <u>The structure of FIFRA further supports EPA's interpretation that FIFRA places the burden of proof on the registrant at all times.</u>

As EPA noted in its petition denial, both the language and the structure of FIFRA reflect Congress's intent that the registrant bear the burden of proof in cancellation hearings. Compl. Ex. 4, at 3. FMC concedes, as it must, that applicants for registration bear the burden of proving that their product meets the requirements of FIFRA § 3(c)(5). Pl. Mem. at 3, 13-14. In other words, FMC concedes that proceedings under FIFRA § 3 fall within the "except as otherwise provided" language of Section 556(d) of the APA an thus the relevant elements of that Section do not apply. This is confirmed by the structure of FIFRA § 3. This Section explicitly makes the applicant responsible for providing the factual basis to support registration. 7 U.S.C. §136a(c)(1)(F), (c)(2)(D). Upon EPA's determination that a product does not meet the registration standard, the statute requires the applicant to correct the deficiency, clearly indicating that burden remains on the applicant. *See id.* §136a(c)(6).

Further, a number of FIFRA's provisions clearly show that this burden remains on the registrant, even after registration. Section 3 of FIFRA imposes a continuing obligation that registrants must provide any data the Administrator determines is necessary to support continued

registration.  *Id.* § 136a(c)(2)(B).  "[A]t any time after registration of the product," if the registrant

obtains any "additional factual information regarding unreasonable adverse effects on the

environment of the pesticide," the registrant must report it to the Agency.  *Id.* §136d(a)(2).

Similarly, FIFRA § 4, which established a process requiring EPA to reevaluate or reregister

registered pesticides according to current health and safety standards, effectively mirrors the

application process under FIFRA § 3.   To obtain reregistration, registrants are required to identify

and summarize all available data that support continued registration, including previously

submitted data, and to identify and provide within specific time frames, any outstanding or

missing data that are necessary to support continued registration. 7 U.S.C. §§ 136a-1(d)(3), (e)(1).

At the end of the process, EPA is required to determine whether the submitted information

demonstrates that continued registration is consistent with the standard in FIFRA § 3(c)(5).  7

U.S.C. § 136a-1(g).  This process effectively places registrants once again in the position of

applicants seeking registration. *See* H. Rep No. 100-939, 27-29 (September 16, 1988).  At the end

of this process, as at the end of the application process, the statute provides for a hearing under

FIFRA § 6.  *See* 7 U.S.C. §§ 136a(c)(6), 136a-1(g)(2)(D).  Congress has also determined that EPA

must continue to reassess existing pesticides against the ever-evolving standards for registration;

in 1996, Congress enacted section 3(g), requiring the review of every pesticide registration every

fifteen years–essentially instituting a continual reregistration process.  7 U.S.C. §136a(g)(1)(A).

　　　There is a clear link between FIFRA Section 3 (registration) and Section 6 (cancellation).

In the case of a decision to deny an application, an applicant is entitled to a denial hearing, which

FIFRA expressly states is to be the same as that provided for in cancellation hearings under

section 6. 7 U.S.C. §136a(c)(6)(the applicant is to have the "same remedies as provided for in

section 6.")  *See also id.* §136d(d) ("As soon as practicable after completion of the hearing,...the

Administrator shall...issue an order...denying the registration...").  Thus both denial and

cancellation hearings are held pursuant to section 6(d).  In a denial hearing, EPA is just as much

the proponent of an order denying the application in a denial hearing as it is the proponent of a

cancellation order in a cancellation hearing.  Conversely, in a denial hearing the registrant is the

proponent of an order granting the application, just as it is a proponent in a cancellation hearing of

an order seeking revocation of EPA's NOIC.  This further supports EPA's interpretation that

FIFRA imposes the burden of proof on registrants in both circumstances.  And, notably, the

Plaintiff cites nothing in the statute or legislative history that would support distinguishing

between cancellation and denial hearings.

