# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### (Alexandria Division)

| | | |
|---|---|---|
| FMC CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | **Civil Action No. 07 Civ. 00819** |
| | ) | |
| U. S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**PLAINTIFF FMC CORPORATION'S REBUTTAL MEMORANDUM IN SUPPORT OF
FMC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Introduction and Summary of Argument ..........................................................................................1

I.      Defendants' Have Identified No Express Statutory Provision of FIFRA That Modifies the APA's Burden of Proof in Cancellation Proceedings ...................................3

        A.      EPA Has Not Refuted the Principle That Exceptions to the APA Can Only Be Made By "Express Statutory Provision" ............................................................3

        B.      None of the Cases Cited By Defendants Relied on an Express Statutory Provision of FIFRA.........................................................................................8

        C.      The "*Expressio Unius*" Canon Does Not Place Cancellation Proceedings Outside of the APA ................................................................................12

        D.      *Chevron* Deference Cannot Save EPA's Statutory Interpretation .........................14

II.      There Is No Language In FIFRA That Supports EPA's Contention That the Burden of Proof in Cancellation Hearings Must Be Identical to That in Registration Hearings..........................................................................................14

III.     NRDC's "Reregistration" Arguments Are Without Merit...............................................16

IV.     The Legislative History OF FIFRA—Which Cannot Reallocate The Burden of Proof—Supports FMC's Position ......................................................................17

i

# TABLE OF AUTHORITIES

## CASES

*Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006) ....................................................13

*Asiana Airlines v. FAA*, 134 F.3d 393 (D.C. Cir. 1998) ...................................................11

*Bethenergy Mines, Inc. v. Henderson*, 4 Fed. Appx. 181, 186 (4th Cir. Feb. 16, 2001) ...........................................................................................................................15

*Chevron, U.S.A. v. NRDC*, 467 U.S. 837 (1984) ...............................................................14

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)...................................13

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) ........................................11

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ........................................................................11

*Dominion Energy Brayton Point, LLC v. Johnson*, 443 F.3d 12 (1st Cir. 2006) .............14

*Dow Chemical Co. v. Ruckelshaus*, 477 F.2d 1317 (8th Cir. 1973) .................................11

*Environmental Defense Fund v. EPA*, 548 F.2d 998 (D.C. Cir. 1976)........5, 7, 8, 9, 10, 11

*Environmental Defense Fund v. EPA*, 465 F.2d 528 (D.C. Cir. 1972)..............................11

*Environmental Defense Fund v. Ruckelshaus*, 439 F.2d 584 (D.C. Cir. 1971) ................11

*Fort Sumter Tours v. Babbitt*, 66 F.3d 1324 (4th Cir. 1995) ............................................13

*Greenwich Collieries v. Director, Office of Workers' Compensation Programs*, 512 U.S. 267 (1994)................................................................................... 1, 3-4, 5, 9

*Greenwich Collieries v. Director, Office of Workers' Compensation Programs*, 990 F.2d 730 (3d Cir. 1993), *aff'd* 512 U.S. 267 (1994)...............................4, 5, 6, 8, 9

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000)...........................................................................................................................14

*Hubbard v. United States*, 514 U.S. 695 (1995) ...............................................................11

*Industrial Union Department v. American Petroleum Institute*, 448 U.S. 607 (1980)...........................................................................................................................5

*Maher Terminals v. Director, Office of Workers' Comp. Programs*, 992 F.2d
  1277 (3d Cir. 1993), *aff'd sub nom. Dir., Office of Workers' Comp. Programs
  v. Greenwich Collieries*, 512 U.S. 267 (1994)...............................1, 2, 3, 4, 5, 6, 7, 8, 9

*Marcello v. Bonds*, 349 U.S. 302 (1955) ........................................................................11

*Maryland Wildlife Federation v. Dole*, 747 F.2d 229 (4th Cir. 1984)...............................13

*Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291 (1995) ......................................10-11

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997) ............................1, 14, 15, 17

*Moskal v. United States*, 498 U.S. 103 (1990)....................................................................8

*NLRB v. Fluor Daniel, Inc.*, 161 F.3d 953 (6th Cir. 1998)..................................................14

*National R.R. Passenger Corp. v. National Association of R.R. Passengers*, 414
  U.S. 453 (1974)..........................................................................................................12

*National Mining Association v. U.S. Department of the Interior*, 251 F.3d 1007
  (D.C. Cir. 2001) ...........................................................................................................8

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ............................................................7-8

*Stearns Electric Paste Co. v. EPA*, 461 F.2d 293 (7th Cir.  1972) ...............7, 9, 10, 11, 13

*United States v. Menasche*, 348 U.S. 528 (1955) ...............................................................8

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) ....................................10

## STATUTES

7 U.S.C. § 136a-1(g)(2)(D)(i) ...........................................................................................17

7 U.S.C. § 136d(b) ..........................................................................................................17

5 U.S.C. § 559.............................................................................................................6, 7

5 U.S.C. § 556(d) ......................................................................................3, 4, 5, 6, 7, 15, 16

## OTHER AUTHORITIES

H.R. Rep. No. 92-1540 (1972).........................................................................................13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Under section 7(c) of the Administrative Procedure Act, the "proponent of a rule or order" has the burden of proof, except as otherwise provided by statute. As defined by the Supreme Court, the "proponent" is the party that "seeks modification" of the status quo. *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 139 (1997). In a FIFRA cancellation hearing, it is plainly EPA that "seeks modification" of the status quo as the proponent of an order cancelling an existing pesticide registration. Thus under section 7(c), EPA bears the burden of proof in a cancellation hearing "[e]xcept as otherwise provided by statute."

FMC's opening brief established the principle that exceptions to the Administrative Procedure Act are disfavored and must be clearly expressed: Only an "express statutory provision" can suffice to alter the APA's allocation of the burden of proof.[1] EPA's[2] opposition brief does not dispute this basic principle. Nevertheless, the defendants have not identified *any statutory language* in FIFRA that purports to be an express statutory exception to the APA's command that the proponent of an order must bear the burden of proof. Not a single word of FIFRA's text is cited by defendants which purports to state that in a proceeding by EPA to cancel a pesticide registration, the burden of proof shall rest on the party *opposing* the proposed cancellation order. That is because there is no such language. In the absence of such express statutory language modifying the APA's burden of proof, EPA's regulation contravenes the APA and should be set aside.

---

[1]    *Maher Terminals v. Dir., Office of Workers' Comp. Programs*, 992 F.2d 1277, 1281 & n.3, 1285 (3d Cir. 1993), *aff'd sub nom. Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267 (1994). Additionally, exceptions to the APA are strongly disfavored. *See infra* at 11.

[2]    U.S. Environmental Protection Agency and Steven L. Johnson, Administrator (collectively "EPA").

