**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FMC CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:07cv819-GBL-BRP |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | |
| ) | |
| and ) | |
| ) | |
| STEVEN L. JOHNSON, in his official ) | |
| capacity as Administrator of the United ) | |
| States Environmental Protection Agency, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| NATURAL RESOURCES DEFENSE ) | |
| COUNCIL, INC. ) | |
| ) | |
| Intervenor. ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants United States Environmental Protection Agency, *et al.*, (collectively "EPA")

submit this reply in further support of their Cross-Motion for Summary Judgment under Federal

Rule of Civil Procedure 56(b).

Under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§

136-136y, EPA in 1973 promulgated regulations governing the "order of proceeding and burden

of proof" in hearings on the cancellation of pesticide registrations. 40 C.F.R. § 164.80; *see* 40

C.F.R. pt. 164. These regulations provide that, "[o]n all issues arising in connection with the

hearing, the ultimate burden of persuasion shall rest with the proponent of the registration." 40

C.F.R. § 164.80(b). This 1973 FIFRA regulation requires the registration proponent – that is, the

party interested in securing and maintaining registration of its pesticide and that has access to

data regarding the safety and efficacy of its pesticide – to bear the burden of proving that its

pesticide complies with the requirements of FIFRA. The Plaintiff ("FMC") petitioned EPA to

amend this regulation, and on April 3, 2007, EPA denied FMC's petition, which action

precipitated this lawsuit.

In its brief opposing EPA's motion for summary judgment, FMC asserts that it challenges

both EPA's 2007 denial of FMC's petition to amend the 1973 FIFRA regulation <u>and</u> that

regulation itself, directly. Regardless of how FMC frames its claims, the Court should reject

FMC's arguments and grant EPA's motion for summary judgment. First, as demonstrated in

Defendants' opening brief and discussed further below, FMC's alleged direct challenge to EPA's

1973 FIRFA regulation is clearly time-barred, because this lawsuit was filed after the expiration

1

of the six-year statute of limitations defining the United States' waiver of sovereign immunity, which indisputably governs challenges to 40 C.F.R. § 164.80(b).  Contrary to FMC's claim, EPA did not, upon denying FMC's  petition to amend that regulation, "reopen" that regulation and thus subject it to a new six-year statute of limitations during which time the regulation may be challenged.  Thus, this Court lacks jurisdiction over any claims directly challenging EPA's regulation, and any such claims must be dismissed

Second, while this Court may review FMC's challenge to EPA's recent denial of FMC's petition to amend – assuming venue for this case is appropriate in this Court[1] – that claim is governed by the highly deferential standard of review that applies to agency determinations not to initiate rulemakings to reconsider previously settled matters.  As EPA explained in its denial, EPA previously responded to comments on its 1973 FIFRA regulation in 1996, after the Supreme Court issued its decision in *Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267 (1994), and concluded that this regulation is fully consistent with that case and the applicable statutory provisions.  FMC, in its petition to amend the regulation, cited to that Supreme Court case and to a  case interpreting it to support its argument.  However, the petition to amend the regulation offered no new basis for amending the regulation.  Accordingly, EPA reasonably denied FMC's petition because the Agency had no new information warranting that it reconsider its 1996 interpretation that *Greenwich Collieries* does not affect the legality of EPA's 1973 FIFRA regulation.

FMC's further argues that, as part of its review of EPA's denial of its petition to amend,

---

[1] In accordance with the Court's order of November 28, 2007, EPA will file on December 5, 2007, its memorandum regarding venue.

this Court may consider whether EPA's regulation is plainly contrary to the authorizing statute. The exception to which FMC refers, however, affords courts only limited authority in certain circumstances to consider whether, after the applicable statute of limitations has passed, an agency's regulation is *ultra vires* because it violates a clear statutory mandate. FMC cannot make the necessary showing under this standard, because 40 C.F.R. § 164.80(b) falls well within EPA's mandate to promulgate regulations governing the order of proceedings and burden of proof. FMC's assertion that EPA's regulation is inconsistent with the Administrative Procedure Act ("APA") does not satisfy this narrow exception. Moreover, even if FMC could somehow obtain plenary review of EPA's regulation in this lawsuit, FMC's arguments should be rejected. EPA's interpretation of the applicable statutory provisions is eminently reasonable and fully consistent with the governing case law.

