IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FMC Corporation, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:07-CV-02277 (RMU) |
| United States Environmental Protection | ) | |
| Agency, and Stephen L. Johnson, | ) | |
| Administrator, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| Natural Resources Defense Council, Inc., | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |

## DEFENDANT-INTERVENOR'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE

Defendant-Intervenor Natural Resources Defense Council, Inc. ("NRDC") respectfully submits this memorandum in opposition to the motion of Plaintiff FMC Corporation ("FMC") to transfer this action to the District of Delaware or, in the alternative, to retransfer the action back to the Eastern District of Virginia, where FMC originally filed it.

NRDC respectfully urges the Court to deny FMC's motion to transfer venue and instead issue a ruling on the merits of the pending dispositive motions that are fully briefed and ripe for this Court to decide. The Virginia district court exercised its discretion reasonably in transferring this action here, and its transfer order operates as law of the case. Neither the convenience of the parties nor the interests of justice would be advanced by a second transfer order. Rather, FMC's apparent motive in seeking a transfer of the case is to have it decided outside of this Circuit, in order to avoid controlling precedent that requires this Court to enter

1

summary judgment in favor of Defendants U.S. Environmental Protection Agency and Stephen Johnson, Administrator (collectively "EPA"). FMC's attempt to avoid that controlling precedent should not be accepted by this Court.

## PROCEDURAL HISTORY

FMC filed the Complaint in this action in the Eastern District of Virginia on August 16, 2007, alleging that an EPA regulation, 40 C.F.R. § 164.80, violates the Administrative Procedure Act ("APA") because it requires pesticide manufacturers to bear the burden of proof in cancellation hearings under the Federal Insecticide, Fungicide, Rodenticide Act ("FIFRA"). (Dkt. 1.) The day after EPA answered the Complaint, FMC moved for judgment on the pleadings. (Dkt. 18, 19.) The Virginia district court granted NRDC's motion to intervene, with the consent of the parties, on October 15, 2007. (Dkt. 28.) Then, on October 29, 2007, EPA opposed FMC's motion for judgment on the pleadings and cross-moved for summary judgment. (Dkt. 31-33.) NRDC filed its own memorandum opposing FMC's motion and supporting EPA's motion. (Dkt. 30, 34.) Each of the parties' dispositive motions is now fully briefed and ripe for decision by this Court. (Dkt. 37-38, 41-42.)

On November 28, 2007, in anticipation of the December 7, 2007 hearing on the dispositive motions, the Virginia district court issued an order requiring the parties to file supplemental briefs on the issue of venue and to be prepared to address the question at the hearing. (Dkt. 40.) Each party filed a brief in response to the order. FMC asserted that venue was proper in the Eastern District of Virginia under 28 U.S.C. § 1391(e) and that EPA had, in any event, waived the venue defense by not raising it. (Dkt. 44.) NRDC asserted that whether venue was proper turned on whether a substantial part of the acts and/or omissions that form the basis of FMC's claim occurred in the Eastern District, under 28 U.S.C. § 1391(e)(2), but that

NRDC lacked sufficient knowledge to opine on this. (Dkt. 43.) EPA asserted that venue was not proper in the Eastern District and that it had not waived the defense, and in the alternative EPA requested that the Court transfer the action *sua sponte* to the District of Columbia under 28 U.S.C. § 1406(a). (Dkt. 45.)

At the hearing, the Virginia district court questioned each party's counsel as to whether venue was proper in the Eastern District, or whether, in the alternative, the Court should transfer the action to the District of Columbia. Transcript of proceedings before the Hon. Judge Gerald Bruce Lee, U.S.D.J. (E.D. Va.), Civil No. 07-819 (Dec. 7, 2007) ("Tr."), at 3-11, attached to Wu Decl.[1] as Ex. A. At the conclusion of the hearing, Judge Lee ruled on the record in open court:

> As I reviewed all of [the parties'] submissions, the question occurred to me whether venue was proper in this district for this case.
>
> The complaint alleges that venue was proper under 1391(e). . . .
>
> In this particular case, the EPA is headquartered in Washington, D.C. The administrator is headquartered in Washington, D.C. According to the government, the general counsel and the assistant administrator who made the ultimate determination about [FMC's] pesticide [are] in Washington, D.C. And the plaintiff, FMC, is a Delaware corporation with its headquarters in Pennsylvania.
>
> And the issue has to do with EPA's refusal to grant a petition for rule making. And it seems to me, that decision occurred in Washington, D.C.
>
> The defense here, the government did not assert any objection to improper venue. And that can be a waiver.
>
> However, that does not prevent the Court on its own for – from considering whether or not to transfer a case sua sponte under Feller versus Brock from the Fourth Circuit and the One Beacon Insurance Company versus J and B Storage Trailer Rental Corporation, Eastern District of Virginia.
>
> It seems to me that this case has no connection with the Eastern District of Virginia. The presence of the [EPA's] pesticide office in Virginia and employees there is not determinative of the nature of the claim. The actions complained of