Finally, that cancellation and registration are mirror images of each other is further

evidenced by the fact that the same standard, "unreasonable adverse effects on the environment,"

governs both. 7 U.S.C. §§ 136a(a), 136d(b).  Yet, the Plaintiff's argument to shift the burden of

proof to EPA for cancellations essentially argues that a different standard applies for the review of

older pesticides than for newer pesticides, that uncertainties as to whether pesticides meet the

same applicable health and environment standards must be resolved differently depending upon

whether a pesticide may have first been registered years ago or is currently being considered for

registration.  Nothing in the structure of FIFRA or its legislative history suggests that Congress

intended or supported such a distinction.  Indeed, throughout its brief Plaintiff cites nothing in the

statute or legislative history that would support distinguishing between cancellation and denial

hearings.

**B. EPA's Interpretation of FIFRA is Supported by the Existing Case Law**

23

Courts located in four circuits have addressed this issue. Each one has concluded that FIFRA places a continuing obligation on the registrant to demonstrate that its product meets the registration standard. *Environmental Defense Fund v. EPA*, 510 F.2d 1292, 1297 (D.C. Cir. 1975); *Dow Chem. Co. v. Ruckelshaus*, 477 F.2d at 1324-25 (8th Cir.); *Environmental Defense Fund v. EPA*, 465 F.2d at 532 (D.C. Cir.); *Continental Chemiste Corp. v. Ruckelshaus*, 461 F.2d 331, 335-36 (7th Cir. 1972), *citing Stearns Elec. Paste v. EPA*, 461 F.2d at 304-305; *Dow v. Blum*, 469 F. Supp. 892, 900-01 (E.D. Mich. 1979). As these holdings are grounded in the statute and its legislative history, they are unaffected by any change in the interpretation of the requirements in the APA, 5 U.S.C. § 556(d) requirements. Relying on these holdings, two courts have explicitly held that FIFRA falls within the "except as otherwise provided" provision of the APA, 5 U.S.C. § 556(d). *Environmental Defense Fund v. EPA*, 548 F.2d 1015-1018 (D.C. Cir. 1976 ); *Stearns Electric Paste*, 461 F.2d at 304-05.

1. Courts have consistently rejected the Plaintiff's interpretation.

In *Stearns Electric Paste*, decided shortly after the 1964 Amendments, the Seventh Circuit specifically rejected the Plaintiff's contention that the government, as the proponent of the cancellation order, bore the burden of proof. 461 F.2d at 304-05. After fully examining this question at length, the court relied heavily on its conclusion that FIFRA itself places a continuing obligation on the registrant to demonstrate the safety of its product, to reject the Plaintiff's argument. *Id.* First, the court noted the 1964 Amendments' clear intent to shift the burden of proof to the manufacturer. Further, while acknowledging that most of the legislative comment concerned new registrations, the court held that it did not believe that the statute intended to differentiate between an application for a new registration and the cancellation of an existing

24

registration.  *Id*.   The court also reasoned that this conclusion was strengthened  by "the agency's

continuing obligation to review the propriety of existing registrations."  *Id*. at 305.  The court

concluded that the fact that a registrant was not entitled to an automatic renewal at the end of the

5-year registration period "clearly implies" that Congress did not intend to differentiate its

allocation of the burden of proof based on whether a product was registered.  *Id*. at 305 n.38 ("If a

presumption of proper use at the end of a 5-year period does not shift the burden . . . we think

there is even less reason to shift the burden in the middle of a five year term if the Administrator

should then become aware of previously unknown risks associated with the use of a product.").