1

Instead of relying on any explicit *text* of FIFRA, EPA's argument is premised entirely on *inferences*:  EPA attempts to infer an intent of Congress to alter the APA's burden of proof for FIFRA cancellation hearings based on the legislative history of 1964 amendments to FIFRA, and the "context" and "structure" of FIFRA – which is all that EPA can muster in the absence of statutory language.  Yet this argument runs headlong into the Third Circuit's holding in *Maher Terminals* that factors such as legislative history, context and structure cannot "amount to express statutory provisions having the authority to supersede the APA on the issue of . . . the burden of persuasion . . . ."[3]  The courts will not rely on mere inferences as to Congress' intent for the purpose of creating exceptions to the APA.  Rather, the courts will assume that Congress meant what it plainly said.  A requirement that exceptions to the APA must be provided "by statute" means just that:  by statutory language.

Moreover, even the legislative history of the 1964 amendments never expressly mentions cancellation hearing procedures, let alone the allocation of the burden of proof in cancellation hearings.  Thus defendants premise their argument on inferences of the most indirect and attenuated sort: legislative history that never states any intention to create an exception to the APA, or to create an exception that relates to the procedure for cancelling pesticide registrations. The inferences proposed by defendants are neither "express" nor "statutory."

Finally, to the extent they are considered, the 1964 amendments to FIFRA are more consistent with *restoring* the APA's allocation of the burden of proof than with creating exceptions to it.  Prior to 1964, contrary to the APA, the proponent of a new pesticide registration did not have the burden of proving its safety to obtain a license to sell the pesticide; rather, he could obtain registration "under protest" by the USDA, without supplying proof of

---

[3]     *Maher Terminals*, 992 F.2d at 1281 n.3.

safety.  In 1964, Congress revised the burden of proof for obtaining a registration by placing the burden of proving safety on the proponent of the registration.  This made the burden of proof for registration *consistent* with the APA, since the burden of proof was placed on the proponent of changing the *status quo*.  But Congress said nothing in the 1964 statute or legislative history about extending the burden of proof to persons *opposing* the revocation of their pesticide registrations.  Such a change would have made the cancellation procedure inconsistent with the APA and, as stated by the court in *Maher Terminals*, inferences based on "Congressional inaction" or silence do not satisfy the "otherwise provided by statute" requirement for creating exceptions to the APA.  Thus, there is nothing about the 1964 amendments or their legislative history that is inconsistent with the APA's allocation of the burden of proof.

In large part, the briefs of EPA, Natural Resources Defense Council, Inc. ("NRDC")  and the American Bird Conservancy ("ABC") are consumed with making a policy argument that they believe it is better that the license holder bear the burden of proof in a cancellation proceeding, without demonstrating that the APA or FIFRA in fact places that burden on that entity.  But the proper audience for a policy argument as to who should bear the burden of proof in a proceeding to remove a pesticide is Congress, not the Court.  FMC asks only that EPA apply the law, as specified by the APA, as it today exists.

I.    **DEFENDANTS' HAVE IDENTIFIED NO EXPRESS STATUTORY PROVISION OF FIFRA THAT MODIFIES THE APA'S BURDEN OF PROOF IN CANCELLATION PROCEEDINGS**

A.    **EPA Has Not Refuted the Principle That Exceptions to the APA Can Only Be Made By "Express Statutory Provision"**

The Supreme Court's decision in *Greenwich Collieries II* repudiated the original justification for EPA's regulation by holding that the language in section 7(c) of the APA (5 U.S.C. § 556(d)) referring to the "burden of proof" actually meant "burden of proof" (*i.e.,* it

included the burden of persuasion). *See Dir., Office of Workers' Comp. Programs v. Greenwich Collieries ("Greenwich Collieries II")*, 512 U.S. 267, 276 (1994). The only defense remaining to EPA is to argue now that the language "provided by statute" in section 7(c) does not actually mean "by statute." This argument is foreclosed by the lower court decisions affirmed in *Greenwich Collieries II*, *Maher Terminals* and *Greenwich Collieries I. See Maher Terminals v. Dir., Office of Workers' Comp. Programs*, 992 F.2d 1277, 1281 & n.3, 1285 (3d Cir. 1993), *aff'd* 512 U.S. 267 (1994); *Greenwich Collieries v. Dir., Office of Workers' Compensation Programs ("Greenwich Collieries I")*, 990 F.2d 730, 736 (3d Cir. 1993), *aff'd* 512 U.S. 267 (1994).

Although prominently cited by FMC, EPA's brief did not contest or address the principle articulated in *Maher Terminals* and *Greenwich Collieries I* that any reallocation of the burden of proof under section 7(c) of the APA (5 U.S.C. § 556(d)) must be made by "express statutory provision." *Maher Terminals*, 992 F.2d at 1281 & n.3, 1285; *Greenwich Collieries I*, 990 F.2d at 736. Similarly, EPA did not refute or address the holding of these cases that "none of the following amount to express statutory provisions having the authority to supersede the APA on the issue of . . . the burden of persuasion: *the legislative history to the Act* . . ., longstanding use of the [relevant] rule . . ., *judicial acceptance of the rule*, or Congressional inaction." *Maher Terminals*, 992 F.2d at 1281 n.3 (emphasis added); *accord Greenwich Collieries I*, 990 F.2d at 736 & n.5 ("none of the following amounts to an express statutory provision . . .: the legislative history to the Act, which clearly enunciates its humanitarian and remedial purpose, longstanding use of the true doubt rule by the Board, judicial acceptance of the true doubt rule, or Congressional acquiescence.").

Instead, EPA's brief relied entirely on "legislative history," "longstanding use of the [rule]" and "judicial acceptance" without providing any convincing reason as to why *Maher*

DC\1045241.9

*Terminals* and *Greenwich Collieries I* would not apply.  But the holdings of these cases are clear:  Reliance on legislative history is insufficient to "supersede the APA on the issue of . . . burden of persuasion."  992 F.2d at 1281 n.3.  EPA did not argue that *Maher Terminals* and *Greenwich Collieries I* were wrongly decided, or cite them at all.  Thus, under controlling authority that EPA has neither contested nor distinguished, the defendants have not identified any express statutory language in FIFRA that modifies the APA's allocation of the burden of proof in pesticide cancellation proceedings, and the legislative history that they do rely on is insufficient per se to modify the APA.[4]

NRDC, in contrast, argues that this Court should ignore *Maher Terminals* and *Greenwich Collieries I*, because their specific holdings were "not adopted by the Supreme Court in *Greenwich Collieries*."  NRDC Br. at 12.  NRDC has it backwards.  The holdings of *Maher Terminals* and *Greenwich Collieries I* remain good law unless and until they are overruled by the Supreme Court.  The Supreme Court regularly limits the scope of issues that it considers in exercising its *certiorari* jurisdiction.  The grant of *certiorari* on one issue clearly does not mean that the holdings on all other issues in a case are deemed overruled *sub silentio*.