## ARGUMENT

## I.     THE COURT LACKS JURISDICTION OVER A DIRECT CHALLENGE TO EPA'S REGULATION.

This Court's ability to entertain a direct challenge to 40 C.F.R. § 164.80(b) is limited by the applicable six-year statute of limitations that defines the scope of the United States' consent to be sued. Because that period expired well before FMC filed the instant lawsuit, this Court lacks jurisdiction over any direct challenge to that regulation.

In its Opposition to the Defendants' Motion for Summary Judgment, the Plaintiff relies on *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147 (D.C. Cir. 1990), to support its argument that this Court should look beyond the action at issue here and review 40 C.F.R. § 164.80(b) directly. A brief summary of the facts of the case and the "reopener" doctrine will

show why *Public Citizen* is inapposite here.

The reopener doctrine involves circumstances in which an otherwise time-barred challenge to an agency action can be revised, because the agency reconsidered its action in such a way as to trigger a new period for judicial review. *Public Citizen* involved a challenge to the Nuclear Regulatory Commission's decision not to issue mandatory regulations on training requirements for personnel at nuclear power plants. 901 F.2d at 149. A citizen group filed suit within 60 days after the Commission published notice of its intent to allow guidance to remain in effect, but more than 60 days after the initial publication of the original guidance document.

The D.C. Circuit addressed whether Public Citizen's lawsuit was timely and concluded that the Commission had "reconsidered the rule and decided to keep it in effect," and that a challenge to that decision would therefore be permissible. *Id.* at 150. The court described circumstances that it had considered to be "reopening":  where an agency proposed to make a change in its rule or policies and called for comments on new or changed provisions, but at the same time explained the unchanged portions and responded to at least one comment on the unchanged portions. *Id.* The court concluded that the reconsideration of the Policy Statement reopened the Statement a new period for challenge because the Commission had "explicitly" reexamined its choice to issue guidance as opposed to rulemaking and made that choice permanent. *Id.* at 151.

The "reopener" doctrine clearly does not apply in this case. EPA responded to the Plaintiff's petition for rulemaking, but the Agency did not seek public comment on the issues, it did not publish a notice of the petition in the *Federal Register*, and it did not in any way indicate that it was reconsidering 40 C.F.R. § 164.80(b). *See also, e.g., Ohio v. U.S. EPA*, 838 F.2d 1325,

4

1328 (D.C. Cir. 1988)("[T]he period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection."); *Massachusetts v. ICC*, 893 F.2d 1368, 1372 (D.C. Cir. 1990)("The agency did not hold out the unchanged calculation of value as a proposed regulation; it did not explain the unchanged procedure; it did not solicit comment on the substance of the value calculation; and it responded to Massachusetts' comments only to deny them as inconsistent with long established practice and policy. . . ."). In responding to Plaintiff's petition to amend 40 C.F.R. § 164.80(b), EPA did not "reopen" the regulation; the Agency merely provided a considered response explaining its reasons for declining to reconsider the regulation. Therefore, the Plaintiff cannot rely on *Public Citizen* in support of an argument that this Court should look beyond EPA's denial of FMC's rulemaking petition to the validity of 40 C.F.R. § 164.80(b).

The D.C. Circuit's decision in *Nat'l Mining Ass'n v Dep't of Interior*, 70 F.3d 1345 (D.C. Cir. 1995), is directly on point. There, the court held that a summary denial of an unsolicited rulemaking petition is not a sufficient reexamination to warrant reopening time limits for judicial review of agency actions. *Id.* at 1351-52.

> We are, however, convinced that the denial [of a rulemaking petition] does not evince the kind of agency reconsideration that we have held sufficient to give rise to judicial review. Of course, that a statement accompanies the denial of a petition for rulemaking is not, without much more, sufficient to trigger the reopener doctrine. An agency is normally obliged under the Administrative Procedure Act to issue some sort of explanation when it denies a petition. 5 U.S.C. § 555(e).

*Id*.

Therefore, neither *Public Citizen* nor the reopener doctrine generally, provides a basis for reaching the regulation that was the subject of the Plaintiff's rulemaking petition.