---

[1] In this memorandum, "Wu Decl." refers to the Declaration of Mae C Wu, filed on January 22, 2008.

deny the petition for a rule making. The ultimate judgment about the pesticide all being made by officials in Washington, D.C., and therefore, it would be appropriate to transfer this case to the District of Columbia District Court.

*This is forum shopping*, and I certainly understand that you want to take advantage of the expeditious nature in which we handle our docket. But part of the reason we're able to do that is because we handle the cases that belong to us. And this case does not belong here. And so I'm transferring it to the District of Columbia.

Tr. 12-14 (emphasis added). That same day, the Virginia district court formalized its decision in an order, transferring the case to this Court "[f]or the reasons stated in open court." (Dkt. 47.)

On January 7, 2008, FMC moved this Court to transfer this action a second time, either to the District of Delaware or, in the alternative, back to the Eastern District of Virginia. (Dkt. 50.)

## LEGAL STANDARD

As FMC notes, "[p]ursuant to 28 U.S.C. § 1404, '[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" FMC Mem. at 4.[2] On a motion under this statute, the moving party "bears the burden of establishing that transfer is proper." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003); *accord Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001); *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 5 (D.D.C. 1996).

After the district court makes a threshold determination that the district to which transfer is sought is one in which the action might have been brought, Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to 'individualized, case-by-case considerations of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "In ruling on Section 1404(a)

---

[2] In this memorandum, "FMC Mem." refers to FMC's Memorandum in Support of its Motion to Transfer Venue to the District of Delaware, filed on January 7, 2008 (Dkt. 50).

motions, courts . . . have considered many variants including the private interests of the parties and the public interests of the court, which are protected by the language of Section 1404(a)."

*Kafack*, 934 F. Supp. at 6. The private interest factors that courts have considered include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant . . . ; and (6) the ease of access to sources of proof.

*Id.* at 6; *accord Sierra Club*, 276 F. Supp. 2d at 67; *Greater Yellowstone*, 180 F. Supp. 2d at 127.

The public interest factors that courts have considered include:

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Kafack*, 934 F. Supp. at 6; *accord Sierra Club*, 276 F. Supp. 2d at 69-70; *Greater Yellowstone*, 180 F. Supp. 2d at 128.

## ARGUMENT

### I.    The Virginia Transfer Order is the Law of the Case.

Where, as here, an action has already been transferred from one district to another under the federal venue statutes, the transfer order of the transferor court is "law of the case binding the second district court . . . in the absence of clear error or manifest injustice." *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("The policies supporting [the law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."); *Joyner v. Reno*, 466 F. Supp. 2d 31, 38 (D.D.C. 2006) ("[A] district court may not directly review the merits of the transfer decision of another district court.") (citing *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc)).

The Virginia district court exercised its discretion reasonably in issuing the transfer order. Following Fourth Circuit precedent, the court found that it had the authority to raise the issue of venue *sua sponte*. *See Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (noting that district court may transfer action *sua sponte*, provided that it first gives parties the opportunity to be heard); *see also Adams v. Bell*, 711 F.2d 161, 194 (D.C. Cir. 1983) ("Any party can move for, or the District Court can *sua sponte* suggest, a transfer of an action to a clearly preferable forum."). Contrary to FMC's suggestion, *see* FMC Mem. at 3, 7, the Virginia district court gave FMC ample opportunity to be heard both on whether venue was proper in that district and whether the case should be transferred to this Court: FMC submitted a memorandum on venue and appeared before the court to argue the issue. *See* FMC Venue Mem. at 1-3;[3] Tr. at 4-9. Both in its memorandum and at the hearing, FMC asserted that venue was proper in the Eastern District under 28 U.S.C. § 1391(e) both because EPA maintained a sufficient presence in the district to constitute "residence" there and because a substantial part of the acts or omissions alleged in its Complaint occurred there. As apparent from the hearing transcript, quoted above, the district court applied the statutory test in 28 U.S.C. § 1391(e), considered all the relevant factors, and ruled against FMC because it found that (1) this case "has no connection with the Eastern District of Virginia"; (2) "[t]he presence of [an EPA] pesticide office in Virginia and employees there is not determinative";[4] and (3) FMC was "forum shopping . . . to take advantage of the

---

[3] In this memorandum, "FMC Venue Mem." refers to FMC's Memorandum Regarding Venue, filed on December 5, 2007 (Dkt. 44).