The court concluded that FIFRA fell within the exception to the APA, 5 U.S.C. § 556(d):

> Specifically, we read FIFRA itself as requiring that the burden of proof be on the
> registrant whether in a proceeding for initial registration or in a cancellation
> hearing.  The statutory language of 7 U.S.C. § 136b(c), taken with the clear intent
> to shift the pre-1964 burden of proof, cannot properly be read as providing for any
> distinction between registration and cancellation.  The advisory committee, hearing
> and review provisions apply to both situations, and the concern with safety when
> used as directed expressed by Congress cannot be reconciled with a theory that
> would place the burden of proof on the government.  Whether the Administrator
> discovers the hazard at the time of registration or later, Congress intended that the
> registrant have the burden proving compliance with the provisions of the statute.

461 F.2d at 305 n. 39.  *Accord  Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S.

607, 653 n.61 (1980)(identifying FIFRA as an example of a statute falling within the APA

exception at 5 U.S.C. § 556(d) in which this provision does not apply. The Seventh Circuit's

holding contravenes the Plaintiff's allegation that the absence of the phrase"burden of proof" in

FIFRA compels the conclusion that proceedings under FIFRA must follow the APA, 5 U.S.C. §

556.

The D.C. Circuit extended these holdings, finding that, as FIFRA fell within the exception

25

to the APA at 5 U.S.C. § 556(d), the requirement that suspension hearings be held in accordance with the APA did not mean that the government bore the burden of proof in suspension hearings. *Environmental Defense Fund v. EPA*, 548 F.2d at 1015-18.  The court acknowledged that the 1964 amendments factored heavily into its decision, reasoning that it would be unlikely that Congress would have intended to "sub silentio" reassign the burden of proof to the government in 1972.  *Id*. at 1017.   The court also relied on FIFRA's "general regulatory pattern" and the fact that information relevant to the safety of their product should be in the registrant's possession.  *Id.* at 1017-18.  The court also expressly noted that "[w]hile the suspension proceeding is in progress, the public is subject to the same risks of injury that are present in the cancellation context, the very risks which caused Congress to shift the burden of proof to the registrant in the original registration."  *Id.* at 1017.  These considerations continue to hold true in the instant case.

      2.    EPA's interpretation comports with the case law decided after *Greenwich Colliories*.

In 1994, the Supreme Court decided *Greenwich Colliories*, a case involving whether or not a rule used by the Department of Labor to shift the burden of persuasion to the party opposing a benefits claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, was consistent with the APA, 5 U.S.C. § 556(d).  Section 422(a) of the Black Lung Benefits Act ("BLA"), 30 U.S.C. § 932(a), incorporates § 19(d) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 919(d), which in turn requires that "any hearing held under this chapter shall be conducted in accordance with [the APA]."  *Greenwich Colliories*, 512 U.S. at 271, quoting 33 U.S.C. § 919(d).  The Court held that the rule shifting the burden of proof to the party opposing a benefits claim conflicted with the APA, which places the burden of proof on the proponent of a

rule or order, "[e]xcept as otherwise provided by statute." 5 U.S.C. § 556(d).

In *National Mining Ass'n v. Department of Interior*, the D.C. Circuit offers some guidance regarding the degree of specificity necessary to determine that a statute falls within the scope of the APA's exception. 251 F.3d 1007, 1013 (D.C. Cir. 2001). The DOI promulgated regulations implementing the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.,* placing the burden of persuasion on a permittee during hearings to challenge revocation of a permit. NMA challenged these regulations, arguing that they were inconsistent with the Supreme Court's decision in *Greenwich Collieries* because DOI was the proponent of an order to rescind a permit. The court rejected this argument, reasoning that such an interpretation would effectively shift the burden of proof back to DOI, which would be inconsistent with statutory language placing the burden of proving certain facts on the permit applicant. This is analogous to the situation under FIFRA, which explicitly establishes that it is the applicant's responsibility to provide evidence to demonstrate that an application meets the registration standard, and the registrant's responsibility to demonstrate that its registration continues to meet the statutory standard. 7 U.S.C. §§ 136a(c)(2)(B)-(D), 136a-1(d)(4)(B), 136a-1(e)(1), 136a-1(f)(1)(B), and 136d(a)(2). Requiring EPA to demonstrate that a registered product does not meet the statutory standard in a cancellation hearing effectively shifts this burden, because any uncertainties would be construed against the government. If the registrant provides data suggesting that there is an unacceptable risk, but the results are inconclusive, as is often the case, under the Plaintiff's interpretation, EPA would be precluded from taking the product off of the market, and could only require the registrant to submit further data to attempt to resolve the uncertainty. This is, in essence, "registration under protest," and this Court should decline the Plaintiff's invitation to legislate a return to the pre-