---

[4] EPA's citation to *Industrial Union Department v. American Petroleum Institute*, 448 U.S. 607 (1980), is misplaced.  Notably—as EPA's citations twice fail to set forth—*Industrial Union* was a concurring opinion that only two justices joined without qualification.  *See id.* at 662-64 (Burger, C.J., concurring); *id.* at 664-71 (Powell, J., concurring in part and concurring in the judgment); *id.* at 671-88 (Rehnquist, J., concurring in the judgment); *id.* at 688-724 (Marshall, J., dissenting, joined by Brennan, White, Blackmun, JJ.).  The plurality opinion only mentions 5 U.S.C. § 556(d) in passing and never cites the "otherwise provided by statute" language.  *See id.* at 653 (plurality opinion).  More importantly, this statement came before a six-justice majority clarified that APA's "burden of proof" includes the burden of persuasion.  *See Greenwich Collieries II*, 512 U.S. at 276.

*Industrial Union*'s favorable citation in dicta of *EDF v. EPA* is similarly unavailing to EPA.  *See* 448 U.S. at 653 n.51 (concurring opinion).  Because Justice Powell did not join that section, this section only speaks for three justices.  Moreover, a six-justice majority in *Greenwich Collieries II* expressly cited *EDF v. EPA* and repudiated its reasoning.  *See* 512 U.S. at 277-80.

5

NRDC also argues mistakenly that "[b]oth of these cases . . . actually refer to a *different provision* of the APA," specifically "section 12, 5 U.S.C. § 559." While both *Maher Terminals* and *Greenwich Collieries I* reference APA sections 7(c) and 12, both courts unambiguously held that only an *express statutory provision* can modify the APA's burden of proof allocation under section 7(c), 5 U.S.C. § 556(d). Notably, section 12 never refers to the burden of proof, and instead states that a "[s]ubsequent statute may not be held to supersede or modify this subchapter . . . *except to the extent that it does so expressly*." 5 U.S.C. § 559 (emphasis added). Section 7(c), in contrast, does specifically refer to the burden of proof in administrative hearings. *See* 5 U.S.C. § 556(d) ("Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof."). Therefore, the holdings in *Maher Terminals* and *Greenwich Collieries I* as to what is required to change the APA's allocation of the "burden of proof" cannot possibly be section 12 holdings, which does not refer to the burden of proof, but rather must be section 7(c) holdings. Thus, when *Greenwich Collieries I* states that "unless superseded by an express statutory provision, the APA requires that the party who *bears the ultimate burden of persuasion* prove his case by a preponderance of the evidence," 990 F.2d at 736 (emphasis added), its holding clearly refers to section 7(c), rather than "a *different provision* of the APA" as NRDC claims. Further reinforcing that this holding refers to section 7(c), the preceding sentence in *Greenwich Collieries I* explicitly refers to "the language of section 7(c) of the APA." *Id.* (alterations omitted).

Similarly, when *Maher Terminals* holds that an express statutory provision is required, it does so in explicit support of its holding that "unless superseded by statute, the APA requires that the claimant bear the burden of proof." *See* 992 F.2d 1281 & n.3. In its summary of its holding, the *Maher Terminals* court stated that "the claimant bears the ultimate burden of

persuasion by a preponderance of the evidence" in part because "there is no express provision in the Act which overrides the APA." *Id.* at 1285. This holding, too, clearly applied section 7(c).

In any event, section 12 of the APA adds additional force to FMC's arguments. In addition to section 7(c)'s requirement that any exceptions must be "provided by statute," 5 U.S.C. § 556(d), section 12 states that a "[s]ubsequent statute may not be held to supersede or modify this subchapter . . . *except to the extent that it does so expressly.*" 5 U.S.C. § 559 (emphasis added). Thus, even if the plain language of section 7(c) did not plainly mandate an *express* statutory provision in order to override APA's burden of proof allocation, section 12 does. Indeed, this is precisely how *Maher Terminals* and *Greenwich Collieries I* applied section 12. *See* 992 F.2d at 1281 & n.3; 990 F.2d at 736 & n.5. Section 12 thus *adds* force to FMC's arguments and in no way provides a basis for distinguishing *Maher Terminals* and *Greenwich Collieries I*. NRDC's arguments that these cases only applied section 12 are incorrect.[5]

Moreover, many of the cases that defendants rely upon effectively render the requirement that any change in the burden of proof must be made "by statute" mere surplusage or read it out of the statute entirely. In particular, *Stearns*[6] and *EDF v. EPA*[7] effectively treat section 7(c) as if it read, "[e]xcept as otherwise provided by committee report, floor speeches, or any source of legislative history." It is an elementary principle of statutory interpretation, however, that courts

---

[5]   EPA and NRDC also cite provisions of FIFRA that impose document and data production obligations on pesticide registrants. *See* EPA Br. at 20-23; NRDC Br. at 17 n.6. These provisions are analogous to discovery obligations—a manifestly distinct concept from the burden of proof. That a party may have to produce documents or data to the regulator in a non-cancellation context hardly indicates that Congress intended that party to bear the burden of proof in a proceeding to revoke its license. It indicates nothing more than that Congress intended EPA to have access to the specified data.

[6]   *Stearns Electric Paste Co. v. EPA*, 461 F.2d 293 (7th Cir. 1972).

[7]   *Environmental Defense Fund v. EPA*, 548 F.2d 998 (D.C. Cir. 1976) (supplemental opinion).

7

"are obliged to give effect, if possible, to every word Congress used."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Moskal v. United States*, 498 U.S. 103, 109–10 (1990) (recognizing the "established principle that a court should 'give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-539 (1955)); *infra* at 10-11.  Congress's inclusion of "by statute" in the statutory language cannot therefore be ignored or circumvented, especially in light of section 12's requirement that any modification of the APA must be made "expressly."[8]

In sum, *Maher Terminals* and *Greenwich Collieries I* are controlling, were correctly decided, and cannot be—and were not—distinguished by EPA or NRDC.  Applying them to the present case, this Court should reach the conclusion that EPA's regulation does not rely on an "express statutory provision" and thus violates the APA.

### B.    None of the Cases Cited By Defendants Relied on an Express Statutory Provision of FIFRA

Not one of the cases that EPA and NRDC have relied on cites any statutory language of FIFRA which purports to address the burden of proof in cancellation proceedings.  The language of FIFRA is entirely *silent* on this essential issue, and neither EPA nor NRDC has argued otherwise.

One of the primary cases relied upon by EPA, *Environmental Defense Fund  v. EPA ("EDF v. EPA")*, 548 F.2d 998 (D.C. Cir. 1977) (supplemental opinion), is based upon a manifestly erroneous premise.  That case first held that the burden of proof under section 7(c)

---

[8]    Although EPA relies upon *National Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007 (D.C. Cir. 2001), that case actually supports FMC's position.  In that case, the D.C. Circuit only relied on the *statutory language* when analyzing whether Congress had "otherwise provided by statute," and never considered *any* legislative history.  *See id.* at 1013-14.  The court found that the statutory language in that case affirmatively imposed the burden of proof on the permit holder.  *Id.* at 1013.  Here, however, EPA has not relied on any statutory language, and has instead defended its regulation entirely on the basis or inferences drawn from the legislative history.