II.    **BECAUSE EPA REASONABLY CONCLUDED THAT NO NEW INFORMATION WARRANTED THAT THE AGENCY RECONSIDER 40 C.F.R. § 164.80(b), EPA'S DENIAL OF FMC'S PETITION TO AMEND SHOULD BE UPHELD.**

As explained in the Defendants' opening brief, the final agency action subject to review in this case is EPA's denial of the Plaintiff's petition to reopen and amend 40 C.F.R. § 164.80(b). In its letter dated April 3, 2007, EPA responded to the Plaintiff's petition, explaining that the Agency had previously addressed whether the regulation at 40 C.F.R. § 164.80(b) violated the law as interpreted by the Supreme Court in *Greenwich Collieries*. The April 3, 2007, letter excerpted language from a 1996 *Federal Register* notice in which EPA articulated its view of 40 C.F.R. § 164.80(b) in the context of *Greenwich Collieries*, in response to a comment . Compl. Ex. 4, at 1-2. The Agency concluded that the Plaintiff's rulemaking petition did not raise new factual or legal information that would justify revisiting this issue. Compl., Ex. 4, at 2-3.

Courts view an agency's denial of a rulemaking petition with extreme deference, to be overturned "only in the rarest and most compelling of circumstances." *Brown v. Sec'y of Health & Human Servs.*, 46 F.3d 102, 110-11 (1st Cir. 1995)(citation and internal quotation marks omitted). In *Massachusetts v. EPA*, 127 S. Ct. 1438, 1459 (2007), the Supreme Court noted that agency refusals to undertake rulemaking "arise out of denials of petitions for rulemaking which. . . the affected party had an undoubted procedural right to file in the first instance." *Id.* The Court continued: "[r]efusals to promulgate rules are thus susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'" *Id.*, *quoting National Customs Brokers & Forwarders Ass'n v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989).

It is appropriate that review of an agency's decision not to reopen and initiate rulemaking

should be narrow.  As the Court indicated in *Massachusetts v. EPA*, agencies should be able to allocate their resources as they see fit.  127 S. Ct. at 1459.  As EPA pointed out in the April 3, 2007, letter, the Agency has already had reason to consider whether *Greenwich Collieries* affects the allocation of the burden of proof in administrative hearings under FIFRA.  In the 1996 Preamble,  EPA concluded that *Greenwich Collieries* does not affect the regulations allocating the burden of proof under FIFRA.  61 Fed. Reg. 39,528, 39,534-35 (July 29, 1996).  Concluding that the Plaintiff's rulemaking petition did not present new information that would warrant reopening the issue, EPA denied the rulemaking petition.  Compl. Ex. 4, at 2.

Significantly, FMC does not argue in its opposition brief that it had provided EPA with any new information that would require the Agency to reconsider its FIFRA regulation after having already considered, in 1996, whether its regulation was affected by *Greenwich Collieries*. To be sure, FMC continues to disagree with EPA's interpretation of that case and the applicable statutory provisions upon which the 1973 FIFRA regulation is based.  But that FMC disagrees with EPA's interpretation hardly constitutes new information that could require EPA to reconsider its regulation.   If it did, there would never be repose, as any party could unilaterally establish new limitations periods, and waste limited agency resources by forcing agencies to needlessly reconsider matters they previously considered and resolved.  Forcing such reconsideration would also create regulatory uncertainty and threaten EPA's ability to implement important regulatory programs.  This would frustrate the very reasons Congress enacted a statute of limitations for claims against the United States.

Accordingly, review in this case "is limited to the '*narrow issues as defined by the denial of the petition for rulemaking,*' and does not extend to a challenge of the agency's original action

in promulgating the disputed rule." *NLRB Union*, 834 F.2d at 197.  Because EPA reasonably

concluded that *Greenwich Collieries* and its progeny did not constitute new information that

warrants the Agency to again consider whether that case affects its long-standing FIFRA

regulation, FMC's challenge should be denied and the Court should grant EPA summary

judgment.

III.    **EPA'S 1973 FIFRA REGULATION DOES NOT FALL WITHIN THE NARROW EXCEPTION FOR JUDICIAL REVIEW**.

      A.    In Examining Whether Agency Action Exceeds Its Authority or Violates a Statutory Mandate, Review Is Extremely Limited.