[4] Contrary to FMC's suggestion, *see* FMC Mem. at 2, applicable law supports the Virginia district court's finding that EPA does not "reside" in the Eastern District. *See, e.g.*, *Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999) (finding that Attorney General "resides," for venue purposes, at Department of Justice headquarters in the District of Columbia); *Franz v. United States*, 591 F. Supp. 374, 377 (D.D.C. 1984) ("The residence of an official defendant is determined on the basis of the official residence of the federal officer or agency.") (citing *Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978)).

expeditious nature in which we handle our docket." Tr. at 13. Based on its finding that venue was improper in the Eastern District, the Virginia district court ordered that the case be transferred to this district, the district in which it found that EPA actually resides and a substantial part of the acts or omissions alleged in the Complaint actually occurred. *Id.* At no point in either its memorandum on venue or during the hearing did FMC request that the Virginia district court transfer the case to the District of Delaware if it found venue improper in the Eastern District. *See* FMC Venue Mem. at 1-3; Tr. at 4-9.[5]

Accordingly, as the Virginia district court's transfer order was neither clearly erroneous nor manifestly unjust, this Court is bound by the transfer order under the law of the case doctrine. Therefore, pursuant to the transfer order, this Court must find that venue in the Eastern District of Virginia is improper and that FMC was "forum shopping" when it decided to file there. *See Christianson*, 486 U.S. at 816-19; *Hill*, 195 F.3d at 677; *Joyner*, 466 F. Supp. 2d at 38-39.

---

[5] Relying on *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983), FMC asserts that the Virginia district court committed "manifest legal error" in transferring the case *sua sponte* "for the purposes of docket control." FMC Mem. at 7-8. The D.C. Circuit described *Scott* as "the rare case in which a transfer order clearly fails to evince a tolerable basis." *Scott*, 709 F.2d at 721. In *Scott*, the district court transferred a *pro se* litigant's Freedom of Information Act case *sua sponte* for the sole reason that there were a "very large number of [such] cases . . . filed [in this Circuit] by prisoners from all over the country." *Id.* at 719 (internal quotation marks omitted). That is not this case: Here, the Virginia district court transferred the case for the reasons noted above, most importantly that it found venue was not proper in the Eastern District under 28 U.S.C. § 1391(e). FMC's analogy to *Scott* is inapt.

## II.    Neither the Convenience of the Parties Nor the Interests of Justice Favors a Second Transfer.

Neither the convenience of the parties nor the interests of justice favors a second transfer of this case.[6]  As the District of Delaware is FMC's *second* forum choice,[7] that choice does not deserve any deference.  *See Lagor v. Eli Lilly & Co.*, Civ. No. 06-1967(JDB), 2007 WL 174888, at *3 (D.D.C. June 18, 2007) ("Several district courts have also recently held that where a plaintiff herself seeks a transfer, the plaintiff's second or third choices of forum receive *no* deference.") (emphasis in original) (citing *Health Discovery Corp. v. Ciphergen Biosys., Inc.*, Civ. No. 06-260, 2007 WL 128283, at *3 (E.D. Tex. Jan. 11, 2007); *Tiffany v. Hometown Buffet, Inc.*, Civ. No. 06-2524, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006)).

Moreover, even if the District of Delaware were not FMC's second choice, "the deference given to plaintiff's choice of forum is diminished where the 'forum has no meaningful ties to the controversy and no particular interest in the subject matter.'"  *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2006) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 143-44 (D.D.C. 1979)); *accord Sierra Club*, 276 F. Supp. 2d at 67.  Here, the only connection between the District of Delaware and this case is that FMC resides there.  This Court has recognized that "cases decided under section 1404(a) place much less emphasis on the question of residence."  *Sierra Club*, 276 F. Supp. 2d at 67 (quoting *Kafack*, 934 F. Supp. at 7).  Thus, the mere fact that FMC resides in Delaware is not enough to tip the balance of private interests in its favor, in the absence of other factors supporting a second transfer.

The other private interest factors, however, are either not relevant to this case or do not favor a second transfer.  NRDC and EPA both prefer that this case be adjudicated in this Court.

---

[6] NRDC does not contest that this action might have been brought in the District of Delaware.
[7] As noted above, the Virginia district court found that FMC engaged in "forum shopping" in making its first choice.  Tr. at 13.