27

1964 Act.

      3.    <u>The Plaintiff misconstrues *Greenwich Collieries*</u>.

      The holding of *Greenwich Collieries* is more narrow than the Plaintiff suggests.  Both of the statutes at issue in that case explicitly incorporate the requirements of the APA.   Accordingly, *Greenwich Collieries* merely addressed what it means for the proponent of a rule to bear the "burden of proof":  whether the "burden of proof" is the burden of production or of ultimate persuasion.  512 U.S. at 276.  The Court did not address what would be necessary to fall within the exception to the APA such that 5 U.S.C. § 556(d) would not apply.  Because the statutory language at issue expressly provided that 5 U.S.C. § 556(d) applied in hearings, the court was considering whether the statute "supercedes" the APA, not whether the statute falls within the exception in 5 U.S.C. § 556(d).

      In sum, EPA's interpretation that FIFRA places the burden of proof on registrants in cancellation proceedings is fully supported by the statute, legislative history, and case law.  Even assuming, *arguendo*, that FMC was able to cast some doubt on EPA's interpretation, that would not provide a basis to upset EPA's decision not to initiate a rulemaking to amend 40 C.F.R. § 164.80(b), especially given the great deference accorded agencies for their decisions not to initiate rulemakings to reconsider matters that they previously have resolved.

## CONCLUSION

For the foregoing reasons, EPA respectfully requests that this Court dismiss plaintiff's complaint for lack of jurisdiction, and if it reaches the merits, to grant EPA's motion for summary judgment by upholding EPA's petition denial, and to deny FMC's motion for judgment on the pleadings.

Respectfully Submitted,

Chuck Rosenberg
United States Attorney

By:         /s/
            Ralph Andrew Price Jr.
            Assistant United States Attorney
            United States Attorney's Office
            Justin W. Williams United States Attorney Building
            2100 Jamieson Avenue
            Alexandria, Virginia 22314
            Telephone: (703) 299-3911
            Facsimile: (703) 299-3983
            E-mail: andrew.price@usdoj.gov

            Ronald J. Tenpas
            Acting Assistant Attorney General
            Environment and Natural Resources Division

By:         /s/
            Monica Derbes Gibson (VSB No. 36373)
            Environmental Defense Section
            Environment and Natural Resources Division
            United States Department of Justice
            P.O. Box 23986
            Washington, D.C.  20026-3986
            Telephone:  (202) 514-0135
            Facsimile: (202) 514-8865
            E-mail:  monica.gibson@usdoj.gov

            Counsel for Defendants

29

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2007, I filed electronically the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Abid R. Qureshi, Esquire
LATHAM & WATKINS LLP
555 Eleventh St., NW
Suite 1000
Washington, DC 20004-1304
abid.qureshi@lw.com

Counsel for plaintiff

John Francis Mardula, Esquire
Roberts Abokhair & Mardula LLC
11800 Sunrise Valley Dr
Suite 1000
Reston, VA 20191-5317
Mardula@globe-IP.com

Counsel for intervenor

By:      _____/s/_____
         Ralph Andrew Price Jr.
         Assistant U.S. Attorney
         Office of the U.S. Attorney
         Justin W. Williams U.S. Attorney's Building
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Telephone: (703) 299-3911
         Facsimile: (703) 299-3983
         andrew.price@usdoj.gov

         Counsel for all defendants