8

means only "the burden of going forward rather than the burden of ultimate persuasion." *Id.* at 1004. This premise has been forcefully rejected by the Supreme Court in *Greenwich Collieries II*, however. 512 U.S. at 276 ("APA's unadorned reference to 'burden of proof' to refer to the burden of persuasion."). Indeed, the Supreme Court cited *EDF v. EPA* by name and expressly disapproved of its reasoning. *Id.* at 277-80.

Only after reasoning that the burden of persuasion fell outside the scope of section 7(c) did *EDF v. EPA* hold that "the 1964 amendments to FIFRA were specifically intended to shift the burden of [persuasion] . . . to the registrant." 548 F.2d at 1015. The court then compounded this initial mistake by committing another similar error—relying exclusively on legislative history to conclude that Congress had changed the burden of proof "by statute." *See id.* at 1015-18. *But see Maher Terminals*, 992 F.2d at 1281 & n.3; *Greenwich Collieries I*, 990 F.2d at 736 & n.5. *EDF v. EPA* thus took extreme liberties with the statutory language of section 7(c), first with the meaning of "burden of proof" and then with the "otherwise provided by statute" language. The first misreading of the statutory text was explicitly overruled by the Supreme Court. This Court should decline EPA's plea to perpetuate *EDF v. EPA*'s second, related error. Instead, this Court should follow the Supreme Court's instruction to interpret the language of section 7(c) "in accord with its ordinary or natural meaning." *Greenwich Collieries II,* 512 U.S. at 272. Thus, "burden of proof" means burden of proof, and "provided by statute" means provided by actual statutory provision.

Both *Stearns* and *EDF v. EPA* rely heavily on the premise that FIFRA does not "differentiate between the two situations"—*i.e.*, the initial registration process and a subsequent cancellation proceeding—when it comes to the burden of proof. *Stearns*, 461 F.2d at 304-05; *accord EDF v. EPA*, 548 F.2d at 1017 ("[W]e do not discern in the statute [*i.e.*, FIFRA] an

allocation of the burden of proof that is different for suspension hearings than for registration or cancellation hearings.").  Those courts were correct that the language of FIFRA draws no distinction between the allocation of the burden of proof in a registration hearing versus a cancellation hearing – namely because FIFRA is completely silent as to the burden of proof in either situation.  *But section 7(c) of the APA emphatically <u>does</u> draw such a distinction.*  Section 7(c) requires that the proponent of an order granting a new license must bear the burden of proof necessary to establish the license, and that the proponent of an order revoking an existing license must bear the burden of proof to establish that the grounds for revocation are satisfied – and this allocation of the burden of proof must be given effect unless FIFRA expressly provides otherwise.  Here, FIFRA is silent.  Notably, even *Stearns* admits that "most of the legislative comment concerned new registrations rather than cancellations" and that "quite clearly . . . the only major change contemplated [in 1964] was elimination of [initial] registration under protest." 461 F.2d at 303.  (In fact, there was nothing at all in the legislative history of the 1964 amendment that discussed the burden of proof in a cancellation proceeding context.)  Both *Stearns* and *EDF v. EPA* thus conducted the wrong statutory inquiry by failing to give effect to the APA, and reached the wrong result.

Furthermore, the sort of ends-orientated statutory interpretation embodied in *Stearns* and *EDF v. EPA* is precisely the type of reasoning that the Supreme Court has repeatedly criticized and rejected in the three decades since those cases were decided.  *See, e.g.*, *United States v. Ron Pair Enterprise, Inc.*, 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (internal quotations omitted)); *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 294 (1995) ("'[W]hen a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most

extraordinary circumstance, is finished.'" (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992))).

Instead, the Supreme Court has stressed the importance of textualism and "plain meaning." This current case seeks nothing more than a declaration that the plain meaning of "except as otherwise provided by statute" means that Congress must actually provide otherwise by statutory language, rather than by inferences to be drawn from ambiguous legislative history. *See Hubbard v. United States*, 514 U.S. 695, 708 (1995) ("Courts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress."). Moreover, the Supreme Court also has made clear that exceptions to the APA are strongly disfavored. *See*, *e.g.*, *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) ("A statutory intent that legislative departure from the [APA] norm must be clear."); *Marcello v. Bonds*, 349 U.S. 302, 310 (1955) ("Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in § 12 of the Act that modifications must be express."); *see also Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998) ("[T]he import of the § 559 instruction is that Congress's intent to make a substantive change be clear." (internal quotations omitted)).

None of the other cases[9] relied upon by EPA address the critical issue—whether FIFRA reallocates the burden of proof under section 7(c) of the APA. Indeed, EPA even acknowledges that only *EDF v. EPA* and *Stearns* reached this issue. *See* EPA Br. at 24 ("[T]wo courts have explicitly held that FIFRA falls within the 'except as otherwise provided' provision of the APA." (citing *EDF v. EPA* and *Stearns*)). All of these other cases simply reflect the pre-*Greenwich*

---

[9]     *See Dow Chemical Co. v. Ruckelshaus*, 477 F.2d 1317, 1324-25 (8th Cir. 1973); *Envtl. Def. Fund v. EPA*, 465 F.2d 528, 532 (D.C. Cir. 1972) (as amended); *Envtl. Def. Fund v. Ruckelshaus*, 439 F.2d 584, 593 (D.C. Cir. 1971).

11

*Collieries II* error that the APA did not allocate the burden of persuasion.  Thus, no analysis of

whether section 7(c)'s "otherwise provided by statute" requirement was necessary (and none was

conducted by these courts).  Therefore, none of these remaining cases addressed the relevant

question here—whether the APA's statutory exception requirement is satisfied.  Nor does EPA

claim otherwise.

### C.    The "*Expressio Unius*" Canon Does Not Place Cancellation Proceedings Outside of the APA

NRDC argues that the "*expressio unius est exclusio alterius*" ("*expressio unius*") canon

of statutory interpretation supports a conclusion that the APA does not govern FIFRA

cancellation proceedings at all.  NRDC Br. at 14-15; *see generally Nat'l R.R. Passenger Corp. v.

Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("When a statute limits a thing to be

done in a particular mode, it includes the negative of any other mode.  This principle of statutory

construction reflects an ancient maxim – *expressio unius est exclusio alterius*." (internal

quotations omitted)).  Specifically, NRDC argues that because "in drafting § 136d(d), Congress .

. . le[ft] out reference to the APA and instead created a distinct set of detailed procedures for

cancellation hearings," "section 7(c) of the APA is inapplicable."  NRDC Br. at 15.

NRDC's argument fails for several reasons.  First, it is once again contrary to the

language of section 7(c) that an exception to the APA's burden of proof rule must be expressed

in statutory language.  The mere fact that Congress addressed some particular cancellation

procedures in FIFRA, but was silent as to the burden of proof, certainly does not constitute an

express statutory declaration that Congress wanted to modify the APA's burden of proof rule for

cancellation hearings.