Under the controlling law in the Fourth Circuit, even when statutory language, for

example, a limitations period, bars judicial review, courts have recognized an implicit and

narrow exception for claims that an agency exceeded the scope of its delegated authority or

violated a clear statutory mandate.  *See Hanauer v. Reich*, 82 F.2d 1304, 1307 (4th Cir. 1996).

This narrow exception to limits upon judicial review was articulated in *Leedom v. Kyne*, 358 U.S.

184, 188 (1958).  Under this exception, the court is permitted to conduct only a "cursory review

of the merits" to determine whether EPA's regulation "exceeds the scope of *its delegated*

authority." *Hanauer*, 82 F.3d at 1309 (internal quotations omitted)(emphasis added).  In other

words, the only challenge that may be heard is whether EPA's regulation falls outside of

FIFRA's authority or is inconsistent with a clear mandate in FIFRA.  This circuit has held this

exemption to be extremely limited and narrow in scope. *See, e.g., Hanauer*, 82 F.3d at 1307;

*Champion Int'l Corp. v. EPA*, 850 F.2d 182, 185-86 (4th Cir. 1988).  As noted in EPA's opening

brief,  FMC's claim falls far short of the "regulatory repeal" of a statutory provision found to be

within the *Kyne* exception in *Hanauer.*

8

The case law of this circuit is also notable for the standard of review that it establishes, and the analysis the court is to undertake.  Under *Hanauer*, "[i]f a cursory review of the merits reveals that the Secretary did not violate a clear statutory mandate, the case must be dismissed for lack of subject matter jurisdiction."  *Hanauer*, 82 F.3d at 1309.  In this context, it is worth noting that the Fourth Circuit specifically held that  "[w]hen the statute in question is capable of two plausible interpretations, the [agency's] decision to adopt one interpretation over the other does not constitute a violation of a clear statutory mandate."  *Id.*

FMC also relies upon *Functional Music, Inc. v. FCC*, 274 F.2d 543 (D.C. Cir. 1958), and a subsequent line of cases, to support its argument that both EPA's decision on its petition for rulemaking and the regulation itself are subject to review in the instant case.  The relevant inquiry in such cases is whether the regulation "*conflicts with the statute* [from which its authority derives]."  *NLRB Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 196-97 (D.C. Cir. 1987). It is FIFRA, not the APA, that authorized EPA to promulgate regulations governing procedure in administrative hearings on the cancellation of pesticide registrations.

As discussed below, under this standard of review, FMC cannot prevail on its claim to establish jurisdiction in this Court to review the 1973 regulation, and the Defendants' Motion for Summary Judgment should be granted.  Moreover, even were FMC somehow able to establish jurisdiction in this Court for the plenary review of EPA's regulation, FMC's arguments should be rejected.  EPA's interpretation of FIFRA and the APA is reasonable and consistent with the relevant case law.

B.    Under FIFRA, the Burden of Proof Is "Otherwise Provided" Within the Meaning of the APA Exception, 5 U.S.C. § 556(d).

The Plaintiff's argument rests upon the premise that 40 C.F.R. § 164.80(b) violates the

APA, as interpreted by the Supreme Court in *Greenwich Collieries*.  FIFRA, however, is within

the APA's exception:  "Except as otherwise provided by statute, the proponent of a rule or order

has the burden of proof."  5 U.S.C. § 556(d).  *Environmental Defense Fund v. EPA*, 548 F.2d

998, 1013, 1015-18 (D.C. Cir. 1977)(opinion upon reh'g); *Stearns Elec. Paste Co. v. EPA*, 461

F.2d 293, 304-05 (7th Cir. 1972).  As demonstrated in Defendants' opening brief, even a cursory

review of FIFRA's language, structure, and legislative history show that Congress intended the

registrant to bear the burden of proof at all times.  Courts have consistently upheld this

interpretation on the grounds that FIFRA imposes a continuing duty upon the proponent of a

registration to show that its product meets the standards for registration.  *Environmental Defense*

*Fund v. EPA*, 510 F.2d 1292, 1297 (D.C. Cir. 1975); *Dow Chem. Co. .v Ruckelshaus*, 477 F.2d

1317, 1324-25 (8th Cir. 1973); *Environmental Defense Fund v. EPA*, 465 F.2d 528, 532 (D.C.