The counsel for all parties, including FMC, are located in the District of Columbia. FMC's claims arose in the District of Columbia, where FMC filed a petition for a rulemaking that EPA denied. Adjudication of this case will be based on EPA's administrative record and involve pure issues of law. There will be no discovery; there will be no trial. In other words, nothing remains in this case except for this Court to decide the dispositive motions that are already before it.[8]

The public interest factors are also either not relevant to this case or do not favor a second transfer. The second and third factors are not relevant. As FMC itself concedes, there is no significant difference in the relative congestion of the dockets of this Court and the District of Delaware. FMC Mem. at 9. And as this case "involves a challenge to a regulation with national implications," there is *de minimis* local interest in having this case decided in Delaware. *See id.*

Finally, as to the first public interest factor – which law the different district courts would apply – this factor weighs heavily against a second transfer. As both NRDC and EPA have pointed out in their respective filings, controlling D.C. Circuit precedent requires that this Court grant summary judgment to EPA, because under the law of this Circuit FIFRA "otherwise provides" for the burden of proof in cancellation hearings, within the meaning of the APA's statutory exception to its burden of proof rule. *See, e.g.*, NRDC Opp. at 7-10 (citing *Envtl. Defense Fund v. EPA*, 548 F.2d 998, 1004-05, 1015-17 (D.C. Cir. 1977); *Envtl. Defense Fund v. Ruckelshaus*, 439 F.2d 584, 593 (D.C. Cir. 1971)); EPA Opp. at 15-27 (citing same).[9] In enacting FIFRA, as presently amended, Congress intended that pesticide registrants such as FMC

---

[8] FMC argues that these factors favor a transfer to Delaware, because there will be no inconvenience to EPA. FMC Mem. at 6-7. FMC does not identify any way, however, in which it would be more convenient for FMC to be in Delaware.

[9] In this memorandum, "NRDC Opp." refers to NRDC's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of Defendant's Cross-Motion, filed on October 29, 2007 (Dkt. 30). "EPA Opp." refers to EPA's Memorandum in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed on October 29, 2007 (Dkt. 32).

demonstrate the safety of their products at every stage of the administrative process, from the initial application all the way through any ultimate cancellation. *See, e.g.*, NRDC Reply at 4-7 (citing text and legislative history).[10]  This Court has held that "transferee courts, when deciding transferred issues of federal law, must use the decisions of their own circuit as binding precedent rather than attempting to mimic the transferor circuit's interpretation of the very same federal law." *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 201 F. Supp. 2d 1, 3-4 (D.D.C. 1999) (citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1174 (D.C. Cir. 1987)), *aff'd*, 286 F.3d 598 (D.C. Cir. 2002) (per curiam).  Therefore, based on controlling D.C. Circuit precedent interpreting FIFRA, if this Court reaches the merits of the pending dispositive motions, it will be required to grant summary judgment to EPA.

In first filing in the Eastern District of Virginia and now seeking a transfer to the District of Delaware, FMC seeks to avoid this adverse precedent.  Indeed, two of the principal cases on which FMC relies in support of its motion for judgment on the pleadings are Third Circuit cases, which would be controlling in the District of Delaware (but are not in this Court).  *See, e.g.*, FMC Rebuttal Mem. at 1-9 (repeatedly citing *Maher Terminals v. Dir., Office of Workers' Comp. Progs.*, 992 F.2d 1277 (3d Cir. 1993) and *Greenwich Collieries v. Dir., Office of Workers' Comp. Progs.*, 990 F.2d 730 (3d Cir. 1993)).[11]

The Supreme Court has recognized that "§ 1404(a) should not create or multiply opportunities for forum shopping." *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964)).  Similarly, the Supreme Court has rejected

---

[10] In this memorandum, "NRDC Reply" refers to NRDC's Reply in Support of Defendants' Cross-Motion for Summary Judgment, filed on December 3, 2007 (Dkt. 41).

[11] Even if this Court were to look to the Third Circuit cases relied on by FMC, they would not support a ruling in FMC's favor, as they address different questions than those presented by this case.  *See* NRDC Reply at 1-3 (distinguishing *Maher Terminals* and *Greenwich Collieries*).

the notion that "one might get a change of law as a bonus for a change of venue." *Id.* at 522

(internal quotation marks omitted).  In seeking a transfer away from this Court, FMC appears to

be seeking just such a bonus, as there are no legitimate reasons that favor the second transfer.

This Court should reject this attempt by FMC to engage in further forum shopping.

## CONCLUSION

For the reasons set forth above, NRDC respectfully urges the Court to deny FMC's

motion to transfer this action to the District of Delaware or, in the alternative, to retransfer the

action back to the Eastern District of Virginia.