Second, NRDC's post hoc "*expression unius*" rationalization for the burden of proof rule

is outside of the administrative record, and cannot supply a basis for the rule that EPA itself

12

never considered. *See Fort Sumter Tours v. Babbitt,* 66 F.3d 1324, 1335 (4th Cir. 1995)

("Judicial review of administrative action is generally confined to the administrative record.");

*Md. Wildlife Fed'n v. Dole,* 747 F.2d 229, 236 (4th Cir. 1984) ("The focal point for judicial

review is the administrative record, not post hoc rationalizations or interpretations."); *see also*

*Alpharma, Inc. v. Leavitt,* 460 F.3d 1, 6 (D.C. Cir. 2006) ("post hoc rationalizations 'have

traditionally been found to be an inadequate basis for review' of agency decisions." (quoting

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971)). Indeed, NRDC's current

argument runs contrary to the rationale provided by EPA. EPA's denial of FMC's rulemaking

position explicitly argues that section 7(c)'s "otherwise provided by statute" requirement is

*satisfied*, rather than inapplicable. *See* AR 015 ("[B]oth the FFDCA and FIFRA *fall within the*

*exception specified in section 7(c).*" (emphasis added). Thus, EPA's actions must stand or fall on

the rationale that EPA actually provided, not on NRDC's inventive new arguments.

Third, none of the cases relied on by EPA and NRDC held that the APA did not apply to

cancellation hearings. Indeed, all of them held or assumed that the APA applied and analyzed

the burden of proof issue accordingly. *See, e.g.*, *Stearns*, 461 F.2d at 305 n.39 ("[T]he location

of this burden is 'otherwise provided by statute.'"). Additionally, as discussed above, exceptions

to the APA are strongly disfavored, *see supra* at 11. Furthermore, NRDC's argument runs

directly contrary to the legislative history that provides that the "[p]rocedures for [FIFRA]

hearings and other matters would be in accord with [the APA]." H.R. Rep. No. 92-1540, at 32

(1972). NRDC's argument is thus without any legal support.

Moreover, the *expressio unius* canon actually supports FMC's position. Here, Congress

specifically acted in 1964 to shift the burden of proof for initial registrations to the license

applicant (by ending registration under protest) but did not adopt any statutory language

concerning the burden of proof in *cancellation* hearings. Thus, Congress revised the burden of proof allocation for the license applicant, but omitted any language revising the burden of proof for proceedings to revoke the license. Under the *expressio unius* canon, this omission in the statutory language is significant and should be given effect by holding that Congress did not shift the burden of proof in cancellation hearings. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 8 (2000) (rejecting the "theory – that the expression of one thing indicates the inclusion of others unless exclusion is made explicit – [as] contrary to common sense and common usage").

     **D.**    ***Chevron* Deference Cannot Save EPA's Statutory Interpretation**

Neither EPA nor NRDC addressed FMC's argument that *Chevron* deference does not apply to EPA's interpretation of the APA. *See* FMC Br. at 16 (citing *Rambo*, 521 U.S. at 137 n.9, *Dominion Energy Brayton Point, LLC v. Johnson*, 443 F.3d 12, 18 (1st Cir. 2006), and *NLRB v. Fluor Daniel, Inc.*, 161 F.3d 953, 967 n.16 (6th Cir. 1998)). Simply put, "[t]he APA is not a statute that [EPA] is charged with administering," and thus deference does not apply. *Rambo*, 521 U.S. at 137 n.9; *see also Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 844 (1984) (*Chevron* deference applies to an agency's "construction of a statutory scheme *it is entrusted to administer*." (emphasis added)). EPA therefore cannot avail itself of *Chevron* deference to save its statutory interpretation of APA's burden of proof.

**II.**    **THERE IS NO LANGUAGE IN FIFRA THAT SUPPORTS EPA'S CONTENTION THAT THE BURDEN OF PROOF IN CANCELLATION HEARINGS MUST BE IDENTICAL TO THAT IN REGISTRATION HEARINGS**

Most of EPA's arguments flow from the premise that the allocation of the burden of proof in both registration and cancellation hearings is the same, and that FMC has the burden of establishing otherwise. These arguments put the proverbial cart before the horse. The APA clearly establishes differing burdens of proof, depending on the identity of the "proponent" – in

the case of registration, the proponent of an order establishing a new license, and in the case of

cancellation, the proponent of an order revoking the license.  Because of the *prima facie*

applicability of section 7(c), it is EPA that has the burden of establishing that FIFRA "provided

[otherwise] by statute."  5 U.S.C. § 556(d).  EPA's argument ignores this vital distinction.

As defined by the Supreme Court, the "proponent" under section 7(c) is the party that

"seeks modification" of the status quo.  *See Rambo*, 521 U.S. at 139.  Indeed, the Fourth Circuit

has similarly concluded based upon *Rambo* that "the burden of persuasion for a modification

request is on the proponent of such request."  *Bethenergy Mines, Inc. v. Henderson*, 4 Fed. Appx.

181, 186 (4th Cir. Feb. 16, 2001).  In a FIFRA cancellation hearing, it is plainly EPA that "seeks

modification" of the status quo by cancelling an existing pesticide registration.

Notably, EPA's letter denying FMC's petition for rulemaking never argued that EPA was

not the proponent in a cancellation hearing.  *See* AR 014-16.  Instead, EPA only asserted that

"FIFRA fall[s] within the exception specified in section 7(c)."  AR 015.  EPA would only need

to avail itself of the exception if it was the "proponent" in a cancellation hearing, as its

rulemaking denial appears to recognize.[10]

EPA's misunderstanding of this issue is illustrated by its statement that "FMC concedes

that proceedings under FIFRA § 3 [registration hearings] fall within the 'except as otherwise

provided' language."  EPA Br. at 21.  This is incorrect.  In the context of a registration hearing,

the applicant for registration is the "proponent" of an order granting a new license, and therefore

bears the burden of proof under section 7(c) of the APA.  EPA does not need to establish that

registration hearings fall within the "otherwise provided by statute" requirement, because the

---

[10]     Additionally, EPA's new "proponent" arguments are not part of the rationale that EPA
relied on in the administrative record, and therefore cannot be used as a post hoc rationale
to save its regulation.    *See supra* at 12-13.

APA places the burden of proof on the proponent of the new registration, not on EPA. *See* 5 U.S.C. § 556(d). By contrast, in cancellation hearings EPA is the proponent of revocation, and to escape the APA's burden of proof rule it must show that FIFRA satisfies the APA's exception language. *See*, *e.g.*, EPA Br. at 23 ("Nothing in the structure of FIFRA or its legislative history suggests that Congress intended or supported such a distinction."). It is the APA that makes this distinction; the only relevant question is whether FIFRA expressly provides otherwise.

## III.    NRDC'S "REREGISTRATION" ARGUMENTS ARE WITHOUT MERIT

NRDC contends that EPA's burden of proof regulation can be saved because, under FIFRA, the burden of proof for "reregistration" of a pesticide is purportedly on the registrant. *See* NRDC Br. at 15-18. This argument is unavailing for several reasons.