Cir. 1972); *Continental Chemiste Corp. v. Ruckelshaus*, 461 F.2d 331, 335-36 (7th Cir. 1972);

*Dow v. Blum*, 469 F. Supp. 892, 900-01 (E.D. Mich. 1979).[2]

FIFRA is by no means "silent" on the issue of the burden of proof.  The deliberate

omission of language specifying that hearings under FIFRA § 6(b) are subject to the APA, where

another provision, FIFRA § 6(c), specifically provides that suspension hearings under FIFRA §

6(c) are subject to the APA, is sufficient to show that Congress did not intend for hearings under

---

[2] FMC argues that this Court should disregard these cases because they do not expressly analyze the APA and thus, according to FMC, do not address the relevant issue.  Pl. Reb. Mem. at 11-12.  Given that many of these cases specifically cite to *Stearns Electric Paste*, 461 F.2d at 304-05, which expressly analyzed whether FIFRA falls within the "otherwise provided" exception in 5 U.S.C. § 556(d), FMC's argument is unavailing.  Further, FMC's argument fails to recognize that, having determined that FIFRA places the burden of proof on the registrant at all times, the court has necessarily determined that FIFRA "otherwise provides" a burden of proof different from 5 U.S.C. § 556(d).

FIFRA § 6(b) to be subject to the APA. *See Bates v. United States*, 522 U.S. 23, 29-30 (1997)("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations omitted).) As laid out in EPA's opening brief, a number of statutory provisions further support EPA's interpretation that FIFRA imposes a continuing obligation on the registrant to demonstrate that its product meets FIFRA's requirements, and thus, that FIFRA falls within the exception to the APA. *See, e.g.,* 7 U.S.C. §§ 136a(g), 136a-1.

For example, FIFRA establishes several occasions in which the proponent of a pesticide registration must provide data in support of the registration. The proponent of a registration is required to submit data in support of an initial application to register a pesticide. 7 U.S.C. § 136a(c). Pesticide registrations are to be reviewed periodically, and the proponent of the registration is responsible for submitting such data as EPA may require in support of the registration. *Id.* § 136a(g). In addition, FIFRA required EPA to reregister pesticides having active ingredients that were registered before November 1, 1984. *Id.* § 136a-1. The registrant was required to submit data necessary to support reregistration. *Id.* § 136a-1(d)(3). Contrary to FMC's claims, these requirements to provide data continue after registration, and this is inconsistent with FMC's view that the burden of proof differs between initial applicants and subsequent registrants in proceedings. The test of FIFRA and its structure, therefore, directly rebut FMC's argument that the 1964 amendments simply "restored" the APA's allocation of the burden of proof. *See* Pl. Mem. Opp. at 2. If the burden had shifted to the government upon registration, it would be EPA's responsibility to generate data to support continuing registrations

once an application for registration had been granted.

Moreover, FMC fails to address specific statutory language that is wholly inconsistent with its argument.  FIFRA section 6(c) explicitly requires that suspension hearings under that section are to be "held in accordance with the [APA]."  7 U.S.C. § 136d(c)(2). The regulation at issue in this case, 40 C.F.R. § 164.80(b), applies only to hearings on pesticide *cancellations*, which are held under FIFRA § 6(b).  The fact that section 6(b) does not specify that administrative cancellation hearings governed by that section must be conducted in accordance with the APA provides conclusive evidence of Congressional intent.  It constitutes Congress' affirmative statement that the APA does not apply in cancellation hearings.  *See Bates v. United States*, 522 U.S. at 29-30 (1997)(Where Congress includes language in one section of a statute and omits it in another section of the same statute, the difference is presumed to be intentional.) FIFRA also explicitly provides that, in the case of denial of a registration application, an applicant has "the same remedies as provided for in section 136d of this title."  7 U.S.C. § 136a(c)(6).  This language disproves FMC's apparent argument that Congress intended to establish a different burden of proof for hearings on the cancellation of a pesticide registration than it established for hearings on the denial of a pesticide registration.   Selectively disregarding the statutory language that fails to support FMC's interpretation and reiterating the allegation that FIFRA is "silent" does not eliminate those provisions, or convert clear Congressional direction into silence.  And even if the statute were silent, FMC's argument is inconsistent with case law under *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984), which clearly directs that if a statute is silent, EPA's reasonable interpretation is controlling.