Dated:  January 22, 2008

Respectfully submitted,


 /s/ Mae C Wu
Mae C Wu
Natural Resources Defense Council
1200 New York Ave., N.W.
Washington, DC  20005
(202) 289-6868 – Telephone
(202) 289-1060 – Facsimile

Of Counsel:

Nancy S. Marks
Thomas Cmar
Natural Resources Defense Council
40 West 20th Street
New York, NY  10011
(212) 727-2700 – Telephone
(212) 727-1773 – Facsimile

*Attorneys for Defendant-Intervenor*
*Natural Resources Defense Council, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FMC Corporation,                 )
                                       )

        *Plaintiff*,         )
                                       )

v.                                )
                                       )     Civil Action No. 1:07-CV-02277 (RMU)

United States Environmental Protection   )
Agency, and Stephen L. Johnson,       )
Administrator,                     )
                                       )

        *Defendants.*       )
                                       )
                                       )

Natural Resources Defense Council, Inc.,  )
                                       )

        *Defendant-Intervenor.*   )

## <u>DECLARATION OF MAE C WU</u>

I, Mae C Wu, make the following declaration:

1.      I am an attorney in the office of the Natural Resources Defense Council

("NRDC") in the above-captioned case.  I make this declaration based on my own knowledge.

2.      Attached as Exhibit A is a true and correct copy of the transcript of proceedings

before the Hon. Judge Gerald Bruce Lee, U.S.D.J. (E.D. Va.), Civil No. 07-819 (Dec. 7, 2007).


Pursuant to 28 U.S.C. § 1746, I declare and affirm under penalty of perjury that the foregoing is

true and correct.


 /s/ Mae C Wu
Mae C Wu

Executed in Washington, DC, this 22nd day of January, 2008.

Exhibit A

1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                                    )
FMC CORPORATION,                    )
                                    )
            Plaintiff,              )  Civil No.  07-819
                                    )
      VS.                           )  December 7, 2007
                                    )
U.S. ENVIRONMENTAL PROTECTION       )
AGENCY, et al.,                     )
                                    )
            Defendants.             )
_____)
```

REPORTER'S TRANSCRIPT

MOTIONS HEARING

BEFORE:     THE HONORABLE GERALD BRUCE LEE
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

  FOR THE PLAINTIFF: LATHAM & WATKINS
                     BY: KENNETH WEINSTEIN, ESQ.

  FOR THE DEFENDANT: OFFICE OF THE U.S. ATTORNEY
                     BY: LAUREN WETZLER, ESQ.
                     DEPARTMENT OF JUSTICE
                     BY: MONICA GIBSON, ESQ.
                     ROBERTS ABOKHAIR & MARDULA
                     BY: JOHN MARDULA
                     NATIONAL RESOURCE DEFENSE COUNCIL
                     BY: THOM CMAR, ESQ.
                        MAE WU, ESQ.

      OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
                     U.S. District Court
                     401 Courthouse Square, 5th Floor
                     Alexandria, VA  22314

<u>INDEX</u>

ARGUMENT BY THE PLAINTIFF     4

ARGUMENT BY THE DEFENDANT     9

RULING BY THE COURT     11

---