First, the question of which party bears the burden of proof for reregistration is not before the Court. FMC's Complaint only challenges the application of EPA's burden of proof regulation in the context of *cancellation* hearings. FMC's petition for rulemaking only requested amendment of the burden of proof rule for cancellation hearings, and EPA's denial was limited to cancellation hearings. No claim has been raised in the administrative record or before this Court as to the burden of proof for reregistration. It is axiomatic that the plaintiff's complaint determines the causes of action before the court. NRDC cannot transform FMC's complaint into a challenge to the application of the burden of proof regulation in a reregistration proceeding simply because NRDC would like to litigate that issue instead.

Second, the reregistration process of FIFRA does not alter the fundamental distinction discussed earlier between applying for a new license, and modifying an existing license. "Reregistration" is simply an examination by EPA of whether an existing pesticide is believed to continue to satisfy the registration criteria. If, after the review, EPA believes that it does not, EPA's remedy is to initiate a proceeding to cancel or modify the registration. "If after

16

conducting a review . . . the Administrator determines that a pesticide should not be reregistered, *the Administrator shall take appropriate regulatory action.*" 7 U.S.C. § 136a-1(g)(2)(D)(i) (emphasis added). In such a situation, EPA is the proponent of an order changing the *status quo*, by cancelling or otherwise modifying the pesticide's registration, and therefore would have the burden of proof under section 7(c) of the APA. The reregistration provisions of FIFRA do not change the fact that if EPA wishes to initiate regulatory action to change the status of a pesticide registration, it is the "proponent" of change. *See Rambo*, 521 U.S. at 139.[11]

Third, review in this case is limited to the reasons that EPA has provided in the administrative record in defense of its actions. *See supra* at 12-13. NRDC cannot retroactively save EPA's regulation based on a rationale not contained in the administrative record and never articulated by EPA.

## IV.	THE LEGISLATIVE HISTORY OF FIFRA—WHICH CANNOT REALLOCATE THE BURDEN OF PROOF—SUPPORTS FMC'S POSITION

Although the legislative history of FIFRA is not sufficient as a matter of law to reallocate the APA's burden of proof, it nevertheless affirmatively supports a finding that Congress did not intend to create an exception to the APA for FIFRA cancellation proceedings. As discussed in FMC's opening brief, the House Conference Report on the 1972 amendments explicitly provided that "[p]rocedures for hearings and other matters would be in accord with chapter 5 of title 5 of the United States Code [APA] . . . except as otherwise specifically provided (section 6(b) [7 U.S.C. § 136d(b)])." FMC Br. at 13, 16. This language supports the conclusion that Congress did not intend to create or recognize any exceptions from the APA not contained in section 6(b)

---

[11]	Unlike registration and cancellation, FIFRA does not create a separate hearing procedure for reregistration. As noted above, if EPA decides that a pesticide is not eligible for reregistration, EPA must proceed to take action to cancel or modify the registration through the cancellation hearing mechanism. 7 U.S.C. § 136a-1(g)(2)(D)(i).

17

of FIFRA.  Indeed, the language "except as otherwise *specifically* provided" further supports FMC's argument that exceptions to the APA must be contained in an express statutory provision.[12]  There is no such language in section 6(b) that purports to create an express exemption from the APA for cancellation hearings.

EPA also argues that the Conference Report was a "selective incorporation of the requirement to hold hearings in accordance with the APA to suspension and emergency suspension hearings."  EPA Br. at 21.  The Conference Report has no such "selective incorporation," however.  Conspicuously, the language in that report applies to "[p]rocedures for hearings and other matters," *not* "procedures for suspension and emergency suspension hearings only."  Furthermore, Congress's language "except as provided by section 6(b)" hardly indicates that Congress did not intend the APA to govern cancellation proceedings.  Instead, it is a frank admission that nothing in section 6(d), which governs cancellation proceedings, was intended to disrupt the APA's default allocations of the burden of proof.

## CONCLUSION

For the foregoing reasons, FMC's motion for judgment on the pleadings should be granted and EPA's motion for summary judgment denied.

---

[12]   EPA wrongfully accuses FMC of "omit[ting]" the language "except as otherwise specifically provided (section 6(b))."  EPA Br. at 20 (citing FMC Br. at 13).  In fact, FMC specifically addressed this language, stating that "Section 6(b) does not provide any burden of proof for cancellation hearings.  *See* 7 U.S.C. § 136d(b).  The 1972 legislative history, as such, affirmatively supports allocating the burden of proof to the government at cancellation hearings."  FMC Br. at 16.

18

Respectfully submitted,

Dated: November 21, 2007          By: /s/ Abid R. Qureshi
                                      Abid R. Qureshi
                                      Virginia Bar No. 41814
                                      Attorneys for Plaintiff FMC Corporation
                                      LATHAM & WATKINS LLP
                                      555 Eleventh Street, N.W., Suite 1000
                                      Washington, D.C. 20004-1304
                                      Telephone: (202) 637-2200
                                      Facsimile: (202) 637-2201
                                      E-mail: abid.qureshi@lw.com

                                      Kenneth W. Weinstein (admitted *pro hac vice*)
                                      Claudia M. O'Brien     (admitted *pro hac vice*)

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2007, I electronically filed the foregoing Rebuttal

Memorandum In Support Of FMC's Motion For Judgment On The Pleadings and Certificate of

Service with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to the following:

John Francis Mardula
Roberts Abokhair & Mardula LLC
11800 Sunrise Valley Drive
Suite 1000
Reston, Virginia 20191-5317
Telephone: (703) 391-2900
Facsimile: (703) 391-2901
Email: JMardula@globe-IP.com

Brooke Ellinwood McDonough
Drinker, Biddle & Reath LLP
1500 K Street, NW
Suite 1100
Washington, D.C. 20005
Telephone: (202) 842-8800
Facsimile: (202) 842-8800
Email: bmcdonough@goodwinprocter.com

Robert Andrew Price, Jr.
Assistant United States Attorney
Justin W. Williams United States Attorney Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3700
Facsimile: (703) 299-3983
E-mail: andrew.price@usdoj.gov

Lauren A. Wetzler
United States Attorney's Office
Justin W. Williams United States Attorney Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3752
Facsimile: (703) 299-3983
E-mail: lauren.wetzler@usdoj.gov

1

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

> Monica Derbes Gibson
> Environmental Defense Section
> Environment and Natural Resources Division
> United States Department of Justice
> P.O. Box 23986
> Washington, D.C. 20026-3986
> Telephone: (202) 514-0135
> Facsimile: (202) 514-8865
> E-mail: monica.gibson@usdoj.gov

/s/ Abid R. Qureshi_____
Abid R. Qureshi
Virginia Bar No. 41814
Attorney for Plaintiff FMC Corporation
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
E-mail: abid.qureshi@lw.com

2

LEXSEE 4 FED. APPX. 181

**BETHENERGY MINES, INCORPORATED, Petitioner, v. JAMES HENDERSON; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondents.**

**No. 99-2495**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*4 Fed. Appx. 181*; *2001 U.S. App. LEXIS 2390*

**November 3, 2000, Argued
February 16, 2001, Decided**

**NOTICE:**      [**1**] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**      Reported in Table Case Format at: *2001 U.S. App. LEXIS 6636*.