The absence of an additional specific provision allocating the burden of proof in either

pesticide registration hearings or cancellation hearings in fact supports EPA's interpretation of FIFRA. Before 1964, FIFRA did allocate the burden of proof to the government. The statute authorized "registration under protest," whereby the Secretary of Agriculture had to register a pesticide even in the face of evidence that the product was unsafe. The remedy available to the government to protect the public from unsafe pesticides was to refer the matter to the U.S. Attorney for possible enforcement actions, in which the government would have the burden of proving that the pesticide was unsafe or out of compliance with legal requirements. *Stearns Elec. Paste Co.*, 461 F.2d at 302-04 & n. 32, citing H.R. Rep. No. 88-1125, 17-21 (1964). However, the provisions authorizing registration under protest were removed in the 1964 amendments to FIFRA. Id. at 304 n. 32, citing H.R. Rep. No. 88-1125, 2 (1964). The 1964 amendments provided that the proponent of a registration that was denied or cancelled would have "recourse to advisory committee proceedings, public hearings, and eventually judicial review." *Id.*; *see also* 7 U.S.C. §§ 136d(d), 136n(b).

Consistent with the basic principles of statutory construction, it is appropriate to look to legislative history to elucidate Congress's intent. See, e.g., *Zuni Public School Dist. No. 89 v. Dep't of Educ.*, 127 S. Ct. 1534, 1540-42, 1550 (2007); *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 606 (1991) (Supreme Court looked to both statutory text and legislative history to determine whether FIFRA preempts local regulation of pesticides.). And as demonstrated at length in Defendant's opening brief, FIFRA's legislative history shows that Congress had a clear intent that the proponent of registration always bears the burden of proving that its product satisfies FIFRA's standard that it not "cause unreasonable adverse effects on the environment," 7 U.S.C. § 136a(c)(5). Def. Mem. at 16-21; *see, e.g.,* H.R. Rep. No. 88-1125, 2 (1964) *reprinted in*

13

1964 U.S.C.C.A.N. 2166, 2167; H.R. Rep. No. 92-1540 (Conf. Rep.), *reprinted in* 1972

U.S.C.C.A.N. 4130, 4131; H.R. Rep. No. 91-637, 50-51 ("Since termination of 'protest

registration' in 1964, the basic issue in determining whether or not a pesticide product is entitled

to registration – whether the particular proceeding relates to refusal to issue an initial registration

or proposed cancellation of an existing one – is whether or not the product involved is safe and

effective and thereby in compliance with the law.  *The burden of proving the product is safe and*

*effective is with the manufactuer in either case.*" (emphasis supplied).)

  Neither of the Third Circuit cases FMC cites authorizes, much less requires, this Court to

substitute FMC's analytical framework for resolving questions of statutory construction, for that

required by the Supreme Court.[3]  In both *Maher Terminals, Inc. v. Director, Office of Workers'*

*Comp. Programs*, 992 F.2d 1277 (3d Cir. 1993), and *Greenwich Collieries v. Director, Office of*

*Workers' Comp. Programs*, 990 F.2d 730 (3d Cir. 1993)("*Greenwich Collieries I*"), *aff'd*, 512

U.S. 267 (1994), the Third Circuit was analyzing statutes that explicitly required hearings to be

conducted in accordance with the APA.  *See Greenwich Collieries*, 512 U.S. at 271.  Thus, the

only question to be resolved in those cases was what was required under the APA.  Here, by

contrast, Congress provided an explicit statement that the requirements of the APA apply to

FIFRA section 6(c) suspension hearings, and expressly omitted that requirement from FIFRA

section 6(b) cancellation hearings.  Thus, the question to be resolved is the meaning of those

FIFRA provisions.  And to determine what FIFRA provides,  it is well-settled that this court must

apply the *Chevron* framework and rely on traditional tools of statutory construction, including the

---

   [3]Notwithstanding FMC's claims to the contrary, EPA's opening brief did contest FMC's argument that legislative history was irrelevant in determining whether a statute falls within the APA's exception.  Def. Mem. at 15 n. 2, 25.

legislative history.