```
 1                    (Thereupon, the following was heard in open
 2          court at 11:30 a.m.)
 3                    THE CLERK:  Civil action 07-819, FMC
 4          Corporation versus United States EPA.
 5                    THE COURT:  If you all would enter your
 6          appearance from the podium, please.
 7                    MR. MARDULA:  May it please the Court, John
 8          Mardula as local counsel here with Thom Cmar and Mae Wu
 9          from National Resources Defense Council.
10                    With the Court's permission Thom Cmar will
11          argue on behalf of NRDC.  He's admitted pro hac vice.
12                    THE COURT:  All right.
13                    MR. WEINSTEIN:  Good morning, Your Honor.
14          Kenneth Weinstein for the plaintiff, FMC Corporation.
15                    THE COURT:  Good morning.
16                    MS. WETZLER:  Good morning, Your Honor.
17          Lauren Wetzler on behalf of the defendants EPA and Stephen
18          Johnson.
19                    With me at counsel table are Monica Gibson
20          from the Environment and National Resources Division of
21          the Department of Justice.  And with the Court's
22          permission Ms. Gibson will be arguing today.
23                    And also with me at counsel table is Laura
24          Solis from the EPA.
25                    THE COURT:  Good morning.
```

1              MS. WETZLER:  Thank you, Your Honor.  Good

2    morning.

3              THE COURT:  The first thing I want to hear

4    about is venue, and so I'm happy to hear from plaintiff

5    first.

6              MR. WEINSTEIN:  Thank you, Your Honor.  The

7    first thing I would note about venue is that the

8    defendants did not raise venue in their papers in their

9    answer to the complaint or in their motion for summary

10   judgment.

11             So, the venue issue visa-vie defendants is

12   waived.  But venue is proper in this district because the

13   EPA resides in this district under Section 1391.

14             THE COURT:  So then under that theory, any

15   federal agency that has an office in Arlington, Virginia,

16   or in Greenbelt, Maryland, then the EPA could be sued all

17   over the country; is that right?

18             MR. WEINSTEIN:  That's not necessarily true.

19   But in this case, the EPA has a very substantial presence

20   and that's what the case law requires.

21             EPA maintains a headquarters facility and it

22   refers to the facility as a headquarters facility which is

23   the headquarters of its Office of Pesticide Programs which

24   is the office that gives birth to all regulation of

25   pesticides and the pesticides specifically at issue in

1    this case.

2              There are 1,650 EPA employees there.  So,

3    this is a very --

4              THE COURT:  But, who makes the judgment?  Is

5    the judgment made by the administrative EPA or is it made

6    by some deputy director in Arlington?

7              MR. WEINSTEIN:  It is -- to a large degree,

8    the decisions or some of the decisions are made by the

9    folks in Arlington.  Some decisions are made at a higher

10   level.

11             THE COURT:  I guess what I'm asking is

12   whether the person who ultimately is responsible for that

13   decision or the determination is the administrative EPA or

14   is it some lower official?

15             MR. WEINSTEIN:  It's probably a lower

16   official.  I don't think it's the administrator of EPA and

17   as to who is responsible.

18             But the decision to cancel this particular

19   insecticide, I believe that was made by the Office of

20   Pesticide Programs at that level and they are the ones who

21   signed off on that.

22             THE COURT:  But, you would agree that

23   typically a case like this would be brought where the

24   secretary resides or the head of the agency resides and in

25   this case, that is Washington, D.C; isn't it?

1           MR. WEINSTEIN:  No, I don't think so, Your

2     Honor.  The case law says that an agency can have more

3     than one residence for purposes of venue.

4           Where there's no objection made and the

5     objection is waived, the -- the preference of the

6     plaintiff is to be given a strong presumption.

7           And, I think that the case law supports that

8     the plaintiff's forum is to be controlling particularly

9     where there's no objection made.

10          THE COURT:  Well, obviously the Court can

11    inquire about venue and the Court can on its own motion

12    inject itself on the issue of venue, can I?

13          MR. WEINSTEIN:  I think that you can, Your

14    Honor.  But if you're referring -- if the -- if the

15    objection is waived, then the case cannot be dismissed I

16    don't believe on venue grounds.  And the cases

17    particularly your own case says that unless the balance of

18    conveniences is strongly in favor of the defendant, the

19    plaintiff's choice of forum should rarely be disturbed.

20    And that was your decision in Capital One Financial and --

21          THE COURT:  Capital One versus Drive One.

22    I'm familiar with it.

23          MR. WEINSTEIN:  Yes, that's right.

24          And also the Court is charged with weighing

25    the factors and weighing the equities if you're

1    considering transfer of venue.

2              And here there's certainly no inconvenience

3    to EPA.  We're within 5 miles of its Arlington office.

4    We're within five mills of its EPA office.  There are no

5    witnesses involved.  It's purely a question of law.  And

6    there are no records at issue.  The administrative record

7    consists of two or three documents.

8              So, there's no question of inconvenience.

9    And it certainly would be much more convenient for the

10   plaintiff FMC because this Court has acted on this case so

11   expeditiously.  And we have a proceeding coming up before