**PRIOR HISTORY:**    On Petition for Review of an Order of the Benefits Review Board. (98-1357-BLA, 92-449-BLA).

**DISPOSITION:**      REVERSED AND REMANDED WITH INSTRUCTIONS.

**COUNSEL:**  ARGUED: William Steele Mattingly, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Petitioner.

Barry H. Joyner, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director; Ray Edmond Ratliff, Jr., Charleston, West Virginia, for Respondent Henderson.

ON BRIEF: Henry L. Solano, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

**JUDGES:** Before WILKINSON, Chief Judge, and WILKINS and LUTTIG, Circuit Judges.

**OPINION**

[*183] PER CURIAM:

Respondent James Henderson was awarded black lung benefits by an ALJ in 1987. Petitioner BethEnergy Mines, Inc., Henderson's employer, sought modification of the award, contending that the ALJ had made "a mistake in a determination [**2**] of fact" in initially awarding benefits to Henderson. Upon reconsideration, the ALJ found, based on new evidence proffered by BethEnergy, that it had been mistaken in a determination of fact. Nevertheless, the ALJ denied reopening because it held that reopening would not "render justice

4 Fed. Appx. 181, *; 2001 U.S. App. LEXIS 2390, **

under the Act." The Benefits Review Board affirmed. For the reasons that follow, we reverse and remand.

I.

As with many cases involving black lung benefits, James Henderson's claim has a complicated and protracted history. Henderson worked as a coal miner for 45 years, primarily as a motorman and general laborer. J.A. 45, 52, 61, 72. Over time, Henderson developed breathing difficulties, and he filed an application for black lung benefits on February 1, 1980. [1] J.A. 15. His claim was initially denied by the Department of Labor, prompting him to request a hearing before an ALJ. J.A. 22. More than seven years after Henderson filed his application, the ALJ awarded benefits, holding that Henderson had invoked, and BethEnergy Mines, Inc. ("BethEnergy") [2] had failed to rebut, the interim presumption codified at 20 C.F.R. § 727.203. J.A. 15-17.

> 1   Because Henderson's application was originally filed between the dates of June 30, 1973, and April 1, 1980, the disposition of his claim is governed by the "interim regulations" promulgated by the Secretary of Labor. *See* 20 C.F.R. pt. 727; *Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 137, 98 L. Ed. 2d 450, 108 S. Ct. 427 (1987)*. The "interim regulations" created the interim presumption at issue in this case.

**[**3]**
> 2   During the pendency of Henderson's claim, Bethlehem Mines, Inc., has reorganized and is now known as BethEnergy Mines, Inc.

The federal black lung statute provides disability benefits to a miner if: (1) he or she is totally disabled; (2) the disability was caused, at least in part, by pneumoconiosis; and (3) the disability arose out of coal mine employment. *See Mullins Coal Co. v. Director, OWCP, 484*

*U.S. 135, 141, 98 L. Ed. 2d 450, 108 S. Ct. 427 (1987)*. Each of the elements for eligibility is presumed under section 727.203(a) if a miner has been engaged in at least ten years of coal mine employment and meets one of five regulatory requirements, which are aimed at determining whether a claimant has pneumoconiosis. *See* 20 C.F.R. § 727.203(a). The types of medical evidence that can be used to satisfy the requirements for invocation of the interim presumption include, *inter alia*, x-rays, blood gas and pulmonary studies, and documented medical opinions. *See* 20 C.F.R. § 727.203(a)(1)-(4).

At the time of the hearing **[**4]** before the ALJ, the prevailing law in this circuit was that even "credible evidence [of] a [single] qualifying Xray indicating the presence of pneumoconiosis" was sufficient to invoke the interim presumption. *Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 426 (4th Cir. 1986)* (en banc), *rev'd, 484 U.S. 135 (1987)*. The record in Henderson's case contained two positive x-ray readings. Consequently, BethEnergy conceded that Henderson had met the *Stapleton* test, but sought to rebut the presumption, despite the two positive x-rays, by establishing that **[*184]** Henderson was able to do his "usual coal mine work or comparable and gainful work" or that his total disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(2), (3).

In awarding benefits to Henderson, the ALJ found that Henderson had invoked the interim presumption because "the x-ray evidence establishes and the Employer concedes that Claimant has pneumoconiosis." J.A. 15. The ALJ also concluded that BethEnergy failed to rebut the interim presumption. J.A. 15-17.

The BRB affirmed the award of benefits to Henderson, and BethEnergy **[**5]** filed a motion for reconsideration, which the BRB, sitting en banc, denied. J.A. 19-20. We affirmed the BRB's decision by published opinion. *See Bethlehem Mines Corp. v. Henderson, 939 F.2d 143 (4th Cir. 1991)*. Approximately two months

4 Fed. Appx. 181, *; 2001 U.S. App. LEXIS 2390, **

following our decision in *Bethlehem Mines*, BethEnergy filed a timely petition for modification pursuant to *20 C.F.R. § 725.310(a)*. J.A. 37-39. That section provides:

> Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits. [3]

[3]   Although the modification regulation refers only to a "deputy commissioner," we have previously held that the term also includes "an ALJ to whom a modification request has been referred." *Jessee v. Director, OWCP, 5 F.3d 723, 725 n.2 (4th Cir. 1993)*.

[**6] BethEnergy petitioned for modification on the ground that the ALJ was mistaken when it concluded that Henderson had invoked the interim presumption with qualifying x-ray evidence. Its petition was primarily based upon two events occurring after the ALJ awarded benefits to Henderson: (1) Dr. Zaldivar recanted a prior positive x-ray reading, which was a basis for the ALJ's original award of benefits, stating that the poor quality of the x-ray had caused him to mistakenly conclude that it showed pneumoconiosis, J.A. 43, 121; and (2) the Supreme Court rejected *Stapleton*'s rule that the interim presumption could be invoked with one qualifying item, adopting instead a requirement that the claimant prove an "invocation fact by a preponderance of the evidence," *Mullins, 484 U.S. at 154, 161 n.35*.

BethEnergy not only relied on Zaldivar's recantation in demonstrating that Henderson

was no longer entitled to the interim presumption under *Mullins*, but it also presented additional x-ray evidence showing that Henderson did not have pneumoconiosis. By the time of the modification hearing before the ALJ, BethEnergy had obtained 41 negative x-ray readings versus the sole [**7] positive x-ray reading by Dr. Bassali. [4] J.A. 171-72.

4   BethEnergy informed the court at argument that the x-ray read by Bassali has been destroyed and, as a result, no further readings of that xray are possible.