Moreover, in *Maher* and *Greenwich Collieries I*, the Third Circuit was considering whether legislative history alone, even if indicating a contrary intent, could overcome clear statutory language. *Maher* and *Greenwich Collieries I* do not direct this Court to ignore FIFRA's legislative history in the present case, nor do they instruct this Court how to evaluate whether or not FIFRA is within the exception to the APA, because the statutes in *Maher* and *Greenwich Collieries I* contained specific requirements that hearings be conducted under the APA. By contrast, the Seventh and D.C. Circuits based their conclusions that FIFRA falls within the "otherwise provided" exception in 5 U.S.C. § 556(d) upon traditional tools of statutory construction, including FIFRA's legislative history. *Stearns Electric Paste*, 461 F.2d at 304-05; *Environmental Defense Fund v. EPA*, 548 F.2d at 1015-1018. As discussed at length in Defendants' opening brief, the courts in both of these cases relied upon the fact that in the 1964 amendments, Congress specifically indicated its intent to shift the burden of proof back to the registrant.

Plaintiff attempts to buttress its argument by referring to the APA's savings provision, 5 U.S.C. § 559, which provides that a "[s]ubsequent statute may not be held to supersede or modify this subchapter. . .except to the extent it does so expressly." *See* Pl. Reb. Memo. at 7. Section 559 does not establish the standard for determining whether FIFRA falls within the "otherwise provided" exception of section 556(d). Instead, it deals with the general issue of the interaction between the APA and subsequent legislation. The general standard under section 559 therefore is not relevant to the exception in 5 U.S.C. § 556(d). Further, unlike other provisions of the APA, section 556(d) provides explicitly for a general exception to its requirements. *Compare* 5

U.S.C. § 556(d) *and* § 553 (providing for only specifically enumerated exceptions) *with* 5 U.S.C. § 559.  Even assuming, *arguendo*, that section 559 applies, it does not displace the analysis relying on general principles of statutory construction that leads to the conclusion that FIFRA falls within the exception in section 556(d).  To read section 559 otherwise is to inappropriately render the language in section 556(d) as mere surplusage.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. LaSalle St. P'ship*, 526 U.S. 434, 452 (1999) (recognizing the "interpretive obligation to try to givemeaning to all the statutory language.").

The question before this court is resolved by what FIFRA provides, *not* by what the APA provides.  It is well established that this question is to be resolved by application of the *Chevron* construct, and that under *Chevron*, even assuming, *arguendo*, that FIFRA is "silent," as plaintiff claims, EPA's interpretation of FIFRA is entitled to deference.[4]  *E.g., Nat'l Coalition Against the Misuse of Pesticides v. EPA*, 867 F.2d 636, 641-42 (D.C. Cir. 1989).  Accordingly, the analysis used by both the Fourth Circuit and the D.C. Circuit is appropriately applied here.  In Hanauer v. Reich, 82 F.3d 1304 (4th Cir. 1996), and *NLRB Union*, the point of the analysis was to determine Congressional intent–or in other words, "whether Congress had spoken directly to the question at issue," applying the standard two-prong *Chevron* analysis.  *See Hanauer*, 82 F.3d at 1310-11,

---

[4]Plaintiff's contention that EPA's interpretation of FIFRA is not entitled to *Chevron* deference relies exclusively on several cases that rejected judicial deference to agency interpretations of the APA. (Pl. Reb. Mem. at 16-17.)  Because the APA has not been committed to a particular agency, no agency has particular expertise useful to its interpretation, and Congress has not delegated legislative duties related to the statute to any one agency.  The reasoning underlying the doctrine of *Chevron* deference therefore does not arise where agencies interpret the APA.  *See, e.g., Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997).  But the relevant statute here is FIFRA, not the APA, and it is entirely undisputed that EPA has been delegated authority under FIFRA.  Plaintiff has not contended that FIFRA is unambiguous or that EPA's reasonable interpretation is otherwise not due deference.

n.4; *NLRB Union,* 834 F.2d at 198-99. *See also Stearns Electric Paste*, 461 F.2d at 304-05

(relying on FIFRA's legislative history to support holding that FIFRA falls within the exception

in 5 U.S.C. § 556(d).)