12   EPA, visa-vie the cancellation proceeding.

13             So it weighs heavily in favor of the

14   plaintiff's convenience to have this case resolved here.

15   There's no inconvenience and obviously the government

16   didn't raise an objection on grounds of venue.  So there's

17   no inconvenience to them.

18             So, the balance of equities is in favor of

19   retaining the case here with Your Honor.  And as you know,

20   the law is that unless the balance of conveniences weigh

21   strongly in the other direction, the plaintiff's choice of

22   forum should be respected.

23             THE COURT:  Well, you know, the FCC has a

24   server that's located in Virginia and they have some

25   offices in Virginia, too.  And recently the United States

1    Attorney decided to bring a criminal case in this court

2    based on that basis that they, the FCC had a server

3    located in Virginia.

4              I just wonder if we won't be opening the

5    doors up to additional litigation against federal agencies

6    here because they have offices in Virginia when this

7    litigation typically is brought in the District of

8    Columbia where the head of the agency resides.

9              MR. WEINSTEIN:  I don't think so, Your

10   Honor.  In this case, the -- there are 1,650 EPA people

11   who are dealing with this particular pesticide and have

12   been for decades.

13             So, we have a very strong presence and a

14   very strong residence in Virginia.  So, I don't think this

15   is going to be opening up the courthouse doors for that

16   type of proceeding.

17             Here there's a very strong nexus to the

18   EPA's residence.  And so, I would submit that the choice

19   of venue should be respected in this case.

20             THE COURT:  All right.  Is there anything

21   further that you want to say that you've not been given a

22   chance to say because I've asked you the questions that I

23   have.

24             MR. WEINSTEIN:  I'm sorry.

25             THE COURT:  I have asked you the questions

1     that I have.  Is there anything more that you want to say

2     that you've not been given a chance to say?

3              MR. WEINSTEIN:  On venue?

4              THE COURT:  Yes.

5              MR. WEINSTEIN:  Nothing further, Your Honor.

6              THE COURT:  All right, thank you.

7              MS. GIBSON:  Good morning, Your Honor.  My

8     name is Monica Derbes Gibson.  I'm representing the United

9     States Environment Protection Agency.

10             THE COURT:  Good morning.

11             MS. GIBSON:  Your Honor has asked the

12    parties to address issue of venue.  To the extent that

13    venue is based on the defendant's location, venue would be

14    appropriate in the District of Columbia under 28 USC

15    Section 1391(e).

16                 There are EPA offices in Virginia, and a

17    significant number of the staff who regulate pesticides

18    are located in the Virginia offices.

19                 However, the decision makers on pesticide

20    regulations ultimately the -- ultimately the decision

21    maker is the assistant administrator for pesticides or, in

22    fact, the administrator for EPA.  Those people are located

23    at EPA headquarters in Washington, D.C.

24                 The action at issue here, the decision not

25    to reopen the regulation governing the burden of proof and

1    pesticide cancellation hearings was taken by the Office of

2    General Counsel.  The letter to FMC Corporation was signed

3    by EPA's general counsel and the filings note that the

4    parties met with staff members from the Office of General

5    Counsel before the decision was ultimately made.

6              That meeting took place in the Office of

7    General Counsel's offices in D.C.  And in fact, that

8    decision was made by staff.  Since it raised a legal

9    issue, it was handled within the Office of General Counsel

10   in D.C.

11             On hindsight, maybe we should have raised

12   venue.  However, it is Fourth Circuit precedent that this

13   Court is able to raise venue as an issue sua sponte and to

14   transfer or dismiss the case based on venue.

15             Thank you.

16             THE COURT:  So then the government here --

17   the government officials who made the decision which is

18   the subject matter of this lawsuit and the controversy are

19   in Washington, D.C?

20             MS. GIBSON:  Yes, Your Honor.

21             THE COURT:  The plaintiff says they want to

22   bring the case here because of the speed of the docket.

23   We're very well aware of the speed of our docket.

24             Part of the reason we're able to do that is

25   because we handle the cases that belong to us.  I'm

1    curious why the government did not object to venue, but I

2    don't want to ask you to answer that question.  But I

3    guess I want to communicate that is it your view that if a

4    government agency has offices in Virginia or Maryland or

5    Iowa that they can be sued all over the country just

6    because they have offices there?

7              MS. GIBSON:  Not simply because they have

8    offices there, Your Honor.

9              THE COURT:  Okay.  Thank you.

10              MS. GIBSON:  Thank you.

11              MR. CMAR:  Good morning, Your Honor.

12              THE COURT:  Good morning.

13              MR. CMAR:  Thom Cmar on behalf of NRDC.  We

14    have nothing further to add on venue.  If you have any

15    questions, I'd be happy to answer them.

16              THE COURT:  No, thank you for your

17    submission, and thank you for the quality of your

18    preparations as well.

19              All right, well I think what I should do is

20    this.  I'm ready to rule.

21              First of all, this matter is before the

22    Court on a motion, actually cross motions, FMC's motion

23    for judgment on the pleading in a matter involving United