Despite these developments, the ALJ did not conclude that there had been a "mistake in a determination of fact" until after the BRB had remanded the case twice. J.A. 193-94. Then, though the ALJ found "that the preponderance of the evidence does not establish the existence of pneumoconiosis," the ALJ still refused to reopen the record on the ground that doing so would not "render justice under the Act." J.A. 189. First, the ALJ noted that BethEnergy had conceded the existence of pneumoconiosis under section 727.203(a)(1), and had failed to challenge invocation of the interim presumption [*185] based upon *Mullins* or any other ground before the BRB or this court. Second, the ALJ found that BethEnergy "sat on its heels" by failing to develop its own medical evidence prior to the first hearing. J.A. 188. [**8] Therefore, the ALJ denied modification, deciding it was improper to allow BethEnergy either to relitigate its claim through the back door "after it failed on a previous theory" or to correct counsel's misjudgments belatedly. J.A. 189. The BRB affirmed, relying on the reasoning of the ALJ. J.A. 199. BethEnergy filed a timely petition for review in this court. J.A. 200-203.

II.

The modification of an award or denial of benefits under the Black Lung Benefits Act can be based upon either a "mistake in a determina-

4 Fed. Appx. 181, *; 2001 U.S. App. LEXIS 2390, **

tion of fact" or a "change in conditions." *See 20 C.F.R. § 725.310.* [5] We must reverse an ALJ's decision on a modification request if the ALJ abused its discretion. *See O'Loughlin v. Parker, 163 F.2d 1011, 1012 (4th Cir. 1947)*; *see also Betty B Coal Co. v. Director, OWCP, 194 F.3d 491, 501 (4th Cir. 1999)* (noting that "we would not hesitate to correct abuses" of an ALJ's discretion to grant or deny reopening). Under the abuse of discretion standard, reversal is warranted when we have "a definite and firm conviction" that the tribunal below "committed a clear error of judgment in the conclusion it reached upon a weighing **[**9]** of the relevant factors." *See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)* (internal quotations omitted).

> 5   The modification procedures for black lung cases are expressly incorporated from the Longshore and Harbor Workers' Compensation Act. *See 30 U.S.C. § 932(a)* (incorporating *33 U.S.C. § 922*); *Consolidation Coal Co. v. Borda, 171 F.3d 175, 180 (4th Cir. 1999).*

Although the ALJ was permitted to consider whether reopening would "render justice under the Act," we conclude that the ALJ nevertheless abused its discretion by misapplying that standard to the case at hand. [6] The ALJ did not deny reopening because of a conclusion that there was no mistake of fact or change in conditions. Nor did the ALJ find that BethEnergy had engaged in misconduct -- such as improperly withholding evidence or filing multiple modification requests in order to harass a claimant -- which would have raised equitable concerns counseling **[**10]** against a reopening of the proceedings. Rather, the ALJ denied rehearing essentially in the interest of finality, to prevent BethEnergy from getting "another bite at the apple."

> 6   Contrary to BethEnergy's assertion, we cannot say that the ALJ applied an incorrect legal standard when it consid-

ered whether reopening the award of benefits to Henderson would "render justice under the Act." The Supreme Court has declared that an ALJ's exercise of discretion in modification cases may be guided by that principle. *See O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256, 30 L. Ed. 2d 424, 92 S. Ct. 405 (1971)* (per curiam) (stating that an ALJ should "review factual errors in an effort 'to render justice under the Act'"); *see also Betty B Coal, 194 F.3d at 497-98* ("The modification procedure is flexible, potent, easily invoked, and intended to secure 'justice under the Act.'").

We have, however, expressly disavowed the importance of finality in such circumstances, concluding **[**11]** instead that "to the extent the 'principle of finality' ever applies to black lung claims,'" it does not apply to properly filed modification requests. *Jessee, 5 F.3d at 725*; *see also Borda, 171 F.3d at 180* (stating that the modification provision in black lung cases is "inherently broad" and has been interpreted "expansively," and that the principle of finality does not apply in black lung claims as it does in ordinary lawsuits). **[*186]** Similarly has the Supreme Court rejected the application of res judicata to modification requests. *See Jessee v. Director, OWCP, 5 F.3d 723, 725 (4th Cir. 1993)* (citing *Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 461-65, 20 L. Ed. 2d 30, 88 S. Ct. 1140 (1968)).* Finality and res judicata simply are not appropriate factors in adjudicating modification requests because an ALJ may simply reverse a decision, with or without a request for modification, even when there is no new evidence or solely new evidence to consider. *See O'Keeffe, 404 U.S. at 255*; *Jessee, 5 F.3d at 725.* In modification cases, the paramount interest is in ensuring that eligible claimants **[**12]** receive benefits and that ineligible claimants do not, and when that interest clashes with an interest in finality, the latter must yield.

The BRB stated in a related case that "one could hardly find a better reason for rendering justice than that it would be unjust or unfair to require an employer to pay benefits to a miner who does not meet the requirements of the Act." *L.C. Branham*, 21 Black Lung Rep. 1-79, 1-83 (Ben. Rev. Bd. March 19, 1998); *see also 30 U.S.C. § 901(a)* ("The purpose of this subchapter [is] to provide benefits, in cooperation with the States, to coal miners *who are totally disabled due to pneumoconiosis . . . .*") (emphasis added). Because here, too, due to a lack of evidence of pneumoconiosis, it may well be unfair or unjust to require the employer to pay benefits, the ALJ in its discretion should have granted the petition to reopen.

III.

The only remaining question is whether we should remand this case to the BRB for further proceedings or decide Henderson's eligibility for benefits today. The Director urges a remand because the ALJ placed the burden of persuasion on Henderson to prove that he was eligible for the interim **[**13]** presumption, rather than requiring BethEnergy to disprove that fact. *See Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 139, 138 L. Ed. 2d 327, 117 S. Ct. 1953 (1997) (stating that the burden of persuasion for a modification request is on the proponent of such request). BethEnergy does not dispute that *Metropolitan Stevedore* controls or that the burden of persuasion was placed on the wrong party; rather, it contends that remand would be a "waste of time." We find it unnecessary to remand on the question of whether a mistake in fact has occurred based on the x-ray evidence. There are now 41 negative xray readings in the record, 25 of which are interpretations of x-rays that were taken after the sole positive x-ray reading by Bassali. J.A. 172. And the x-ray read by Bassali -- the only x-ray which could support invocation of the interim presumption -- has been destroyed. No reasonable ALJ could conclude that Henderson is eligible for the interim presumption under section 727.203(a)(1) based on the x-ray evidence, regardless of which party has the burden of establishing a "mistake in a determination of fact." We do believe, however, that remand is appropriate **[**14]** to determine whether Henderson can invoke the interim presumption through other qualified medical evidence. Due to its denial of reopening, the ALJ has yet to have the opportunity to independently consider whether Henderson could invoke the interim presumption through blood gas or pulmonary studies or other qualified medical evidence.

The decision of the Board is reversed and the case is remanded with instructions to reopen proceedings.

*REVERSED AND REMANDED WITH INSTRUCTIONS*