In *Hanauer*, after examining the statute, the Fourth Circuit concluded that the Secretary's

interpretation of the relevant statute was "entirely plausible," 832 F.3d at 1310, and, as part of

that determination, evaluated whether *Chevron* deference was appropriate. 82 F.3d at 1310-11 &

n.4. On this basis, the court dismissed the case for lack of subject matter jurisdiction, holding

that "[b]ecause the Secretary's interpretation of the statute is plausible, it does not violate a clear

statutory mandate." 82 F.3d at 1311.

Similarly, in *NLRB Union,* the D.C. Circuit addressed the appropriate analytical

framework at length, and explicitly held that resort to the legislative history was not only

appropriate, but compelled.

> The question before this court is solely one of statutory construction: are the final
> sentences of [the regulation] inconsistent with congressional intent, as manifested in the
> test of the Statute and legislative history? With regard to such questions, the Supreme
> Court has stated: . . . If a court, employing traditional tools of statutory construction,
> ascertains that Congress had an intention on the precise question at issue, that intention is
> the law and must be given effect.

834 F.2d at 197-98, *citing Chevron*, 467 U.S. 837, 843 n.9.

The Plaintiff has not been able to point to any case law under FIFRA that supports its

position, relying instead on a Supreme Court opinion that is inapposite. Thus, *Director, Office of*

*Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267 (1994), deals with two

statutes, the Black Lung Benefits Act and the Longshoremen's and Harbor Workers'

Compensation Act, that are subject to the burden of proof provision of the APA. Section 422(a)

of the Black Lung Benefits Act, 30 U.S.C. § 932(a), incorporates § 19(d) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 919(d), which provides that "any hearing held under this chapter shall be conducted in accordance with [the APA]." *Greenwich Collieries*, 512 U.S. at 271, *quoting* 33 U.S.C. § 919(d). Consequently, the Court did not address what would be required to fall within the section 556(d) exception. By contrast, the portions of FIFRA that address administrative hearings for the cancellation of pesticide registrations do not specify that such hearings must be conducted in accordance with the APA. *See* 7 U.S.C. § 136d. The evidence in FIFRA and FIFRA's legislative history shows that Congress did not intend for administrative hearings on the cancellation of pesticide registrations to be conducted under the APA.

The controlling statute here is FIFRA, and FIFRA is within the exception to the APA's allocation of the burden of proof to the proponent of a rule or order, 5 U.S.C. § 556(d). The regulation at 40 C.F.R. § 164.80(b), promulgated pursuant to FIFRA, does not contravene the APA, because it is not required to conform to the APA. For this reason, FMC has not demonstrated that EPA's 1973 FIFRA regulation is *ultra vires* or contrary to a clear statutory mandate, and thus this Court lacks jurisdiction to review that regulation. Even if this Court had jurisdiction to fully review that regulation, it should be upheld because EPA's interpretation is reasonable and fully consistent with the case law.

## CONCLUSION

For the foregoing reasons and those articulated in Defendants' Memorandum of Law in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, EPA respectfully requests that this Court dismiss the Plaintiff's complaint for lack of jurisdiction and, if it reaches the merits, grant EPA's Motion for Summary Judgment.

Respectfully Submitted,

Chuck Rosenberg
United States Attorney

By:             /s/

Ralph Andrew Price Jr.
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams United States Attorney Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3911
Facsimile: (703) 299-3983
E-mail: andrew.price@usdoj.gov

Ronald J. Tenpas
Acting Assistant Attorney General
Environment and Natural Resources Division

By:             /s/

Monica Derbes Gibson (VSB No. 36373)
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 23986
Washington, D.C.  20026-3986
Telephone:  (202) 514-0135
Facsimile: (202) 514-8865
E-mail:  monica.gibson@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2007, I filed electronically the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Abid R. Qureshi, Esquire
LATHAM & WATKINS LLP
555 Eleventh St., NW
Suite 1000
Washington, DC 20004-1304
abid.qureshi@lw.com

Counsel for plaintiff

John Francis Mardula, Esquire
Roberts Abokhair & Mardula LLC
11800 Sunrise Valley Dr
Suite 1000
Reston, VA 20191-5317
Mardula@globe-IP.com

Counsel for intervenor

By: _____/s/_____
Ralph Andrew Price Jr.
Assistant U.S. Attorney
Office of the U.S. Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3911
Facsimile: (703) 299-3983
andrew.price@usdoj.gov

Counsel for all defendants