24    States Environmental Protection Agency and the defendant

25    intervener's memorandum of law in opposition to the motion

1    for judgment on the pleadings as well as the defendant's

2    cross motion for judgment on the pleadings filed on behalf

3    of the administrator of the U.S. EPA, Stephen L. Johnson.

4    And there has been a submission and very welcomed

5    participated by the National Resources Defense Council in

6    the case.

7              As I reviewed all of these submissions, the

8    question occurred to me was whether venue was proper in

9    this district for this case.

10             The complaint alleges that venue was proper

11   under 1391(e).  And obviously, an action can be brought

12   where the defendant of the action resides is a substantial

13   part of the events or admissions given rise to the claim

14   occurred, property is located in that area, in that

15   district or the plaintiff resides -- in the district the

16   plaintiff resides there's no real properties involved.

17             In this particular case, the EPA is

18   headquartered in Washington D.C.  The administrator is

19   headquartered in Washington D.C.  According to the

20   government, the general counsel and the assistant

21   administrator who made the ultimate determination about

22   this pesticide is in Washington, D.C.  And the plaintiff,

23   FMC, is a Delaware corporation with its headquarters in

24   Pennsylvania.

25             And the issue has to do with the EPA's

1    refusal to grant a petition for rule making.  And it seems

2    to me, that decision occurred in Washington, D.C.

3              The defense here, the government did not

4    assert any objection to improper venue.  And that can be a

5    waiver.

6              However, that does not prevent the Court on

7    its own for -- from considering whether or not to transfer

8    a case sua sponte under Feller versus Brock from the

9    Fourth Circuit and the One Beacon Insurance Company versus

10   J and B Storage Trailer Rental Corporation, Eastern

11   District of Virginia.

12             It seems to me that this case has no

13   connection with the Eastern District of Virginia.  The

14   presence of the pesticide office in Virginia and employees

15   there is not determinative of the nature of the claim.

16   The actions complained of deny the petition for a rule

17   making.  The ultimate judgment about the pesticide all

18   being made by officials in Washington, D.C., and

19   therefore, it would be appropriate to transfer this case

20   to the District of Columbia District Court.

21             This is forum shopping, and I certainly

22   understand that you want to take advantage of the

23   expeditious nature in which we handle our docket.  But

24   part of the reason we're able to do that is because we

25   handle the cases that belong to us.  And this case does

1    not belong here.  And so I'm transferring it to the

2    District of Columbia.

3              And I'm concerned about the government here

4    not asserting that at the outset of this litigation.  I

5    don't want to encourage forum shopping where government

6    agencies that have offices here all of a sudden being sued

7    in the Eastern District of Virginia just because we move

8    our cases.

9              District of Columbia has more expertise in

10    handling a case of this nature and they are much more

11    familiar with these Administrative Procedure Act cases

12    than we are.  And these cases certainly can have a proper

13    forum, and that's the District of Columbia District Court.

14    So I'm going to transfer it there.  Thank you.

15              MS. GIBSON:  Thank you, Your Honor.

16              (Proceedings concluded at 11:45 a.m.)

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATE OF REPORTER

 2

 3              I, Renecia Wilson, an official court reporter

 4    for the United State District Court of Virginia,

 5    Alexandria Division, do hereby certify that I reported by

 6    machine shorthand, in my official capacity, the

 7    proceedings had upon the motions in the case of FMC

 8    Corporation vs. United States EPA, et al.

 9              I further certify that I was authorized and

10    did report by stenotype the proceedings and evidence in

11    said motions, and that the foregoing pages, numbered 1 to

12    14, inclusive, constitute the official transcript of said

13    proceedings as taken from my shorthand notes.

14              IN WITNESS WHEREOF, I have hereto subscribed

15    my name this 18th day of December 2007.

16

17                         _____

                                 Renecia Wilson, RMR, CRR
18                               Official Court Reporter

19

20

21

22

23

24

25
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FMC Corporation, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | )    Civil Action No. 1:07-CV-02277 (RMU) |
| United States Environmental Protection | ) |
| Agency, and Stephen L. Johnson, | ) |
| Administrator, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |
| Natural Resources Defense Council, Inc., | ) |
| | ) |
| *Defendant-Intervenor.* | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2008, I caused to be served a true and correct copy of

**DEFENDANT-INTERVENOR'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**

**MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE** and

**DECLARATION OF MAE C WU** on the following counsel for Defendants, who have not yet

consented to electronic service through the CM/ECF system in this action:

| | |
|---|---|
| Keith V. Morgan | Monica Derbes Gibson |
| Assistant U.S. Attorney | Environmental Defense Section |
| Office of the U.S. Attorney | Environment & Natural Resources Division |
| 555 4th Street, NW | United States Department of Justice |
| Washington, DC 20530 | P.O. Box 23986 |
| | Washington, DC  20026-3986 |

 /s/ Mae C Wu
Attorney for Defendant-Intervenor
Natural Resources Defense Council, Inc.